IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| STEVE SIMON in his official capacity as | ) | |
| Secretary of State for the State of | ) | |
| Minnesota; and the STATE OF | ) | |
| MINNESOTA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT**

As President Trump said earlier this year, "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Indeed, "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id*. Under our Constitution, States "must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id*. Without such safeguards, "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). And "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id*.

1

To prevent fraudulent votes from being cast in Federal elections, Federal law requires that all States conduct routine list maintenance of their statewide voter registration databases to maintain accurate voter rolls. The Civil Rights Division of the Department of Justice ("Department") is tasked with ensuring that States conduct voter registration list maintenance to prevent the inclusion of ineligible voters on any State's voter registration list for Federal elections. This action seeks to remedy the State of Minnesota's violation of Federal law, namely, impeding the Department's enforcement of the list maintenance requirements by refusing to provide its statewide voter registration list ("SVRL").

Plaintiff the United States of America ("United States") brings this action against the State of Minnesota ("Minnesota") and Steve Simon ("Secretary Simon"), in his official capacity as Minnesota's Secretary of State, and alleges as follows:

## **INTRODUCTION**

1.     The Attorney General of the United States brings this action to make demand for the SVRL pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706.

2.     The United States, through the Attorney General of the United States, also files this action to enforce the requirements of Section 303 of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083, with respect to Minnesota's refusal to provide its SVRL to the Attorney General to allow assessment of Minnesota's compliance with its duties to perform list maintenance pursuant to HAVA.

3.     On March 25, 2025, President Donald J. Trump signed Executive Order 14248 entitled "Preserving and Protecting the Integrity of American Elections" to ensure

2

that elections are held in compliance with Federal laws that guard against illegal voting, unlawful discrimination, and other forms of fraud, error, or suspicion. *See* 90 Fed. Reg. 14005 (Mar. 25, 2025).

4.     HAVA requires responsible State and local election officials to "perform list maintenance" with respect to the centralized, computerized statewide voter registration list required under HAVA "on a regular basis…." 52 U.S.C. §§ 21083(a)(1)-(2). Specifically, HAVA mandates that States have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. §§ 21083(a)(4)(A)-(B).

5.     Congress gave the Attorney General, through the Civil Rights Division, sole responsibility to enforce the core provisions of HAVA. *See* 52 U.S.C. § 21111.

6.     The United States Supreme Court has held that, "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

7.     The United States brings this action pursuant to its authority under the CRA and HAVA to compel the State of Minnesota and its chief State election official, Secretary of State Steve Simon, to provide information to the Attorney General regarding the State of Minnesota's voter list maintenance procedures and an electronic copy of its statewide

voter registration list including all fields, to allow the Attorney General to effectively assess Minnesota's compliance with the requirements of HAVA.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. § 21111; and 52 U.S.C. § 20705.

9.    Venue for this action is proper in the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 103, 1391(b).

## PARTIES

10.    Plaintiff United States, through the Attorney General, may compel States to produce certain records and papers relating to their administration of Federal elections pursuant to Section 305 of the CRA, 52 U.S.C. § 20705. The United States further seeks declaratory and injunctive relief pursuant to Section 401 of HAVA, 52 U.S.C. § 21111, which authorizes the Attorney General to bring this suit to enforce HAVA.

11.    Defendant Minnesota is a State of the United States of America and is subject to the requirements of HAVA, including requirements for a computerized statewide voter registration list in elections for Federal office. 52 U.S.C. §§ 21083(a), 21141. Every "officer of election" in Federal elections administered by Minnesota, through its chief elections official, is subject to the record retention and production requirements of the CRA. *See* 52 U.S.C. §§ 20701, 20706.

12.    Defendant Secretary Simon is Minnesota's Secretary of State and as the State's chief elections official is responsible for the State's compliance with HAVA, conducting Federal elections in Minnesota, and overseeing all "officer[s] of election" in

Federal elections, as that term is used in Sections 301 and 306 of the CRA, 52 U.S.C. §§ 20701, 20706. *See, e.g.*, Minn. Stat. § 204B.27 (describing multiple election-related responsibilities of the Secretary of State); *see also Clark v. Pawlenty*, 755 N.W.2d 293, 299 (Minn. 2008) (same); Minn. Const. art. VII, § 8 (same). Secretary Simon is sued in his official capacity only.

## BACKGROUND

### A. The Civil Rights Act of 1960 ("CRA")

13. Congress vested the Attorney General of the United States with the power to request records pursuant to Title III of the CRA, 52 U.S.C. §§ 20701-20706.

14. Section 301 of the CRA requires State and local election officials to retain and preserve records related to voter registration and other acts requisite to voting for any Federal office for a period of twenty-two months after any Federal general, special, or primary election. *See* 52 U.S.C. § 20701.

15. Section 303 of the CRA provides: "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

**B.     The Help America Vote Act ("HAVA")**

16.     The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). "Historically, elections in this country have been administered at the state and local level," but Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32.

17.     HAVA imposes "minimum requirements" for the conduct of Federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA. *Id*. at 35.

18.     HAVA requires all States to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…." 52 U.S.C. § 21083(a)(1)(A).

19.     The computerized list required by HAVA "shall be coordinated with other agency databases within the State." 52 U.S.C. § 21083(a)(1)(A)(iv).

20.     HAVA further establishes a "[m]inimum standard for accuracy of State voter registration records[.]" 52 U.S.C. § 21083(a)(4). Section 303 of the statute provides that a State's "election system shall include provisions to ensure that voter registration records in

the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. §§ 21083(a)(4)(A)-(B).

21.    HAVA mandates that a State may not process a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number. 52 U.S.C. § 21083(a)(5)(A)(i). For applicants who have neither a driver's license nor a social security number, a State must assign a unique identifying number for voter registration purposes. 52 U.S.C. § 21083(a)(5)(A)(ii). A State must determine the validity of the information provided by the applicant. 52 U.S.C. § 21083(a)(5)(A)(iii).

22.    HAVA also provides specific rules for voters who register to vote by mail. *See* 52 U.S.C. § 21083(b). An individual who registers to vote by mail and has not previously voted in a Federal election must comply with certain identification requirements. *Id.*

23.    HAVA applies to all fifty States, including Minnesota. *See* 52 U.S.C. § 21141.

24.    Section 303 of HAVA incorporates by reference certain provisions of the National Voter Registration Act ("NVRA"). *See, e.g.*, 52 U.S.C. § 21083(a)(4)(A). Those provisions, unless explicitly noted otherwise, apply to all States covered under HAVA. *See id.*

7

25.     Although Minnesota is exempt from the NVRA, it is not exempt from provisions of HAVA that require voter registration list maintenance, unless the statute provides a specific carveout. *See generally Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (holding that "'a sensible reading' of HAVA section 303(a)(4) compels the conclusion that Congress intended the obligations it sets forth to apply to all jurisdictions within HAVA's definition of 'State,'" and therefore applies to NVRA-exempt jurisdictions) (citations omitted).

26.     HAVA contains no private right of action. *See generally* 52 U.S.C. §§ 20901 to 21145; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (same).

27.     The Attorney General of the United States is exclusively empowered to bring a civil action pursuant to HAVA "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under section [303]." 52 U.S.C. § 21111.

## FACTUAL ALLEGATIONS

28.     On June 25, 2025, the United States Department of Justice, Civil Rights Division, Voting Section, sent a letter to Secretary Simon requesting information regarding Minnesota's procedures for complying with the statewide voter registration list maintenance provisions of HAVA ("June 25 Letter"). The Department's letter requested, among other information and documents, a description of the steps that Minnesota has taken, and when those steps were taken, to ensure that the State's list maintenance program

has been properly carried out in full compliance with HAVA, including actions taken by Minnesota officials.

29.    The June 25 Letter also requested, pursuant to HAVA, the current electronic copy of Minnesota's SVRL as required by Section 303(a) of HAVA, 52 U.S.C. § 21083(a). The letter specifically requested: "Please include both active and inactive voters."

30.    In a letter dated July 25, 2025, Justin Erickson, the General Counsel for Secretary Simon, provided a partial response to the requests for information and documents in the June 25 Letter ("SOS July 25 Response"). In that letter, Mr. Erickson described the general procedures and State statutes governing Minnesota's list maintenance procedures. However, he declined to provide the Attorney General with the State's SVRL by maintaining that no information contained in that list would be disclosed "unless expressly required by law."

31.    Despite the Department's references to HAVA's statutory requirements in its June 25 Letter, Mr. Erickson contended that the Department "did not… identify any legal basis in its June 25 Letter that would entitle it to Minnesota's voter registration list." SOS July 25 Response at 8.

32.    Mr. Erickson requested that the Department provide "sufficient information to show that the data will be protected and used properly" before Minnesota would consider "whether it is appropriate to share Minnesota's voter registration list." *Id*.

33.    On August 13, 2025, the Assistant Attorney General for the Civil Rights Division replied to Mr. Erickson ("August 13 Letter"). In that letter, the Assistant Attorney General elaborated on the Department's authority to request a copy of Minnesota's SVRL

under Section 401 of HAVA, "which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide [SVRL] requirements," citing 52 U.S.C. § 21111.

34.    The Assistant Attorney General also explained that the CRA "requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for a period of 22 months after any federal general, special, or primary election." August 13 Letter at 1. The letter summarized Section 303 of the CRA, which requires all records or papers covered by the Act to be produced "upon demand in writing by the Attorney General or his representative." *Id.*

35.    The August 13 Letter complies with the requirements of the CRA because it "serves notice that the Attorney General is making a demand pursuant to 52 U.S.C. § 20703 for a complete copy of the state of Minnesota's statewide VRL" and identified the purpose of the demand, "to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)." *Id.* at 2. The letter also explained that "[i]n charging the Attorney General with enforcement of the [SVRL] maintenance requirements in the Act, Congress plainly intended that the Justice Department be able to conduct an independent review of each state's list." *Id.*

36.    The August 13 Letter specified that the SVRL to be produced by the Defendants must "include all fields, including all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number, as required by HAVA at 52 U.S.C. § 21083(a)(5)(A)(i)." *Id.*

10

37.     The August 13 Letter made clear that "[t]o allay any concerns" about the privacy of Minnesota's SVRL and its data, in addition to the protections in the Privacy Act, Section 304 of the CRA specifically limited dissemination of records or papers produced under the Act. *Id*.

38.     The August 13 Letter requested that Minnesota produce its SVRL "within seven days or by August 21, 2025" via encrypted e-mail or through "the Department's secure file-sharing system, Justice Enterprise File Sharing ('JEFS')." *Id*. It stated that if Minnesota failed to comply, it "may result in legal action." *Id*. The letter concluded by stating that "[s]hould further clarification be required," Defendants could contact the Acting Chief of the Voting Section. *Id*.

39.     On August 21, 2025, Defendants responded to the United States' requests by requesting legal justification and assurance of privacy protections for the voter registration data ("SOS August 21 Response"). Defendants declined to comply with Federal law, stating that "Minnesota law, for example, prohibits the OSS from providing a voter's date of birth or any portion of their Social Security Number, driver's license number, state identification card… in response to a request for public inspection. Minn. Stat. § 201.091, subd. 9." *Id.* at 1.

40.     Defendants further responded by suggesting the Department could access the more limited publicly available voter list, despite the lawful request for full unredacted SVRL and assurance in the August 13 Letter that information and materials may be sent by encrypted email or the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS") which would protect the sensitive data. SOS August 21 Response.

41.    Minnesota is a member of the Electronic Registration Information Center ("ERIC"), an organization comprised of States whose stated mission "is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens." ERIC, FAQ's (last visited Sept. 25, 2025), https://ericstates.org/faq/; *see id.*., "Which States Are Members of ERIC?," https://ericstates.org/about/ (last visited Sept. 25, 2025).  ERIC is funded by its members, who pay a one-time membership fee and annual dues. *See id.* ERIC's website explains that "[a]t least every 60 days, each member submits their voter registration data and licensing and identification data from motor vehicle departments (MVD) to ERIC." *Id.* ERIC's website further explains, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC after applying a cryptographic one-way hash to these data points." *Id.*

42.    Minnesota provides the identical information that the Attorney General has requested to ERIC, a private organization which lacks any enforcement authority, yet refuses to adhere to Federal law and provide that same information to the Attorney General of the United States.

43.    As explained on the Civil Rights Division's public website, the Department is required to comply with the Privacy Act, including the provisions of 5 U.S.C. § 552a, and has practices and procedures to ensure compliance with the Privacy Act.

44.    The information that the Department collects pursuant to its request to Minnesota and similar requests to other States will be maintained consistent with Privacy Act protections as explained on the Department's website. *See* U.S. Dep't of Justice, Civil

Rights Division, Privacy Act Statement, *available at* https://civilrights.justice.gov. The full list of routine uses for this collection of information can be found in the System of Records Notice (SORN) titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). The statutes cited for routine use include HAVA and the CRA. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

## CAUSES OF ACTION

### COUNT I:   CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

45.    The United States incorporates the allegations set forth above.

46.    The CRA, 52 U.S.C. §§ 20701-20706, provides the United States authority to obtain the records and information requested in its June 25 Letter and its August 13 Letter.

47.    The Department's August 13 Letter requested an electronic copy of Minnesota's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, their State driver's license number, and the last four digits of their Social Security number pursuant to the CRA stating its purpose to enforce HAVA, as authorized by 52 U.S.C. § 20703.

48.     The SOS August 21 Response did not provide the requested statewide voter registration information pursuant to the CRA, including the requisite HAVA unique identifiers to the Attorney General. 52 U.S.C. §§ 20701-20706.

49.     Unless and until ordered to do so by this Court, Defendants' refusal to provide these records as requested constitutes a continuing violation of Federal law.

## COUNT II:  HELP AMERICA VOTE ACT, 52 U.S.C. § 21083

50.     The United States incorporates the allegations set forth above.

51.     Defendants have failed to take the actions necessary for Minnesota to comply with Section 303 of HAVA. Defendants have failed to provide sufficient information in response to the Civil Rights Division's June 25 Letter and August 13 Letter requesting information and documents to evaluate Minnesota's compliance with HAVA pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111.

52.     Defendants' refusal to provide the requested information prevents the Attorney General from evaluating Minnesota's procedures to ensure that duplicate names are eliminated from the computerized list, as required by 52 U.S.C. § 21083(a)(2)(B), and prevents the Attorney General from enforcing the other list maintenance procedures required by HAVA under 52 U.S.C. § 21111.

53.     Defendants' refusal to provide to the United States the current electronic copy of Minnesota's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their State driver's license number or the last four digits of their Social Security number, prevents the

Attorney General  from determining Minnesota's compliance with the list maintenance requirements of HAVA, 52 U.S.C. § 21083(a)(5)(A).

54.    Unless and until ordered to do so by this Court, Defendants' refusal to provide these records as requested constitutes a continuing violation of Federal law.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that this Court:

A.    Declare that Defendants' refusal to provide registration records and Minnesota's electronic statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their Social Security number, upon a demand by the Attorney General violates Title III of the CRA. 52 U.S.C. § 20703;

B.    Declare that Defendants Secretary Simon and the State of Minnesota are not in compliance with the requirements of the CRA or HAVA Section 303, particularly with respect to their obligations to provide the Attorney General with records including the statewide voter registration list and the HAVA identifiers, to evaluate Minnesota's computerized voter registration list to ensure its voter registration records are accurate and updated regularly. 52 U.S.C. §§ 20701-20706; 52 U.S.C. § 21083.

C.    Declare that any State law that prohibits Secretary Simon from providing the requested statewide voter registration list is preempted by Federal law.

D.    Order Defendants to provide the United States with Minnesota's current statewide voter registration list, including active and inactive voters and containing all fields, including the registrant's full name, date of birth, residential address, and either their

State driver's license number or the last four digits of their social security number, as required by the CRA, 52 U.S.C. §§ 20701-20706, and HAVA Section 303(a)(5)(A), 52 U.S.C. § 21083(a)(5)(A).

      E.     Grant any other relief this Court deems just and proper.

DATED: September 25, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES (CA Bar No. 258446)
Deputy Assistant Attorney General
Civil Rights Division

*/s/ James Thomas Tucker*
MAUREEN S. RIORDAN (NY Bar No. 205880)
TIMOTHY F. MELLETT (DC Bar No. 430968)
JAMES THOMAS TUCKER (DC Bar No. 90010157)
BRITTANY E. BENNETT (GA Bar No. 717377)
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
James.T.Tucker@usdoj.gov
Brittany.Bennett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2025, a true and correct copy of the

foregoing document was served via the Court's ECF system to all counsel of record.


*/s/ James Thomas Tucker*
James Thomas Tucker