**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | |
| STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA, | Case No. 25-cv-3761 (KMM/EMB) |
| *Defendants*. | |

**MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATIONAL
FUND AND MISAEL HERNANDEZ'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

   I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ...................................... 3

   II.   DOJ has embarked on an unprecedented campaign to collect personal voter registration data held by the states, including Minnesota. .......................... 4

   III.  DOJ sues Minnesota to obtain its complete voter registration list. ..................... 6

   IV.  DOJ's demands place the sensitive personal information of millions of Minnesotans in jeopardy, including Mr. Hernandez and the Alliance's members. ............................................................................................................... 7

LEGAL STANDARD ........................................................................................... 11

ARGUMENT ........................................................................................................ 12

   I.    Proposed Intervenors are entitled to intervene as a matter of right under Rule 24(a)(2). ................................................................................................... 12

       A.   Proposed Intervenors have Article III standing. ........................................ 12

           1.   Mr. Hernandez has standing. ......................................................... 12

           2.   The Alliance has standing. .............................................................. 14

       B.   Proposed Intervenors satisfy all the requirements of Rule 24(a)(2). ......... 17

           1.   The motion is timely. ..................................................................... 17

           2.   Proposed Intervenors have a recognized interest in protecting sensitive and personal information from improper disclosure to DOJ, which may be impaired by this suit's disposition. ........... 17

           3.   The existing parties do not adequately represent Proposed Intervenors. .................................................................................... 19

   II.   Alternatively, Proposed Intervenors should be granted permissive intervention. ..................................................................................................... 21

CONCLUSION .................................................................................................... 23

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized database. It has sent demands for such information to more than thirty states, and has filed lawsuits against eight of those states that it has deemed insufficiently cooperative with its dictates. One of those states is Minnesota, against which DOJ brought the present lawsuit on September 25, 2025. DOJ seeks to compel Minnesota to turn over all the information it has on all voters within the State. This assault directly intrudes both on Minnesota's constitutional prerogative to maintain and protect its own voter registration list and on the privacy rights of millions of individual Minnesotans.

Among these individuals are Misael Hernandez, a recently naturalized citizen, and the members of the Minnesota Alliance for Retired Americans Educational Fund ("Alliance") (collectively, "Proposed Intervenors"). Proposed Intervenors move to intervene to defend the privacy rights of Mr. Hernandez and the Alliance's members, and to prevent the improper disclosure of their sensitive personal information to DOJ. These individuals have ample reason to fear their personal information being handed over to the federal government and to object to the infringement on their privacy rights that this disclosure would represent. Those rights are well established, as Minnesota law expressly prohibits the State from sharing any portion of the voter list containing "a voter's date of birth or any part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number." Minn. Stat.

§ 201.091, subd. 9. DOJ's requested relief would flout these privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervene as of right because this motion is timely; they have a deep interest in protecting the personal information at issue from disclosure; that interest could be severely impaired by this lawsuit; and the existing parties here do not adequately represent that interest. *See* Fed. R. Civ. P. 24(a). While the defendants here—the State of Minnesota and its Secretary of State Steve Simon (collectively, "Minnesota")—have thus far resisted disclosure, as governmental defendants they must consider the "broader public-policy implications" of the issues presented in this suit. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)). In stark contrast, Proposed Intervenors are solely concerned with protecting privacy rights, "full stop." *Id.* (citing *Trbovich*, 404 U.S. at 538–39). Federal courts routinely grant intervention as of right to intervenors like these in similar actions. Proposed Intervenors also easily satisfy this Circuit's requirement that an intervenor demonstrate Article III standing based on the clear threat this action poses to the safety and privacy of the sensitive personal information of Mr. Hernandez and the Alliance's members. Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b) to ensure that Minnesotans have a voice in this case, which ultimately concerns the disclosure of their personal information.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states primary responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. One such law is the Help America Vote Act ("HAVA"), enacted by Congress in the wake of the 2000 elections in order "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA regulates how *states* maintain their voter rolls, requiring they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). In doing so, HAVA also makes it abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).[1]

---

[1] Another such law is the National Voter Registration Act ("NVRA"), enacted by Congress in 1993. Minnesota is exempt from the NVRA's requirements, *see The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Just., https://perma.cc/K76Z-7UQX (last visited Sept. 30, 2025), but the NVRA also reinforces that the administration of voter

## II.   DOJ has embarked on an unprecedented campaign to collect personal voter registration data held by states including Minnesota.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about every registered voter. DOJ has reportedly sent demands to more than thirty states, with plans to make similar demands on all fifty states.[2] It seeks to use the data to create a national voter database that will, in turn, be used in an attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[3] The vast majority of states—including those led by Republicans—have refused to comply, appropriately declining to turn over sensitive personal information that is typically protected by state law.[4]

As part of this campaign, DOJ sent Secretary Simon a letter on June 25 that asked numerous questions regarding "the State's HAVA compliance" and demanded that Secretary Simon provide DOJ with "Minnesota's current statewide voter registration list," including both active and inactive voters. Letter from Maureen Riordan to Steve Simon (June 25, 2025) (attached as Exhibit A). Justin R. Erickson, the general counsel of

---

registration and maintenance of voter lists are responsibilities charged squarely to the states and that the states are the custodians of voter lists. *See* 52 U.S.C. § 20507(a), (c)–(g); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

[2] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

[3] *Id.*

[4] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sept. 18, 2025, 5:00 AM), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

Secretary Simon's office, responded to DOJ on July 25, 2025. He answered DOJ's questions in detail, explaining at length Minnesota's procedures for voter registration, verification of voter information, and voter list maintenance. Letter from Justin R. Erickson to Maureen Riordan at 2–7 (July 25, 2025) (attached as Exhibit B). With respect to the request for the voter registration list, however, Mr. Erickson stated that the "list contains sensitive personal identifying information on several million individuals" and that the State's longtime practice was not to disclose information on its voter list unless expressly required by law. *Id.* at 7 (citing Minn. Stat. § 201.091). Because DOJ did not "identify any legal basis" entitling it to the list or "explain how this information would be used, stored, and secured," Minnesota would not share the list. *Id.* at 8.

On August 13, 2025, DOJ sent another letter to Minnesota, asserting that it was entitled to seek Minnesota's voter registration list both under HAVA and under the Civil Rights Act of 1960. *See* Letter from Harmeet K. Dhillon to Justin R. Erickson (Aug. 13, 2025) (attached as Exhibit C). DOJ reiterated that it was making a formal "demand . . . for a complete copy of the state of Minnesota's statewide" voter registration data, including each "registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number." *Id.* at 2. Mr. Erickson responded again on August 21, 2025, explaining that neither HAVA nor the Civil Rights Act of 1960 "provides the clear legal basis necessary . . . to turn over private data on several million individuals" and that DOJ had not "provided adequate assurances that it will treat the data appropriately." Letter from Justin R. Erickson to Harmeet K. Dhillon at 2, 4 (Aug. 21, 2025) (attached as Exhibit D). Mr. Erickson

nonetheless offered "to discuss this matter further with the DOJ in order to determine whether there are ways to address the DOJ's concerns without unnecessarily disclosing private data on millions of Minnesotans." *Id.* at 6.

### III.    DOJ sues Minnesota to obtain its complete voter registration list.

DOJ did not take Minnesota up on its offer to discuss its concerns further. Instead, it filed this lawsuit on September 25, 2025, asking this Court to order Minnesota to provide DOJ with its statewide voter registration list with "all fields, including the registrant's full name, date of birth, residential address, and either their State driver's license number or the last four digits of their social security number." Compl. at 15–16, ECF No. 1. This lawsuit is part of a broader spree in which DOJ has recently filed *eight* actions against different states for refusing to turn over such information.[5]

In support of its claims against Minnesota, DOJ cites two statutes—HAVA and the Civil Rights Act of 1960—neither of which supports DOJ's sweeping demand. *First*, there is no disclosure provision in HAVA. DOJ has not pointed to even a shred of authority that supports the radical suggestion that DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111.

*Second*, the provision of the Civil Rights Act of 1960 that DOJ invokes, Section 303, is a long-dormant Civil Rights era law that permits DOJ to review certain voting

---

[5] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT; *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/URH2-XFD3.

records for the purpose of investigating "question[s] concerning infringement or denial of [] constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted this law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 1944 (1959). DOJ, however, is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, its own *stated* purpose for requesting the list is to "allow assessment of Minnesota's compliance with its duties to perform list maintenance pursuant to HAVA"—a statute with its own procedures and enforcement mechanisms. Compl. ¶ 2. Section 303 is not a roving authorization for the government to demand any voter information it wants from any state for any purpose. For this simple reason, it does not require the disclosure DOJ seeks here.[6]

## IV. DOJ's demands place the sensitive personal information of millions of Minnesotans in jeopardy, including Mr. Hernandez and the Alliance's members.

Minnesota law provides strong protection to Mr. Hernandez, the Alliance's members, and millions of other Minnesotans with respect to the privacy of voters' personal information contained in the statewide voter list. In particular, it explicitly prohibits the State from sharing any portion of the voter list containing "a voter's date of birth or any

---

[6] Even if Section 303 did apply, it would not prohibit Minnesota from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as states that are subject to the NVRA may do when information is sought under the NVRA's public disclosure provision. *See Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number," including in response to a "law enforcement inquiry." Minn. Stat. § 201.091, subd. 9. Should this lawsuit succeed, however, it is precisely these categories of sensitive personal information that will be disclosed to DOJ. Both Mr. Hernandez and many of the Alliance's members do fear and have extremely good reason to fear such disclosure.

**Mr. Hernandez.** Mr. Hernandez is a naturalized U.S. citizen. *See* Decl. of Misael Hernandez (Hernandez Decl.) ¶ 2. He resides in Minnesota, where he has lived since he was nine years old, and is a registered Minnesota voter. *Id.* Mr. Hernandez became a naturalized citizen in 2020 and registered to vote at the same time. *Id.* Voting is incredibly important to Mr. Hernandez, *id.* ¶¶ 2–3, but he fears that his commitment to exercising this constitutional right may result in the release of his personal information to DOJ against his will. *See id.* ¶ 8. Such disclosures increase the risk that Mr. Hernandez will become a target of fraudsters. *Id.* ¶¶ 3, 8–9. And in light of the current administration's anti-immigrant rhetoric, Mr. Hernandez also fears that the federal government will use the information it seeks to interfere with his right to vote because of his status as a naturalized citizen. *Id.* ¶ 10.

**The Alliance.** The Alliance is a chartered state affiliate of the national Alliance for Retired Americans. Decl. of Michael Madden ("Madden Decl.") ¶ 3. Its mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work. *Id.* ¶ 5. The Alliance has approximately 84,000 members in Minnesota,

including retirees from public and private sector unions, community organizations, and individual activists. *Id.* ¶ 4. Most of those members are more than 60 years old. *Id.*

Many of the Alliance's members, such as Bruce and Marianne Yernberg, have concerns regarding the disclosure of their personal information to DOJ. Both Mr. and Ms. Yernberg are members of the Alliance; Mr. Yernberg is also the Alliance's secretary. *See* Decl. of Bruce Yernberg ("B. Yernberg Decl.") ¶¶ 3, 7; Decl. of Marianne Yernberg ("M. Yernberg Decl.") ¶ 3. The Yernbergs are privacy-conscious individuals who take pains to keep their information safe because they are aware that the elderly are frequently targeted for scams. M. Yernberg Decl. ¶ 7. They have confidence in Minnesota given the state's longstanding commitment to the security and privacy of information contained in its voting records. *See* B. Yernberg Decl. ¶ 8. They do not trust the federal government to take those same precautions to ensure that their sensitive personal information is safeguarded. *See id.* ¶ 9; M. Yernberg Decl. ¶¶ 7–8.

This fear is also grounded in their history of involvement in political activity. Both of the Yernbergs are politically active; Mr. Yernberg writes letters to the editor in the local paper, including those critical of the Trump administration, and Ms. Yernberg calls her federal and state legislators and takes part in regular public protests in her town. *See* B. Yernberg Decl. ¶ 4; M. Yernberg Decl. ¶ 4. The security and privacy of their personal information is especially important to them in light of what they view as the Trump administration's campaign of retaliation against those it perceives as its political enemies. *See* M. Yernberg Decl. ¶ 5. They do not understand why DOJ wants this information and fear that it plans to use it to target its enemies. *Id.* ¶ 6.

The disclosure that DOJ seeks here would also have consequences for the Alliance as an organization and its more than 80,000 members. The privacy and security of its members' personal information is of great importance to the Alliance, Madden Decl. ¶ 9, as is the need to protect the elderly from fraud. The organization fears that the federal government will not adequately safeguard voters' personal information and will expose the Alliance's members in particular to potential harm. *Id.* ¶ 10–11.

The threat that Minnesota voters will have their personal information shared with the federal government also harms the Alliance in broader, systematic ways. A major goal of the Alliance's civic engagement work is to encourage its members to exercise their rights as American citizens, including by participating in the electoral process. *Id.* ¶ 6. That work will become significantly more difficult if community members believe they could have their personal information turned over to the federal government simply for being a registered voter and exercising their right to vote. *Id.* ¶ 8. The Alliance also fears that if DOJ is given the information it seeks, it will use this information in ways that undermine free and fair elections in the future. *See id.* ¶ 12.

Accordingly, Proposed Intervenors have filed the present motion to intervene, just five days after this lawsuit was filed. Given the time frame, Proposed Intervenors were only able to confer with DOJ, which opposes the motion. Counsel for Minnesota have not entered an appearance for the case, and thus Proposed Intervenors have not been able to meet and confer with them prior to filing this motion. Proposed Intervenors will promptly confer with counsel for Minnesota when possible and supplement this motion with a meet-and-confer statement pursuant to District of Minnesota Local Rule 7.1(a)(1)(A).

## LEGAL STANDARD

"Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Nat'l Park Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)). A movant is entitled to intervene as a matter of right where the movant files a "timely application" and satisfies three other criteria: "1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir. 1993); *see also* Fed. R. Civ. P. 24(a)(2). An intervenor in the Eighth Circuit must also demonstrate that it has Article III standing. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996); *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of St. Louis*, 894 F.3d 959, 964 (8th Cir. 2018).

Alternatively, the Court has discretion to grant intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).[7]

---

[7] In compliance with Rule 24(c)'s requirement that an intervention be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Exhibit E. Proposed Intervenors reserve the right to file a motion to dismiss under Rule 12 ahead of any deadline set by the Court or the Federal Rules.

## ARGUMENT

**I.    Proposed Intervenors are entitled to intervene as a matter of right under Rule 24(a)(2).**

### A.    Proposed Intervenors have Article III standing.

Each of the Proposed Intervenors has Article III standing that allows them to intervene here. If this suit succeeds, the disclosure of protected personal information to DOJ that will follow is a textbook injury that will harm both Mr. Hernandez and the Alliance's members, including Mr. Madden, Mr. Yernberg, and Ms. Yernberg. This injury will straightforwardly be caused by the court order sought here and is redressable by a favorable decision from this Court. The Alliance is also entitled to bring this suit on behalf of its members because the privacy interests of its members are germane to its purpose, and the participation of the Alliance's members is unnecessary for this action.

### 1.    Mr. Hernandez has standing.

When assessing a motion to intervene as a defendant, the Eighth Circuit evaluates the intervenor's standing based on the relief sought by the plaintiff, rather than the challenged actions of a defendant. *See, e.g.*, *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (granting intervention as a matter of right because "if the court grants the relief requested in the complaint, the threat of injury to [the intervenor] is real"). Under this approach, Mr. Hernandez satisfies the three traditional prongs of Article III standing of injury in fact, causation, and redressability and thus has standing here. *See Mausolf*, 85 F.3d at 1301 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As for injury, the Eighth Circuit has held that the "nonconsensual dissemination of personal information" is "sufficient to establish a concrete and particularized" injury in fact. *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing "disclosure of private information" as an injury "traditionally recognized as providing a basis for lawsuits in American courts"). That is precisely the injury that will be inflicted upon Mr. Hernandez if this lawsuit succeeds. *See* Hernandez Decl. ¶ 8. Mr. Hernandez has a strong interest in the privacy and security of his personal information, both due to the inherent sensitivity of the information and because it is expressly protected by Minnesota state law. *Id.* ¶ 9; *see also* Minn. Stat. § 201.091, subd. 9. Should this lawsuit succeed, this personal information will be conveyed to DOJ against Mr. Hernandez's wishes—a textbook injury.

While the disclosure alone is sufficient to satisfy this element of standing, Mr. Hernandez's injury is exacerbated by the fact that he recently became a naturalized citizen and is concerned that DOJ will use his voting information and his history of voting to target members of his family who are not yet naturalized. See Hernandez Decl. ¶ 10.

The remaining elements of causation and redressability are even more straightforward. DOJ seeks a court order directing Minnesota to release the state's current, unredacted voter list, containing all fields. *See* Compl. at 15–16. Should the Court grant this relief, Minnesota will be "compelled to cause the . . . injury" to Mr. Hernandez by providing this information to DOJ, thus "satisf[ying] the causation element." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (citation omitted). And Mr. Hernandez's "injury can

be redressed" by a favorable decision because Mr. Hernandez "seeks to prevent [DOJ] from obtaining [the] order" DOJ has requested. *See id.*

### 2. The Alliance has standing.

An organization has standing to sue on behalf of its members where those members "would otherwise have standing to sue in their own right"; "the interests it seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Like Mr. Hernandez, the Alliance can easily demonstrate standing here.

***Standing to sue in their own right.*** The Alliance's members, such as Mr. Madden, Mr. Yernberg, and Ms. Yernberg, would all have standing to sue in their own right for much the same reason that Mr. Hernandez does. These three individuals are registered Minnesota voters. Madden Decl. ¶ 2; B. Yernberg Decl. ¶ 2; M. Yernberg Decl. ¶ 2. Their sensitive personal information is protected under state law, *see* Minn. Stat. § 201.091, subd. 9, and should DOJ prevail here, that information will be released against the Alliance members' wishes, *see* Madden Decl. ¶ 8; B. Yernberg Decl. ¶ 7; M. Yernberg Decl. ¶ 7. They will thus suffer the same injury that Mr. Hernandez will. *See supra* Section I.A.1; *Am. Farm Bureau Fed'n*, 836 F.3d at 968.

And again, while this nonconsensual disclosure of personal information is enough by itself to independently show injury in fact, the injury to the Alliance's members is only exacerbated by their distrust of the federal government's diligence in safeguarding the confidentiality of personal data, *see* Madden Decl. ¶ 14, and the fear that once their private

information is released to DOJ, it will inevitably be exposed to others, *see* M. Yernberg Decl. ¶ 8, which raises the specter that they will be subjected to fraudulent attacks. The Alliance's leadership also fears that it will frustrate the Alliance's civic engagement and voter turnout work and undermine its members' confidence in the electoral process. Madden Decl. ¶¶ 8, 12. Such fears are not groundless; as Mr. Yernberg attests, if DOJ may demand private information from states regarding individuals just because those individuals are voters, it will make him think twice about participating in future elections and may deter other qualified Minnesotans from registering to vote. B. Yernberg Decl. ¶ 9.

The elements of causation and redressability are also satisfied for the Alliance's members for the same reasons that they are for Mr. Hernandez. *See supra* Section I.A.1. The DOJ's requested relief would cause the same injury to the Alliance's members, and a favorable decision denying that relief would redress their injuries in exactly the same way. *See supra* Section I.A.1.

***Germaneness.*** The Alliance seeks to intervene here to assert the privacy interests of its members, which are plainly germane to the Alliance's purpose. "The bar for germaneness . . . is low." *AARP v. U.S. EEOC*, 226 F. Supp. 3d 7, 19 (D.D.C. 2016). The privacy and security of its members' personal information is of great importance to the Alliance. *See* Madden Decl. ¶ 9. The Alliance has dedicated significant efforts to educating and warning its members about the risks posed by various types of scams and fraud campaigns and the need for those members to exercise caution with respect to their private data. *See id.* The Alliance also educates its members on issues important to retirees and encourages them to register and vote; their ability to participate in the political process

without undue interference or invasion of their privacy rights is plainly germane to the Alliance's purpose. The Eighth Circuit and other courts have recognized that associations of various kinds have an interest in protecting the private information of their members. *See Am. Farm Bureau Fed'n*, 836 F.3d at 968–69 (holding associations had standing to challenge disclosure of members' personal information); *AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 73–74 (D.D.C. 2025) ("Defendants (rightly) do not argue that the interests AFL-CIO, AFGE, AFSCME, and SEIU seek to protect in this lawsuit—their members' privacy—are not germane to the unions' purposes."); *AARP*, 226 F. Supp. 3d at 19–20 (holding AARP "amply demonstrated that this suit is germane to its purpose" in case implicating members' confidential medical information). This Court should do the same.

*Participation of individual members is not required.* Finally, "neither the claim asserted nor the relief requested requires the participation of" the Alliance's individual members. *Hunt*, 432 U.S. at 343. DOJ has requested the entirety of Minnesota's statewide voter list, without any differentiation among individuals. *See* Compl. at 15–16. And DOJ "seeks [only] declaratory and prospective injunctive relief," *id.* ¶ 10, while the Alliance seeks the denial of such relief; the claims at issue in this case are thus "properly resolved in a group context," without any need for "individualized proof." *Hunt*, 432 U.S. at 344; *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005) (holding associational standing present under these circumstances); *see also* Compl. at 15–16; Exhibit E at 12.

**B.      Proposed Intervenors satisfy all the requirements of Rule 24(a)(2).**

**1.      The motion is timely.**

Proposed Intervenors' motion—filed a mere five days after DOJ brought suit and before any case schedule has been set—is indisputably timely. *See, e.g.*, *Ctr. for Biological Diversity v. Haaland*, 341 F.R.D. 236, 240–41 (D. Minn. 2022) (holding motion to intervene as a matter of right was timely and granting motion filed one month after plaintiff initiated action).

**2.      Proposed Intervenors have a recognized interest in protecting sensitive and personal information from improper disclosure to DOJ, which may be impaired by this suit's disposition.**

Because "the Article III standing requirements are more stringent than those for intervention under rule 24(a)," the fact that Proposed Intervenors have shown that they have Article III standing "compels the conclusion that they have an adequate interest" for purposes of that rule. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see also supra* Section I.A. Proposed Intervenors have a "recognized interest in the subject matter of th[is] litigation" because this suit threatens the privacy rights and personal information of Mr. Hernandez and the Alliance's more than 80,000 members. *Mille Lacs Band of Chippewa Indians*, 989 F.2d at 997; *see also supra* Section I.A. Proposed Intervenors' concern about the confidentiality and privacy of this personal information is a recognized and legally protected interest that by itself supports intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in

maintaining the confidentiality" of records); *Constand v. Castor*, No. CV 15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (finding "interest in confidentiality is sufficient" to support intervention).

In addition, these privacy interests implicate the right to vote: Mr. Hernandez and the Alliance's members have a substantial interest in preserving their "right to vote privately," *Powell v. Benson*, No. 20-CV-11023, 2020 WL 5229104, at *5 (E.D. Mich. Sept. 2, 2020), and in ensuring that this right is not unlawfully burdened, *e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)").

Further, the Alliance's voter engagement and turnout efforts will also be harmed by the disclosure of its members' information to DOJ. The Alliance's members are primarily senior citizens and thus are often the target of various types of scams or fraud. *See* Madden Decl. ¶ 9. Some of its members, such as Ms. Yernberg, are also concerned with the prospect of political retaliation. *See* M. Yernberg Decl. ¶¶ 5–6. If members know their sensitive identifying information will be disclosed to the federal government when they do not trust it to handle that information with care, many may opt out of voter registration and civic engagement altogether, thus undermining the Alliance's core mission. *See* Madden Decl. ¶ 8; B. Yernberg Decl. ¶ 9. Courts have long held that organizations have a recognized interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D.

Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

For similar reasons, these interests "might be impaired by the disposition of the litigation." *Mille Lacs Band of Chippewa Indians*, 989 F.2d at 997. "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave L.V., LLC*, No. 2:19-CV-1197 JCM (DJA), 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). The unredacted statewide voter list that DOJ demands includes precisely the personal information that Proposed Intervenors seek to protect. For this simple reason, if DOJ prevails in this action and gets access to this information, Proposed Intervenors' interest in protecting this information will by definition be impaired.

### 3. The existing parties do not adequately represent Proposed Intervenors.

The existing parties do not adequately represent the interests of Proposed Intervenors. As courts have long recognized, the "burden of making that showing should be treated as minimal" and the movant need only show that the existing parties' representation "*may be*" inadequate. *Trbovich*, 404 U.S. at 538 n.10 (emphasis added) (citation omitted). An intervenor's interest need not be "adverse" to those of the existing parties; it need only be "sufficiently 'disparate' to warrant intervention." *SEC v. Flight*

*Transp. Corp.*, 699 F.2d 943, 948 (8th Cir. 1983) (quoting *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 870 (8th Cir. 1977)). Courts are "liberal in finding" that this requirement has been satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests," 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024), just as courts are liberal in allowing intervention under Rule 24 more generally, *see Nat'l Park Conservation Ass'n*, 759 F.3d at 975.

DOJ plainly does not represent Proposed Intervenors' interests. DOJ is diametrically opposed to those interests, as it seeks to forcibly compel production of the personal information of millions of Minnesotans, including Mr. Hernandez and members of the Alliance, against their wishes and in violation of privacy laws.

Although Minnesota has resisted turning over this information up to this point, it also does not adequately represent Proposed Intervenors. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (noting that "a governmental entity charged by law with representing the public interest of

its citizens" will not necessarily "advance the narrower interest of a private entity" in reversing denial of intervention).

The Eighth Circuit has followed this approach as well, holding that any presumption that a government body adequately represents its citizens is rebutted where the government is required to "weigh competing interests and favor one interest over another." *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2008). The Supreme Court, too, has emphasized this consideration, noting that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). That is precisely the case here. As DOJ observes, Minnesota and other states have dual obligations under HAVA: they must weigh competing interests by balancing their requirement to "perform list maintenance" and make "a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." Compl. ¶ 4 (alteration in original) (quoting 52 U.S.C. § 21083(a)(2)(A), (a)(4)(A)–(B)). Proposed Intervenors have no such competing objectives: their interests here rest exclusively and more narrowly on protecting privacy rights—full stop. For this reason, Minnesota, like DOJ, does not adequately represent Proposed Intervenors.

## II.   Alternatively, Proposed Intervenors should be granted permissive intervention.

In the alternative, this Court should exercise its discretion to grant permissive intervention. The "main considerations" in this analysis are "(1) whether the motion to

intervene is timely; (2) whether the movant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights." *Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017).[8]

These considerations all point overwhelmingly in favor of intervention here. *First*, this motion is timely, coming just five days after this suit was filed. *See supra* Section I.B.1. *Second*, Proposed Intervenors' defenses clearly share common questions of law or fact with the main action, as Proposed Intervenors are intervening for the purpose of arguing that DOJ is not entitled to any relief on its claims. *See generally* Exhibit E. *Third*, granting intervention will not "unduly delay or prejudice the adjudication" of this matter. Fed. R. Civ. P. 24(b)(3). This action is only days old, and no activity has taken place yet in it beyond the filing of the complaint. Because "[t]his case is in its earliest stages," any "concerns related to rework or repetition are minimal." *Franconia Mins.*, 319 F.R.D. at 268. Proposed Intervenors further agree to abide by any schedule entered by the Court or previously agreed to by the parties.

The nature of Proposed Intervenors' interest here also bolsters their case for intervention. The fact that Proposed Intervenors are intervening to assert Mr. Hernandez's and the Alliance's members' "confidentiality and/or privacy interest[s]" that are at stake in this case alone "warrants an opportunity to permissively intervene to protect that interest."

---

[8] The Eighth Circuit has not explicitly required that parties seeking permissive intervention demonstrate Article III standing, though district courts in this circuit have. *See Franconia Mins.*, 319 F.R.D. at 266. To the extent it is required for permissive intervention, Proposed Intervenors satisfy that standard, as demonstrated *supra* Section I.A.

*In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). Courts also regularly grant permissive intervention to civic organizations and individual voters to ensure their voices are heard when litigation implicates the rights of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene). Proposed Intervenors' participation in this case would add a critical perspective that will not otherwise be represented: that of the individual voters whose information is at issue. *See Franconia Mins.*, 319 F.R.D. at 268 (observing that "the Court expects to profit from a diversity of viewpoints as they illuminate the ultimate questions posed by the parties" in granting permissive intervention). All of these considerations, too, reinforce that intervention should be allowed.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that this Court grant their motion to intervene.

Dated: September 30, 2025

Respectfully submitted,

/s/ *Sybil L. Dunlop*
Sybil L. Dunlop, Reg. No. 390186
Katherine M. Swenson, Reg. No. 0389280
Kshithij Shrinath, Reg. No. 0505164
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
sdunlop@greeneespel.com
kswenson@greeneespel.com
kshrinath@greeneespel.com

Elisabeth C. Frost*
Robert Golan-Vilella*
Tina Meng Morrison*
Julianna D. Astarita*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
rgolanvilella@elias.law
tmengmorisson@elias.law
jastarita@elias.law

*Pro hac vice* applications forthcoming

*Counsel for Proposed Intervenors Minnesota Alliance for Retired Americans and Misael Hernandez*

24