# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

STEVE SIMON, in his official capacity as
Secretary of State for the State of
Minnesota, and the STATE OF
MINNESOTA,

        *Defendants*.

Case No. 25-cv-3761-KMM-EMB

**LEAGUE OF WOMEN VOTERS MINNESOTA, COMMON CAUSE,
JENNIFER COMPEAU, AND VALERIE MANGSKAU'S
BRIEF IN SUPPORT OF THEIR MOTION
TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ i

**INTRODUCTION** .......................................................................................... **1**

**BACKGROUND** ............................................................................................. **2**

   I.   Background and procedural posture ................................................ 2

   II.  Proposed Defendant-Intervenors ................................................... 4

**LEGAL STANDARD** ..................................................................................... **7**

**ARGUMENT** .................................................................................................. **8**

   I.   Proposed Defendant-Intervenors Are Entitled to Intervene as of Right Pursuant to Rule 24(a) ................................................................................................. 8

      A.   Proposed Defendant-Intervenors Have Article III Standing. ........................... 8

      B.   Proposed Defendant-Intervenors Meet Each of the Requirements of Rule 24(a). ................................................................................................. 11

   II.  In the Alternative, the Court Should Grant Permissive Intervention. .................... 17

**CONCLUSION** .............................................................................................. **19**

## INTRODUCTION

Over the past eight months, the federal government has repeatedly attempted to intrude upon the authority of states to manage elections. As part of this widespread federal overreach, the U.S. Department of Justice ("DOJ") has demanded extensive voter information from at least 38 states,[1] with the promise to demand such information from all 50 states.[2] Following states' reliance on the law to limit the protected voter information that can be shared, DOJ has sued eight states, including Minnesota, aiming to use the federal courts to require state compliance with DOJ's unlawful demands. DOJ seeks to force Minnesota to turn over all of the information that its voters have entrusted to the state in registering to vote. These data gathering efforts, culminating in the instant lawsuit, among others, represent an extraordinary, *ultra vires* expansion of federal collection of state voter information without adherence to either state or federal privacy laws or respect for the state's primary role in administering elections.

Proposed Defendant-Intervenors the League of Women Voters Minnesota ("LWVMN" or "the League") and Common Cause represent thousands of Minnesotans whose personal identifying information is at risk. The League and Common Cause are two of Minnesota's most preeminent pro-democracy and pro-voter organizations, with

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center (last updated Oct. 7, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] Nick Corasaniti, Justice Department Sues Six States Seeking Private Voter Data, N.Y. Times (Sept. 25, 2025), https://www.nytimes.com/2025/09/25/us/politics/doj-lawsuit-voter-data-trump.html.

thousands of members across the state. These organizations work to encourage civic participation in Minnesota, and have assisted countless Minnesotans in registering to vote. The privacy interests of members of the League and Common Cause, as well as registered Minnesota voters Jennifer Compeau and Valerie Mangskau, are directly at stake in this action, and so Proposed Defendant-Intervenors have an interest in preventing the disclosure of their sensitive personally identifying information in violation of state law. Additionally, the League and Common Cause's interests in conducting their voter engagement and education work would also be gravely impacted by the relief sought in this case. Because the Proposed Defendant-Intervenors' interests are directly impacted by this litigation, they are entitled to intervention as of right under Federal Rule of Civil Procedure 24(a). In the alternative, Proposed Defendant-Intervenors seek permissive intervention under Federal Rule of Civil Procedure 24(b).

## BACKGROUND

### I.    Background and procedural posture

This case is a part of the federal government's unprecedented effort to amass the sensitive personal information of millions of Americans. The demands made to Minnesota were not unique. DOJ has demanded the voter roll from at least 38 states,[3] and it has been publicly reported that it intends to amass this data from all 50 states.[4] DOJ seeks to use this data to create a first of its kind national voter database, which the federal government does

---

[3] *See* Martinez-Ochoa et al., *supra* n.1.
[4] *See* Corasaniti, *supra* n.2.

not have the authority to create.[5] Reporting indicates that the list maintenance purposes invoked by DOJ in its letters are pretextual, as DOJ intends to share the data collected through these efforts with the Department of Homeland Security to support criminal and immigration investigations.[6]

Invoking only the Help America Vote Act ("HAVA"), the DOJ sent Secretary Simon a letter on June 25, 2025, asking numerous questions about "the State's HAVA compliance," including about "voters who have been convicted of a felony," and demanding "Minnesota's current statewide voter registration list," including "both active and inactive voters." ECF No. 8-1. On July 25, 2025, the Office of the Secretary of State ("OSS") sent a detailed response to DOJ describing Minnesota's procedures for voter registration, voter verification, and list maintenance. ECF No. 8-2. In response to DOJ's demand for the voter list, OSS explained that it took seriously its obligation to "protect that data from unauthorized use," and so that such information would not be disclosed "unless expressly required by law." *Id.* at 7. On August 13, 2025, DOJ responded to OSS again referencing HAVA, and also invoking the Civil Rights Act ("CRA") as its purported authority for its demand for Minnesota's full voter file. ECF No. 8-3. The DOJ letter stressed it was demanding "*all fields*, which includes either the registrant's full name, date of birth, residential address, their state driver's license number or the last four digits of the

---

[5] *See, e.g.*, Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, Reuters (Sep. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09/.
[6] *Id.*

registrant's social security number as required by HAVA." *Id.* at 3 n.2. OSS responded to DOJ on August 21, 2025, explaining that neither HAVA nor the CRA "provides the clear legal basis necessary" to support turning over "private data on several million individuals." ECF No. 8-4 at 2. OSS further stressed to DOJ that it "would appreciate the opportunity to discuss this matter further" so that they might "determine whether there are ways to address the DOJ's concerns without unnecessarily disclosing private data on millions of Minnesotans." *Id.* at 6.

Without taking OSS up on the request to discuss the matter further, DOJ filed its Complaint in this matter on September 25, 2025. ECF No. 1. Proposed Defendant-Intervenors LWVMN, Common Cause, Jennifer Compeau, and Valerie Mangskau now timely seek intervention as defendants to protect their, and their members', interests in this action.

## II.    Proposed Defendant-Intervenors

The League of Women Voters Minnesota is a nonpartisan, nonprofit civic engagement membership organization with the mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy. Ex. A, Declaration of Amy Perna ("Perna Decl.") ¶ 3. Through its members and volunteers, the League conducts state and local advocacy, voter registration drives and other civic engagement work, and voter education. Perna Decl. ¶ 4. The League has more than 3,000 members throughout the State, of whom many are registered Minnesota voters. Perna Decl. ¶ 3. Through its members, staff, and volunteers, the League regularly conducts voter registration drives, and typically

assists between 10,000 to 20,000 Minnesotans in registering to vote each year. Perna Decl. ¶ 5. Common Cause is also a nonpartisan, nonprofit civic engagement membership organization. Ex. B, Declaration of Annastacia Belladonna ("Belladonna Decl.") ¶ 3. With more than 15,000 members across the state, including many registered Minnesota voters, Common Cause works to ensure a better democracy in Minnesota, striving to make Minnesota's government more honest, open, and accountable to the people. Belladonna Decl. ¶¶ 4-5. As politically engaged Minnesotans, many members of the League and Common Cause are registered voters who have entrusted their information to Secretary Simon and the State when they registered to vote. Perna Decl. ¶ 3; Belladonna Decl. ¶ 6; *see also* Minn. Stat. Ann. § 201.071. The Minnesota voter file, therefore, contains the personal identifying information of members of both the League and Common Cause and of other Minnesotans who the League and Common Cause assisted in registering to vote. Perna Decl. ¶¶ 11, 19; Belladonna Decl. ¶¶ 6, 9-10.

The League and Common Cause are committed to ensuring that all eligible Minnesota voters are able to register to vote and exercise their right to vote at each election. Perna Decl. ¶ 4; Belladonna Decl. ¶ 7. These organizational Proposed Defendant-Intervenors expend significant resources conducting on-the-ground voter engagement and assistance efforts, including registering voters to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote. Perna Decl. ¶ 4; Belladonna Decl. ¶ 8.

Jennifer Compeau and Valerie Mangskau are both eligible, registered voters in Minnesota. Ex. C, Declaration of Jennifer Compeau ("Compeau Decl.") ¶ 1; Ex. D,

Declaration of Valerie Mangskau, ("Mangskau Decl.") ¶ 1. Ms. Compeau and Ms. Mangskau had previously lost their right to vote in Minnesota due to a criminal history, but have since regained their eligibility to vote, rebuilt their lives, and become active members of their communities, including through civic engagement and voter registration work. Compeau Decl. ¶¶ 2-3; Mangskau Decl. ¶¶ 5-6. As registered voters with their own personal identifying information in the Minnesota voter file, Ms. Compeau and Ms. Mangskau do not want their sensitive personal identifying information to be unlawfully disclosed. Compeau Decl. ¶¶ 1, 4, 7; Mangskau Decl. ¶¶ 1-2. Ms. Compeau and Ms. Mangskau are also particularly concerned about the federal government's demand for Minnesota's full voter file in light of their experiences going through the criminal legal system, which have helped them understand the fear of many in this justice-impacted community of being targeted or otherwise harmed by the federal government's use or misuse of their sensitive personal information. Compeau Decl. ¶¶ 5-6; Mangskau Decl. ¶¶ 3-4.

The relief requested by the United States would impair the Proposed Defendant-Intervenors' interests, including the individual interests of Ms. Compeau and Ms. Mangskau, as well as the interests of the League and Common Cause, by threatening voters' privacy, chilling voter engagement, facilitating mass voter challenges and other barriers to the free exercise of the right to vote, and thus harming the League and Common Cause's members and undermining their grassroots voter-engagement work. Perna Decl. ¶¶ 15-16, 18-19; Belladonna Decl. ¶¶ 6, 12-15.

## LEGAL STANDARD

Under Rule 24(a), "a court *must* permit anyone to intervene who: (1) files a timely motion to intervene; (2) claims an interest relating to the property or transaction that is the subject of the action; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014) (emphasis added) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 24(a)(2); 7C Charles Alan Wright, et al., Federal Practice and Procedure § 1908 (3d ed. 1998 & Supp. 2024). "Rule 24 should be construed liberally, with all doubts resolved in favor of the proposed intervenor." *Nat'l Parks*, 759 F.3d at 975 (internal quotation marks omitted). Additionally, "[i]n the Eighth Circuit, a prospective intervenor must establish Article III standing." *Id*. at 974 (internal quotation marks omitted). Where, as here, "the defendant will be compelled to cause the alleged injury to the intervenor if the plaintiff prevails, the intervenor satisfies the traceability requirement even though the defendant and the intervenor seek the same outcome in the case." *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011). Where the party requesting intervention satisfies Article III and the requirements of Rule 24(a), the court has no discretion to deny intervention. *See* Fed. R. Civ. P. 24(a) ("[T]he court *must* permit anyone to intervene who" satisfies the required elements.) (emphasis added).

In the alternative, the court may utilize its discretion to grant permissive intervention when the proposed intervenor can show "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action

have a question of law or fact in common." *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015). The "principal consideration" is whether the proposed intervention would unduly delay or prejudice the adjudication of the original parties' rights. *Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) (citations omitted); *see also* Fed. R. Civ. P. 24(b)(3); 7C Charles Alan Wright, et al., Federal Practice and Procedure § 1913 (3d ed. 1998 & Supp. 2024) (collecting cases).[7]

## ARGUMENT

### I.    Proposed Defendant-Intervenors Are Entitled to Intervene as of Right Pursuant to Rule 24(a).

#### A. Proposed Defendant-Intervenors Have Article III Standing.

The League, Common Cause, Ms. Compeau, and Ms. Mangskau have Article III standing that supports their intervention here. In considering motions to intervene as defendants, courts in this Circuit assess standing based on the impact of the relief sought by the plaintiff, rather than the actions of a defendant. *See, e.g.*, *Nat'l Parks*, 759 F.3d at 975 (granting intervention as a matter of right because "if the court grants the relief requested in the complaint, the threat of injury to [the intervenor] is real"); *ACLU of Minn.*, 643 F.3d at 1093. If the United States succeeds in this action, the personal identifying information of individual Proposed Defendant-Intervenors and members of the League and Common Cause will be disclosed in a way contrary to law, and to privacy and voting

---

[7] In compliance with Rule 24(c), Proposed Defendant-Intervenors attach their answer to the instant Motion. *See* Ex. E. Proposed Defendant-Intervenors reserve their right to file a motion to dismiss under Rule 12(b) in compliance with any schedule set by this Court or that set out in the Federal Rules of Civil Procedure.

rights—and in the case of Ms. Compeau and Ms. Mangskau, against their express wishes. Compeau Decl. ¶ 4; Mangskau Decl. ¶ 2. Disclosure of such protected information is a straightforward Article III injury. And because the Plaintiff prevailing in this action will force Defendants "to cause the alleged injury to the intervenor," Proposed Defendant-Intervenors here "satisf[y] the traceability requirement even though the defendant and the intervenor seek the same outcome in the case." *ACLU of Minn.*, 643 F.3d at 1093.

An organization has standing to sue on behalf of its members where (1) its "members would otherwise have standing to sue in their own right"; (2) the "interests" that the suit "seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).

Like Ms. Compeau and Ms. Mangskau, members of the League and Common Cause who are registered to vote (and whose information is therefore contained within the state's voter file, *see* Minn Stat. Ann. § 201.071) have standing to sue in their own right. Courts have consistently recognized that the "nonconsensual dissemination of personal information" is "sufficient to establish a concrete and particularized" injury in fact. *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing "disclosure of private information" as an injury "traditionally recognized as providing a basis for lawsuits in American courts"). This injury is exactly what would befall Ms. Compeau, Ms. Mangskau and these organizational members should the United States prevail in this action. Registered voter members of these organizations have an expectation of privacy with respect to their private voter information

9

because the sensitive personally identifying information contained within the voter file is expressly protected by Minnesota law, *see* Minn. Stat. Ann. § 201.091, subdiv. 9, and these voters should be able to rely upon that legal protection.[8] Moreover, the Minnesota Constitution guarantees informational privacy, which includes "the right to prevent the government from disclosing private information." *Matter of Agerter*, 353 N.W.2d 908, 913 (Minn. 1984). The threat to these voters' information is further exacerbated by the federal government's failure to comply with protections established under federal law. *See, e.g.*, 5 U.S.C. § 552a; 44 U.S.C. § 3501 note. The elements of causation and redressability are met here as well, since should the Court order the relief sought, Defendants here will be "compelled to cause the . . . injury" to these registered voters and the injury would be redressed by a court decision denying the requested relief because Proposed Defendant-Intervenors "seek[] to prevent" the DOJ "from obtaining [the] order" sought. *See Nat'l Parks*, 759 F.3d at 975; *ACLU of Minn.*, 643 F.3d at 1093.

Courts have recognized that associations have an interest in protecting the private information of their members. *See, e.g.*, *Am. Farm Bureau Fed'n*, 836 F.3d at 968–69 (holding associations had standing to challenge disclosure of members' personal information); *AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 73–74 (D.D.C. 2025). And

---

[8] Because neither HAVA nor the Civil Rights Act mandates disclosure of the data at issue, there is no basis for preemption of Minnesota's voter privacy laws, which continue to govern the treatment of this information. Federal elections legislation only pre-empts state law "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). As the federal laws do not mandate the unlimited release of the records sought, they do not pre-empt Minnesota's privacy laws.

here, where the information at issue is contained within the voter file, this protection is particularly germane to the League and Common Cause's purposes as they work to engage citizens in the democratic process and, through their work registering voters, actually contribute to the collection of the personal information contained within the voter file. Perna Decl. ¶ 11; Belladonna Decl. ¶¶ 9-10. The League and Common Cause meet the third prong of the *Hunt* test as the only relief sought here is prospective declaratory and injunctive relief, which does not require the participation of individual members in the lawsuit. *See Hunt*, 432 U.S. at 344; *see also Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005).

### B. Proposed Defendant-Intervenors Meet Each of the Requirements of Rule 24(a).

1. The motion is timely.

Proposed Defendant-Intervenors' motion is timely. They submitted their motion within weeks of the initial filing of the case, before Defendants' counsel have entered a notice of appearance, and before any deadlines in the case have been set. *See generally* Docket. To evaluate timeliness, courts consider "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig*., 716 F.3d 1057, 1065 (8th Cir. 2013). As this motion has been filed mere weeks after the filing of the lawsuit, which has now been stayed, all of these factors demonstrate that this motion is timely.

11

Courts have recognized that "[i]ntervention is clearly timely when no legally significant proceedings have occurred." *S.D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999). Thus, in a case like this one, where Proposed Defendant-Intervenors sought to intervene during an early stage of the case, before any significant proceedings have occurred, and have done so expeditiously, there is no prejudice to any existing party. *See id*.; *see also, e.g.*, *Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Engineers*, 2020 WL 6262376, at *5 (D. Minn. Apr. 9, 2020) ("[T]here is little likelihood that Plaintiffs or Defendants will be prejudiced by the timing of . . . intervention . . . at this early stage of the case.").

2. <u>Proposed Defendant-Intervenors have a recognized interest which may be impaired by the disposition of this action.</u>

To meet the interest requirement, a proposed intervenor must show "a recognized interest in the subject matter of the litigation." *Nat'l Parks*, 759 F.3d at 975. That interest "must be substantial, direct, and legally protectable." *Friends of the Boundary Waters Wilderness*, 2020 WL 6262376, at *5. And to meet the impairment requirement, the intervenor need only show that "its alleged interest is one that *may* be impaired by the results of the litigation." *Id*. (emphasis added). A proposed intervenor can meet this requirement if it will be "directly impacted by [a] court order" granting plaintiff's requested relief. *Nat'l Parks*, 759 F.3d at 976. Because Article III standing is a more exacting standard than the interests required to support intervention, Proposed Defendant-Intervenors quite clearly have a sufficient interest in this action that would be impaired by an unfavorable decision in this action. *See supra* Section I.A.

12

The interest in protecting the information of voters and the interest in ensuring voter participation are clearly distinct interests in the subject matter of this lawsuit, which concerns whether highly sensitive voter information can be shared absent express legal authorization. First, even putting aside that the information at issue here is voter information, ensuring that the confidentiality of *any* private information is preserved is a protectable legal interest. *See, e.g.*, *Kalbers v. U.S. Dep't of Just*., 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents). Moreover, because the personal information of voters like Ms. Compeau, Ms. Mangskau, and members of the League and Common Cause is expressly protected by Minnesota law, this is clearly a legally protected interest that meets the standards of Rule 24. Second, the risk of the dissemination of such voter information could further serve as a chilling effect on voter participation and civic engagement, which would directly impair the activities of state voter engagement organizations like the League and Common Cause. Perna Decl. ¶ 16; Belladonna Decl. ¶¶ 10, 12. These organizations' interest in engaging voters and encouraging participation in our democracy will be impaired because Minnesotans will be less likely to register to vote for fear that their data will be released or used inappropriately, contrary to the protections detailed in state and federal law. Perna Decl. ¶¶ 14-16; Belladonna Decl. ¶ 12. Voters, like Ms. Compeau, Ms. Mangskau, and the members of the League and Common Cause, also have an interest in ensuring that their right to vote is unencumbered (and voter engagement organizations have a direct interest in ensuring this same protection), which courts have consistently recognized as a protectable interest sufficient to support

intervention. *See, e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011); *Clark v. Putnam Cnty.*, 168 F.3d 458, 461–62 (11th Cir. 1999); *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1480 (11th Cir. 1993); *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, 2024 WL 3454706, at *2 (N.D. Ill. July 18, 2024); *Penn. State Conf. of NAACP v. Chapman*, 2023 WL 121867 (W.D. Pa. Jan. 6, 2023); *Paher v. Cegavske*, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020); *Bellitto v. Snipes*, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016); *see also Overby v. Simon*, 2020 WL 6391287, at *3 (D. Minn. Nov. 2, 2020) (recognizing that "a voter who has cast a ballot in the election . . . has an interest in the subject matter and outcome of" litigation related to the election).

These impacts on Ms. Compeau. Ms. Mangskau, the League, Common Cause, and their members are more than enough to satisfy the impairment requirement. *See, e.g.*, *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, 2021 WL 963758, at *11 (D.S.D. Mar. 15, 2021), *aff'd*, 75 F.4th 870 (8th Cir. 2023) (impairment factor satisfied even though it was unclear whether the plaintiff's requested remedy would be detrimental to the intervenor). A decision in favor of the United States would expose Defendant-Intervenors to the very harms they seek to avoid, including the irrevocable disclosure of private data.

3. <u>The existing parties do not adequately represent Proposed Defendant-Intervenors.</u>

Proposed Defendant-Intervenors' interests are not adequately represented by the existing parties. First, the United States seeks disclosure of the very information that Proposed Defendant-Intervenors seek to protect, so it is plain they do not represent these

parties' interest. Second, because the League, Common Cause, Ms. Compeau, and Ms. Mangskau have interests that are distinct from the government, their interests are not adequately represented by the State.

The demonstration of inadequacy of representation is "a minimal burden," *Nat'l Parks*, 759 F.3d at 976, and a proposed intervenor only need demonstrate that the existing representation "may be" inadequate, *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc*., 60 F.3d 1304, 1308 (8th Cir. 1995) ("This requirement is met by a minimal showing that representation 'may be' inadequate."). And while that bar is sometimes raised when one of the existing parties is a governmental agency due to the presumption that the government represents the interests of all citizens, that presumption "is triggered only to the extent the proposed intervenor's interests coincide with the public interest." *Nat'l Parks*, 759 F.3d at 976–77 (cleaned up).

While Proposed Defendant-Intervenors and the State likely share the same ultimate objective in this litigation, that is, the denial of the requested relief, voters, like Ms. Compeau, Ms. Mangskau, and members of the League and Common Cause, "also hold interests" that "may be separate and distinct from" the government's interests. *Overby*, 2020 WL 6391287, at *4. Proposed Defendant-Intervenors have a personal interest in ensuring that the private information of themselves and their members remains private, by preventing the disclosure of sensitive, personal information. As government entities, Defendants have a generalized interest in carrying out their legal obligations under federal and state law and in minimizing burdens on government employees and resources—but

they do not have a direct, personalized stake in the privacy of Proposed Defendant-Intervenors and their members. *See, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."). This divergence of interests, between the government's general need to balance various considerations, and the Proposed Defendant-Intervenors' personal and particular interest in a case's outcome, is a classic scenario supporting granting a motion to intervene. *See, e.g.*, *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110-11 (M.D. Pa. 2011) (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission).

Moreover, there may be issues, positions, and claims that a government entity might not raise that are critical to individuals or public interest organizations like the League and Common Cause. For example, there is a risk that political considerations external to the legal issues presented by this case may motivate Defendants to pursue a settlement that would jeopardize the private information of Proposed Defendant-Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL

3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns"). As such, any presumption that the State adequately represents Proposed Defendant-Intervenors is rebutted because the State is required to "weigh competing interests and favor one interest over another." *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2003).

Thus, while Proposed Defendant-Intervenors and the State have "a common legal goal," they do not have the same interests in this matter, and thus, there "is no existing party to this litigation who can adequately represent" Proposed Defendant-Intervenors' "identified interests," which makes intervention appropriate. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir. 1995).

## II.    In the Alternative, the Court Should Grant Permissive Intervention.

Should the court decline to grant intervention as of right, it should nonetheless exercise its broad discretion to grant permissive intervention to Proposed Defendant-Intervenors. In determining whether to grant permissive intervention, courts consider "(1) whether the motion to intervene is timely; (2) whether the movant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly

delay or prejudice adjudication of the original parties' rights." *Franconia Mins*., 319 F.R.D. at 266. While the grant of permissive intervention rests in the Court's discretion, the "principal consideration" is this final factor: whether the proposed intervention would unduly delay or prejudice the adjudication of the original parties' rights. *Id.* at 268.

Proposed Defendant-Intervenors' motion is supported by each of these factors. The motion is inarguably timely. *See supra* Section I.B. And Proposed Defendant-Intervenors' claims self-evidently share common questions of law and fact with the main action: indeed, if the main action did not exist, Proposed Defendant-Intervenors would have no claims that needed to be adjudicated because the voter files would remain protected as expected under governing Minnesota law. Finally, as to the "principal consideration," a grant of Proposed Defendant-Intervenors' motion would not cause any delay or prejudice whatsoever. This case remains "in its earliest stages"—indeed it is stayed without the Defendants yet even having appeared—so any "concerns related to rework or repetition are minimal." *Franconia Mins*., 319 F.R.D. at 268.

Permissive intervention is particularly appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." (internal quotation marks and citation omitted)). Proposed Defendant-Intervenors will contribute to the Court's resolution of key questions of law and fact common to the main action, including: (1) whether federal law permits the United States to force Defendants to give it the personal information it seeks;

18

(2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Defendant-Intervenors expect to present a distinct perspective on the legal and factual issues before the Court; their views will thus complement or amplify Defendants' arguments. Courts often grant intervention to voters and voter engagement organizations, like the League and Common Cause. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *Judicial Watch, Inc. v. Pennsylvania*, No. 1:20-cv-708, ECF 50 at 3 (M.D. Pa. Nov. 19, 2020) (granting permissive intervention in NVRA case to Common Cause Pennsylvania and League of Women Voters of Pennsylvania upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020) (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant Proposed Defendant-Intervenors' motion to intervene as of right, or in the alternative, permissive intervention.

Dated: October 14, 2025

Theresa J. Lee*
Sophia Lin Lakin*
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

Patricia J. Yan*
**American Civil Liberties Union Foundation**
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

*Pro Hac Vice Applications Forthcoming*

Respectfully submitted,

*s/ David P. McKinney*
Teresa J. Nelson (MN #0269736)
David P. McKinney (MN #0392361)
**American Civil Liberties Union of Minnesota**
2828 University Ave SE
Minneapolis, MN 55414
(651) 645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org

*Attorneys for Proposed Defendant-Intervenors League of Women Voters Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*

20