| 86TH CONGRESS <br> 1st Session | HOUSE OF REPRESENTATIVES | REPORT <br> No. 956 |
|---|---|---|

# CIVIL RIGHTS

August 20, 1959.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. RODINO, from the Committee on the Judiciary, submitted the following

# REPORT

[To accompany H.R. 8601]

The Committee on the Judiciary to whom was referred the bill (H.R. 8601) to enforce constitutional rights, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

### PURPOSE OF THE LEGISLATION

The bill is designed primarily to provide more effective means to enforce the civil rights of persons within the jurisdiction of the United States. In furtherance of that objective, the bill proposes to strengthen the penal law with respect to the obstruction of court orders in public school desegregation cases. It proposes to make criminal flight in interstate or foreign commerce to avoid prosecution or punishment for damaging or destroying any building or other real or personal property. The bill provides for preservation of Federal election records and authorizes their inspection by the Attorney General. It amends the Civil Rights Act of 1957 so as to extend the existence of the Civil Rights Commission for 2 years. Finally, it contains a proposal to enable the Federal Government to provide for the education of all children of the members of our Armed Forces, whether they are or are not residents on Federal property, when public schools have been closed because of desegregation decisions or orders.

### HISTORY OF THE LEGISLATION

Shortly after the convening of the 86th Congress, many bills concerning civil rights were introduced and referred to the Committee on the Judiciary.

★

Exhibit 3-1

On February 5, 1959, the President of the United States transmitted to the Congress a message of recommendations pertaining to civil rights (H. Doc. No. 75, 86th Cong., 1st sess.). On the same day executive communications which implemented the message of the President were forwarded to the Congress by the Attorney General, Secretary of Labor, and the Secretary of Health, Education, and Welfare.

A Judiciary Subcommittee conducted hearings on the 39 bills which had been referred to it. These proposals related to almost every aspect and facet of civil rights, including such topics as voting, antilynch, fair employment practices, equal protection of the laws, crimes involving discrimination and deprivation of civil rights, school desegregation, Civil Rights Commission, Joint Congressional Committee on Civil Rights, and authorization for the Attorney General to institute civil actions to protect and enforce civil rights.

The hearings were held on March 4, 5, 11, 12, 13, 18, 19; April 14, 15, 16, 17, 22, 23, 24, 29, 30; May 1, 1959 (civil rights hearing before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, 86th Cong., 1st sess., serial No. 5).

During the course of those hearings, the testimony—while it related to all the subjects of the legislative proposals—was devoted primarily to two bills, H.R. 3147 and H.R. 4457, introduced by Representatives Celler and McCulloch, respectively. The witnesses represented all of the various interests concerned with the legislation; the witnesses included the congressional authors of the proposals, other Members of Congress, the Attorney General, the Secretaries of Labor and of Health, Education, and Welfare, representatives of the Civil Rights Commission and of the President's Committee on Government Contracts, State officials—Governors, attorneys general, members of State legislatures, local officials—private citizens as well as representatives of various organizations concerned with the legislation. The subcommittee afforded to all who were interested a reasonable opportunity to present their views and interests on the proposals. Those who did not appear personally were given the opportunity to submit for the record any relevant matter.

After the hearing, the subcommittee met in executive sessions to consider the bill H.R. 3147: It struck out of that proposal all after the enacting clause and inserted in lieu thereof an amendment in the nature of a substitute. The substituted proposal consisted of a combination of the legislative provisions contained in the bills, H.R. 3147 and H.R. 4457, and the amended version was recommended to the full Judiciary Committee.

The substitute version of the legislation before the full Judiciary Committee contained nine titles. Briefly, these were:
    1. Obstruction of Court Orders in School Desegregation Cases.
    2. Flight To Avoid Prosecution for Destruction of Educational or Religious Structures.
    3. Authorization to the Attorney General To Institute Civil Proceedings To Protect the Right to Equal Protection of the Laws.
    4. Preservation of Federal Election Records.
    5. Extension of the Civil Rights Commission for 2 Years.
    6. Creation of a Commission on Equal Job Opportunity Under Government Contracts.

Exhibit 3-2

7. Provision for the Education of Children of Members of the Armed Forces.
8. Provision for Grants To Assist State and Local Educational Agencies To Effect Desegregation.
9. A General Separability Provision.

The full Judiciary Committee, in its deliberation and consideration of the amended bill H.R. 3147, adopted six of the recommendations of the subcommittee, namely, the obstruction of court orders, flight to avoid prosecution with a broadened provision to include the destruction of any building or other real or personal property, preservation of Federal election records, extension of the Civil Rights Commission for 2 years, education of children of members of the Armed Forces and, finally, a separability title. Certain other amendments were made in each of these titles with the exception of that title relating to the education of children of members of the Armed Forces. Thus eliminated were the titles relating to the authorization to the Attorney General and the Commission on Equal Job Opportunity Under Government Contracts and grants to assist State and local educational agencies to effectuate desegregation. After the full committee had approved this substitute version of H.R. 3147, the chairman introduced a clean bill, H.R. 8601 which contained the titles as amended and approved by the full Judiciary Committee. That bill, H.R. 8601, was referred to the Committee on the Judiciary and the full committee then ordered it reported without amendment.

## GENERAL STATEMENT

Since May 17, 1954, the date in which the Supreme Court of the United States rendered its opinion in the school segregation cases, the principle has been recognized that racial segregation sanctioned by law is not equality under the law. This Nation has been cognizant of its moral responsibility of protecting the constitutional rights of all within the jurisdiction of the United States. By the enactment of the Civil Rights Act of 1957, Congress, for the first time since the days of Reconstruction, placed upon the statute books a law designed to implement the constitutional rights provided in the 14th and 15th amendments.

While it is true that over the past 4 years some progress has been made toward achieving the American goal of providing equal opportunity for all and elimination of discrimination because of race, creed, color or national origin, the problem is far from being solved and the ultimate goal still far distant. The hearings conducted on this legislation clearly indicate the need for additional legislation to implement the enforcement of civil rights. There have been instances and incidents of disorder and violence in the field of desegregation in public education, many State statutes have been enacted designed to impede and obstruct the ruling of our Federal courts in desegregation cases as well as examples of interference with the fundamental American right to vote.

H.R. 8601 is designed to assist in the achievement of the great American goal of equal rights for all under the law by strengthening the law enforcement functions of the Federal government. Its objective is to make more certain that the rights guaranteed under the Constitution and the laws of the United States will be enjoyed by all,

Exhibit 3-3

regardless of race, creed, color or national origin. It is not directed at any particular section of the country or segment of our population, but its scope is national and its applicability general. It is the opinion of the committee that the enactment of this legislation would provide adequate tools for the protection of rights and privileges guaranteed by the Constitution and the laws of the United States, particularly with regard to the right to vote.

## A SECTIONAL ANALYSIS OF THE LEGISLATION

*Title I (obstruction of court orders)*

Section 101 of the bill proposes to amend chapter 73 of title 18 of the United States Code with respect to obstruction of court orders in school desegregation cases. Accordingly, it amends that title by adding at the end of the chapter a new section. The measure would make it a Federal offense to willfully use force or threats of force to obstruct or impede court orders for school desegregation purposes; upon conviction, the offender could be punished by a fine of not more than $1,000 or imprisonment for not more than 60 days or both.

It further provides that other injunctive or civil relief against the type of conduct made criminal by this proposal is not to be denied on the grounds that such conduct is a crime. In this regard, provision is made that any fine or imprisonment imposed for the violation of such an injunction shall not be in addition to that imposed for a violation of this section.

It further provides for the exemption of the acts of the student, officer, or employee of a school when the act is done at the direction of or is subject to discipline by an officer of the school.

The need for this particular legislation is amply demonstrated by the experience of the occurrence in Little Rock in 1957. While it is true that this section properly covers individual actions, it is contemplated that its use would be principally in coping with concerted action. It is impossible for a democracy to function if mob violence replaces our tested methods of free expression either in judicial or political processes. The Federal Government must have authority to act effectively whenever the execution of the decrees of the Federal court are obstructed by force or threats of force.

It is the opinion of the Department of Justice that there is doubt as to whether the existing authority of Federal courts is sufficient to impose effective sanctions against the members of a mob who, by threats or force, willfully prevent, obstruct, impede, or interfere with the exercise of rights or the performance of duties under a school desegregation order of a Federal court. The objective of this proposal is to remove that doubt. Under Federal procedure, an individual cannot ordinarily be held in contempt of court unless he was either a party against whom the decree was issued or was acting in concert with such a party. Thus it is clear that in an ordinary situation a mob is not in concert with those named in a school desegregation order. The only alternative the Government would have in such a case of mob action would be to return to the court for a new injunction against its leaders and then prove subsequent acts on their part violating the order so as to establish a contempt.

The present obstruction of justice statute (18 U.S.C. 1503) also appears to be inadequate for such a situation. The particular provi-

Exhibit 3-4

sion of that section, namely 4, dealing with one who corrupts or by threats of force endeavors to impede "due administration of justice" would be applicable only if it could be considered that the action involved obstructed or impeded the "due administration of justice." That particular phrase has been a subject of narrow interpretation by the courts and while it is not possible to state categorically that a desegregation decree is beyond the reach of the existing statute, there is much doubt as to whether or not a prosecution of mob leaders could be sustained.  The Department of Justice has recommended the enactment of this provision as a specific and firm responsibility of the proven need for effective Federal action to preserve the lawfully determined rights of individual citizens and the integrity of our Federal judicial system.

*Title II (flight to avoid prosecution for damaging or destroying any building or other real or personal property)*

The proposal would make it a felony, punishable by a fine of not more than $5,000 or imprisonment of not more than 5 years or both, to move in interstate or foreign commerce, to avoid local prosecution, custody, or confinement after conviction for willfully damaging or destroying or attempting to damage or destroy by fire or explosive any building, structure, facility, vehicle, dwelling house, synagogue, church, religious center, or educational institution, public or private. Flight to avoid testifying in criminal proceedings relating to such offenses would likewise be punishable.  Such criminal offenses as these bombings present very difficult investigation and detection problems for local law enforcement agents, for it is one of the most difficult types of crime to solve.  Clues and evidence are ordinarily destroyed by the explosive and more often than not there are very few clues, such as are ordinarily available in other crimes, which would assist in the apprehension of the offender.  It is the type of crime that requires scientific equipment and investigation.  Moreover, the interstate aspects of the offenses demand utilization of the resources and powers of the Federal Government.  It is believed that the Federal Bureau of Investigation can provide the much needed experience and scientific investigative technique to assist—as it has done in the past—local law enforcement officials.  The fugitive felon approach is not new, for the Fugitive Felon Act was enacted in 1934 (18 U.S.C. 1073) and has been the means of punishing persons who travel in interstate commerce with the intent to avoid prosecution of the State law for certain enumerated felonies, or to avoid testifying in State felony proceedings.  This proposal is consistent with that provision as well as with the principle that local crimes are the responsibility of local law enforcement agencies and that in such cases the Federal Bureau of Investigation is not a national police force but acts to supplement State law enforcement.  It is not designed as a substitute for State or local action.

The proposal differs from the Fugitive Felon Act in certain particulars.  While the Fugitive Felon Act applies to flight from prosecution in enumerated common law and statutory felonies, this proposal applies to flight from any prosecution of the willful destruction or damaging by fire or explosive of any building or other real or personal property.  Whether the State prosecution would be for a felony or misdemeanor is immaterial.

Prosecutions under this proposal would be had in the Federal judicial district in which the original crime was alleged to be committed or in which the person is held in custody or confinement. It also contains a specific proviso the purpose of which is to make clear that this section shall not be construed to prevent any State or local body from prosecuting an offense over which they have jurisdiction in the absence of this new section.

The Department of Justice, in its recommendations for the enactment of this section, limited its applicability to those instances of flight to avoid prosectuion for the destruction of educational or religious structure only. However, it was the opinion of the committee that this proposal should be broadened so as to encompass flight to avoid prosecution for the destruction of any building or other real or personal property.

*Title III (Federal election records)*

Section 301 would require the retention and preservation for a period of 2 years of any general, special, or primary election records involving candidates for Federal office. The Federal offices are the Office of the President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner of Puerto Rico. It would include all records and papers in the possession of election officers relating to application, registration, payment of poll tax, or any other act requisite to voting in such elections. Provision is made, however, that where such records are required by State law to be deposited with a custodian, such election records may be so deposited and the duty of retention and preservation then devolves upon that custodian. A willful failure to retain and preserve the records is made an offense punishable by a fine of not more than $1,000 or imprisonment for not more than 1 year or both.

Section 302 provides that any person, whether or not an officer of election or custodian, willfully steals, destroys, conceals, mutilates, or alters any of the records required to be retained and preserved shall be fined not more than $1,000 or imprisoned not more than 1 year or both.

Section 303 provides that such records as required to be preserved by this title shall, upon the written demand of the Attorney General or his representative to the party having custody, possession, or control of them shall be made available for inspection, reproduction and copying by the Attorney General or his representative. Demand, however, must contain a statement of the basis and the purpose therefor.

Section 304 provides that when a demand is made by the Attorney General, the record shall be reproduced either at the principal office of the person upon whom the demand is made or at the office of the U.S. attorney in the district in which the records and papers are located.

Section 305 provides that unless ordered by a court of the United States, neither the Attorney General nor his representative nor any employee of the Department of Justice should disclose any record or paper produced pursuant to this title except to the Congress and any of its committees, governmental agencies, or in the presentation of a case or proceeding before a court or grand jury.

Exhibit 3-6

Section 306 provides that in the event of nonproduction, jurisdiction would be conferred upon the Federal district courts to resolve any dispute which might arise in connection with the exercise of the authority conferred upon the Attorney General by this title including appropriate process to compel the production of the record or paper.

Section 307 defines the term "officer of election" to include any person who under color of the law performs or is authorized to perform any function, duty or task with any application, registration, payment of poll tax or other act requisite to voting at any one of the enumerated elections at which votes are cast for candidates for the specified Federal offices.

The Department of Justice has recommended the enactment of the substances of this proposal.

The purpose of title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race. This is the same purpose contained in the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote. Experience has shown the need for this legislation. So long as there is lacking a suitable provision for access to voting records during the course of an investigation and prior to the institution of a suit, the authority of the Attorney General is rendered relatively ineffective. The situation requires evidence which is practically impossible to assemble unless access is had to detailed information concerning application, registration, tests, and other acts and procedures requisite to voting.

Moreover, such information is mandatory for a proper evaluation of complaints.

The Department of Justice has no existing power in civil proceedings to require the production of these records during any investigation it may conduct on complaints of a denial to vote because of race. The need for this legislation is evident from the refusal of some State and local authority to permit such inspection. Moreover, the Civil Rights Commission, which does have the power to subpena such records, has found it necessary to utilize its power to compel production. As was said in the recent Alabama case in re *George C. Wallace et al.* (170 F. Supp. 63, 1959), the inspection of voting records—

> must be considered to be an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin.

The constitutionality of the provisions contained in title III of the bill is beyond question of a doubt under the authority of *United States* v. *Classic* (313 U.S. 299), wherein the authority of Congress to legislate concerning any and all elections affecting Federal offices, whether general, special, or primary, as long as they are "an intricate part of the procedure of choice or where in fact the primary effectively controls their choice."

The Department of Justice has recommended the substance provisions of title III of the proposal.

*Title IV (Civil Rights Commission extended for 2 years)*

Section 401 would extend the life of the Civil Rights Commission for an additional 2 years. Under the Civil Rights Act of 1957, the

Exhibit 3-7

Commission is required to submit its final report not later than September 9, 1959. Provision is made in this section also for an interim report to be submitted to the President and the Congress not later than September 1, 1959.

Because of circumstances beyond its control, the Civil Rights Commission was not able to commence operations for a number of months following the enactment on September 9, 1957, of the Civil Rights Act. Termination of the existence of the Commission by September of this year would not provide a full opportunity to meet the statutory responsibility imposed upon it by Congress. There is a definite need for further extension in order to make the study and analysis of the problems involved in this complex and difficult field. Moreover, in attempting to carry out the duties imposed upon it by the Congress, the Commission has encountered extensive litigation as indicated by the examples in Alabama and more recently in Louisiana. In these instances, the Commission was concerned with the inspection of election records relative to its study of the question of voting rights.

The Commission has also undertaken programs of research, study, and investigation in the fields of education and housing. Thus the extension of the life of the Commission would permit it to continue its work in these three particular fields as well as new programs in other related fields dealing with equal protection of the laws. It is the opinion of the committee that the best interests of the country would be served by the extension of the life of the Commission.

Section 402 of title III would remove any doubt as to the authority of the members of the Commission to administer oaths. Some questions have been raised as to the power of the Commissioner to administer oaths to witnesses, and it is the purpose of the proposed amendment to remove such doubt. Since existing law requires that complaints submitted to the Commission be under oath of affirmation, it is only proper that the subsequent investigation of that complaint should also be in the form of sworn testimony. The authority provided by this section would facilitate the handling of these complaints particularly during the course of hearings.

Section 403 would amend the Civil Rights Act of 1957, section 105(a), by striking all the words "in accordance with Civil Service and Classification Laws" and inserting "without regard to the provisions of the Civil Service Laws and the Classification Act of 1945, as amended." The Commission, which is a temporary Government agency, has experienced difficulty in obtaining the services of an adequate number of fully qualified personnel for part-time and short tenure employment. This has been true not only on the clerical level but also among professional personnel. It is the opinion of the committee that, as has been done with other commissions of a temporary nature, the requirements for employment under the Civil Service Laws and Classification Act should be removed in order to facilitate the work of the Commission. The Department of Justice has recommended substantive provisions of this title.

*Title V (education of children of members of the Armed Forces)*

Title V would amend Public Laws 815 and 874, 81st Congress, as amended, which authorize Federal payments to school districts which provide free public education to children whose parent resides or works on Federal property which is not subject to State or local taxation.

Exhibit 3-8

This title recognizes the unique responsibility of the Federal Government with respect to the education of children of military personnel. Since the members of the Armed Forces serve in communities under orders, their children receive public education as it is provided in the community in which they reside.

The recent closure of certain secondary schools in Norfolk, Va., involved approximately 2,500 school-age children whose parent was on active duty with the Armed Forces in the area. Of that number, 350 children who resided on Federal military posts would have been the only ones for which the Federal Government could have provided schooling if the schools had remained closed. The purpose of this title is to permit the Government to provide for those other children of military personnel who live off Federal property. It is estimated that the proposed legislation could possibly affect the education of some 70,000 children of military personnel situated in States where the closure of schools is a possibility.

Section 6(a), Public Law 874, now requires the Commissioner of Education to make arrangements to provide free public education for children residing on Federal property if the State and its subdivisions may not spend tax revenues for their education or if no local public educational agency is able to provide suitable free public education for them.

Section 501 of the bill would amend section 6(a) to permit the Commissioner to make arrangements also for children of members of the Armed Forces on active duty, whether or not residing on Federal property, where the schools usually provide free public education for them are made unavailable to them by official action of State or local governmental authority and no local public educational agency is able to provide them with suitable free public education.

Subsection (b) of 501 provides complementary amendments to section 6(d) of Public Law 874. The existing provision permits the Commissioner, when he makes the arrangements for provision of education for the federally connected children, to make such arrangements only with a local educational agency or with the Federal agency having jurisdiction over the property on which they reside. Where this new category of children of Armed Forces personnel are involved, arrangements could also be made with the head of the Federal department or agency having jurisdiction over the parents of some or all of the children.

Section 6(d) of Public Law 874 limits the arrangements to those which provide for the use of either facilities situated on Federal property or facilities belonging to a local educational agency. The amendment provided in subsection (b) of section 501 would make this limitation inapplicable where the Commissioner is required to make those arrangements for the new category of children.

Section 502 of title IV of the bill amends Public Law 815, 81st Congress, as amended. The proposal of the bill would authorize the Commissioner of Education to acquire possession of any school building constructed with the aid of Federal funds after the enactment of the proposed amendments contained in this section, when the local educational agency which owns the building is no longer using it for free public education and the Commissioner needs the building to provide education for children of military personnel or for other children who reside on Federal property. While the school remains

Exhibit 3-9

in Federal possession, the Commissioner would pay the local district a rental fee proportionate to its share of the cost of constructing the building.

Section 6(b), Public Law 815, 81st Congress, as amended, now requires applications of local educational agencies for the approval of construction projects, which must be filed before the agencies may receive payments to help finance such projects, to contain or be supported by various assurances relating to the authority of the local agency, and other relevant matters. The amendment proposed in section 502 of the bill would add to this provision the requirement of an assurance that any facilities constructed with aid under this law, the application for which is approved after the enactment of the bill, will be made available to the Commissioner in case they are not being used to provide free public education and that the Commissioner need them to provide facilities for the education of children who reside on Federal property or whose parent is on active duty with the Armed Forces. Subsection (b) of section 502 would amend section 10 of Public Law 874.

Subsection (b) of section 502 would amend section 10 of Public Law 815. Existing law now requires the Commissioner to make arrangements for the constructing or otherwise providing the minimum facilities necessary for the education of children who will be residing on Federal property at the end of the next fiscal year if the State and its subdivisions may not spend tax revenues for their education or if no local educational agency is able to provide suitable free public education for them.

Section 502(b) of the bill would amend this section to permit the Commissioner to make such arrangements to provide, on a temporary basis, such facilities for children of the members of the Armed Forces on active duty, whether or not residing on Federal property, where the schools usually providing free public education for them are made unavailable to them by official action of State or local governmental authority and no local educational agency is able to provide them with suitable free public education.

Section 502(c) of the bill further amends section 10 of Public Law 815 by adding a new subsection which authorizes the Commissioner of Education to take possession of facilities constructed with the aid of funds provided for by Public Law 815, under an application approved after the enactment of the bill, if they are not being used for free public education and are needed by the Commissioner, as minimum facilities necessary for the children residing on Federal property or children of the Armed Forces personnel on active duty. Possession would be taken under the terms and conditions prescribed in regulations of the Commissioner of Education. Payment by the Commissioner of a reasonable rental on the portion of the facilities financed with non-Federal funds would be required. Provision is also made for the return of those facilities to the school district when the district reopens those schools and makes them available to the federally connected children or when the Commissioner no longer needs the facilities for direct Federal operation purposes. However, the best interests of the federally connected children, the objectives of this proposal, and the commitments to the personnel employed in the direct Federal operation would be factors to be considered in determining the appropriate time for the return of the facilities.

Exhibit 3-10

This title has been recommended by the Department of Health, Education, and Welfare.

*Title VI (separability)*

Section 601 merely provides that if any provision of this act is held invalid, the remainder of the act shall not be affected thereby.

### EXECUTIVE COMMUNICATIONS

There is included at this point in the report, executive communications received from Hon. William P. Rogers, Attorney General of the United States, directed to the Speaker of the House of Representatives and dated February 5, 1959, as well as a similar communication from Hon. Arthur S. Flemming, Secretary of the Department of Health, Education, and Welfare, directed to the Speaker of the House of Representatives and dated February 5, 1959.

FEBRUARY 5, 1959.

The SPEAKER,
*House of Representatives,*
*Washington, D.C.*

DEAR MR. SPEAKER: It is my privilege to transmit for your consideration and appropriate reference the text of four of the seven civil rights legislative proposals recommended by the President and discussed in some detail in his message of this date.

The enclosures are:
   1. A bill to strengthen the law with respect to obstruction of court orders in school desegregation cases.
   2. A bill to punish flight to avoid prosecution for unlawful destruction of educational or religious structures.
   3. A bill to require the preservation of Federal election records and authorizing the Attorney General to inspect them.
   4. A bill to extend the life of the Civil Rights Commission for an additional 2 years.

The Bureau of the Budget has advised that the submission of this legislation is in accord with the program of the President.

Sincerely,

WILLIAM P. ROGERS,
*Attorney General.*

A BILL To amend chapter 73 of title 18, United States Code, with respect to obstruction of court orders

That chapter 73 of title 18, United States Code, is amended by adding at the end thereof a new section as follows:

"§ 1509. Obstruction of certain court orders.

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, willfully prevents, obstructs, impedes or interferes with or willfully endeavors to prevent, obstruct, impede or interfere with the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States which (1) directs that any person or class or persons shall be admitted to any school, or (2) directs that any person or class of persons shall not be denied admission to any school because of race or color, or (3) approves any plan of any State or local agency the

Exhibit 3-11

effect of which is or will be to permit any person or class of persons to be admitted to any school, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

"No injunctive or other civil relief against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime.

"This section shall not apply to an act of a student, officer or employee of a school if such act is done pursuant to the direction of, or is subject to disciplinary action by, an officer of such school."

"SEC. 2. The analysis of chapter 73 of such title is amended by adding at the end thereof the following:

"1509. Obstruction of certain court orders."

---

A BILL To provide for the retention and preservation of Federal election records and to authorize the Attorney General to compel the production of such records

That every officer of election shall retain and preserve, for a period of three years from the date of any general, special or primary election at which candidates for the office of President, Vice President, presidential elector, Member of the Senate or Member of the House of Representatives are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that if a State designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

SEC. 2. Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates or alters any record or paper required by section 1 to be retained and preserved shall be fined not more than $5,000 or imprisoned not more than five years, or both.

SEC. 3. Any record or paper required by section 1 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying by the Attorney General or his representative.

SEC. 4. Any record or paper demanded pursuant to section 3 shall be produced for inspection, reproduction, and copying at the principal office of the person upon whom such demand is made or at an office of the United States attorney in the district in which such records or papers are located.

SEC. 5. Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this Act, or any

Exhibit 3-12

reproduction or copy, except as is necessary in the performance of his official duties, including presentation of any case or proceeding before any court or grand jury.

SEC. 6. The United States district court for the district in which a demand is made pursuant to section 3, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

SEC. 7. As used in this Act, the term "officer of election" means any person who, under color of any Federal, State or local law, statute, ordinance, regulation, authority, custom or usage, performs or is authorized to perform any function, duty or task in connection with any application, registration, payment of poll tax or other act requisite to voting in any general, special or primary election at which candidates for the office of President, Vice President, presidential elector, Member of the Senate or Member of the House of Representatives are voted for.

A BILL To amend the Civil Rights Act of 1957 to afford the Civil Rights Commission an additional two years within which to submit its final report, and for other purposes

That section 104(b) of the Civil Rights Act of 1957 (71 Stat. 635; 42 U.S.C. Supp. V 1975c(b)) is amended to read as follows:

"(b) The Commission shall submit an interim report to the President and to the Congress not later than September 1, 1959, and at such other times as either the Commission or the President shall deem desirable. It shall submit to the President and to the Congress a final and comprehensive report of its activities, findings, and recommendations not later than four years from the date of enactment of this Act."

A BILL To amend chapter 49 of title 18, United States Code, to punish flight to avoid prosecution for unlawful destruction of educational or religious structures

That chapter 49 of title 18, United States Code, is amended by adding at the end thereof a new section as follows:

"§ 1074. Flight to avoid prosecution for destruction of educational or religious structures.

"Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody, or confinement after conviction, under the laws of the place from which he flees, for willfully damaging or destroying or attempting to damage or destroy by fire or explosive any building, structure, facility or vehicle, if such building, structure, facility or vehicle is used primarily for religious purposes or for the purposes of public or private primary, secondary or higher education, or (2) to avoid giving testimony in any criminal proceeding relating to any such offense—shall be fined not more than $5,000 or imprisoned not more than five years, or both.

"Violations of this section may be prosecuted in the Federal judicial district in which the original crime was alleged to have been committed or in which the person was held in custody or confinement or in the Federal judicial district in which the person is apprehended."

SEC. 2. The analysis of chapter 49 of such title is amended by adding thereto the following:

"1074. Flight to avoid prosecution for destruction of educational or religious structures."

Exhibit 3-13