UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA,<br><br>Defendants. | Case No. 25-cv-3761-KMM-EMB<br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO COMPEL PRODUCTION OF FEDERAL ELECTION RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |

## MEMORANDUM OF LAW

1

## TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………..5

II.     BACKGROUND……………………………………………….....7

        A.    Title III of the Civil Rights Act of 1960……………………...7

        B.    The Attorney General is demanding federal election records
              under the CRA to assess Minnesota's HAVA compliance……9

III.    ARGUMENT…………….………………………………………...13

        A. The United States is entitled to an Order to Compel Production
           under the CRA ….………………………………………………...13

        B. A State's Claims to Protecting Privacy Interests Are Not a Basis
           to Withhold the Information Requested………………………...15

        C. The Attorney General is entitled to relief under the CRA's
           summary proceeding for obtaining federal election records…...17

CONCLUSION………………………………………………….…........19

*United States of America v. Simon*
Memorandum in Support of Motion to Compel Production

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), .................6

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)..........................16

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ..............................................6, 9

*Craig v. Simon*, 980 F.3d 614 (8th Cir. 2020) .........................................................16

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm.

  Pleas Oct. 1, 2025)..............................................................................................17

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) ....................................6

*Foster v. Love*, 522 U.S. 67 (1997)........................................................................17

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963); ..................................................8

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ......................................................8

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).............................................. passim

*Sullivan v. Summers*, 769 F. Supp. 3d 455 (D. Md. 2025) ......................................18

**Statutes**

18 U.S.C. § 2721 .....................................................................................................12

5 U.S.C. § 552a .......................................................................................................11

52 U.S.C. § 20501 .....................................................................................................9

52 U.S.C. § 20701 ............................................................................................ passim

52 U.S.C. § 20703 ............................................................................................ passim

*United States of America v. Simon*
Memorandum in Support of Motion to Compel Production

52 U.S.C. § 20706 ..................................................................................14

52 U.S.C. § 21083 ............................................................ 10, 11, 14, 15

52 U.S.C. § 21111 ..................................................................................11

52 U.S.C. § 20507 ..................................................................................10

## Constitutional Provisions

U.S. Const. art. VI ................................................................................16

*United States of America v. Simon*
Memorandum in Support of Motion to Compel Production

## INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

_____

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

On June 25, 2025, the Attorney General, through her representatives, made a written demand to Secretary Simon to produce certain federal election records covered by the CRA. That written demand explained that the purpose of the demand was to assess Minnesota's compliance with the list maintenance requirements of the Help America Vote Act ("HAVA"). Secretary Simon refused to produce the requested Federal election records. This litigation followed.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel production that requires Secretary Simon to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to compel Defendants to produce the federal election records described in its written demand.

## BACKGROUND

**A.      Title III of the Civil Rights Act of 1960.**

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election. 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by [Section 301] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary.." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the

sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General is demanding federal election records under the CRA to assess Minnesota's HAVA compliance.

On June 25, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Simon, Chief Election officer of Minnesota, regarding Minnesota's compliance with federal list maintenance requirements. Ex. 1, Dep't Ltr. to Simon dated June 25, 2025 ("June 25 Letter"). HAVA has list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501 (b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §§ 20507 (a)(4), 20507(i)(1), 21083 (a)(1)(A).

The Letter requested a copy of Minnesota's statewide voter registration list ("SVRL") within fourteen days of the date of the letter. The June 25 Letter also

requested that Minnesota provide the Department with a current electronic copy of its computerized statewide voter registration list, containing "all fields," required under Section 303 of HAVA.

The Attorney General's June 25 Letter asked Secretary Simon to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS").

In response, on July 25, 2025, Justin Erickson, the General Counsel for Secretary Simon provided a partial response to the requests for information and documents in the June 25 Letter ("SOS July 25 Response"). In that letter, Mr. Erickson described the general procedures and State statutes governing Minnesota's list maintenance procedures. However, he declined to provide the Attorney General with the State's SVRL by maintaining that no information contained in that list would be disclosed "unless expressly required by law." Ex. 2, Ltr. from Simon dated July 25, 2025 ("July 25 Letter").

On August 13, 2025, the Assistant Attorney General for the Civil Rights Division replied to Mr. Erickson ("August 13 Letter"). In that letter, the Assistant Attorney General elaborated on the Department's authority to request a copy of Minnesota's SVRL under Section 401 of HAVA, "which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide

[SVRL] requirements," citing 52 U.S.C. § 21111. Ex. 3, Dept. Ltr. to Simon dated August 13, 2025 ("August 13 Letter").

The Assistant Attorney General also explained that the CRA "requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for a period of 22 months after any federal general, special, or primary election." August 13 Letter at 1. The letter summarized Section 303 of the CRA, which requires all records or papers covered by the Act to be produced "upon demand in writing by the Attorney General or his representative." *Id*.

The August 13 Letter explained to Secretary Simon that "HAVA specifies that the 'last 4 digits of a social security number … shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974.'" *See* 5 U.S.C. § 552a note; 52 U.S.C. § 21083 (c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721 (b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority.

To alleviate any privacy concerns the Department made clear in the August 13 Letter that the Attorney General and her representatives would comply with federal privacy laws applicable to the demanded federal election records. For

11

example, the Department pointed out that in addition to the Privacy Act, the CRA

provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

*Id.* (quoting 52 U.S.C. § 20704).

On August 21, 2025, Defendants responded to the United States' requests by

requesting legal justification and assurance of privacy protections for the voter

registration data ("SOS August 21 Response"). Defendants declined to provide the

requested information, stating that "Minnesota law, for example, prohibits the OSS

from providing a voter's date of birth or any portion of their Social Security Number,

driver's license number, state identification card… in response to a request for public

inspection. Minn. Stat. § 201.091, subd. 9." Ex. 4, Ltr. from Simon dated August 21,

2025 ("August 21 Letter").

Defendants further responded by suggesting the Department could access the

more limited publicly available voter list, despite the lawful request for full

unredacted SVRL and assurance in the August 13 Letter that information and

materials may be sent by encrypted email or the Department's secure file-sharing

system, JEFS, which would protect the sensitive data. Ex. 4.

## ARGUMENT

**A.    The United States is entitled to an Order to Compel Production under the CRA.**

An order to compel production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's August 13 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a federal election; (2) directing that demand to Secretary Simon, an officer of election as defined by Section 306 of the CRA;[2] and

---

[2] Section 306 provides:

> As used in this chapter, the term "officer of election" means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the

(3) stating that the purpose of the demand is "to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)." Ex. 3, August 13 Letter.

Secretary Simon would not be able to rely on State laws to deny the Attorney General's demand for a copy of Minnesota's SVRL. Officers of election have no discretion to refuse or otherwise limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

The Attorney General cannot assess compliance with HAVA without the full, unredacted SVRL and other requested federal election records pertaining to Minnesota's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083 (a)(5)(A)(i)-(ii). Without the data including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

---

House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083 (a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states (including Minnesota) share the identical information sought by the Attorney General here with a private organization known as the Electronic Registration Information Center ("ERIC").[3]

Secretary Simon has rejected the United States's written demand pursuant to the CRA to produce Minnesota's SVRL, a federal election record. Consequently, the United States respectfully requests that this Court issue an Order compelling Secretary Simon to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

### B.    The CRA does not permit Defendants to withhold federal elections because of privacy concerns.

Defendants have refused to produce the federal election records demanded by the Attorney General under the CRA because he contends that Minnesota's election law and the Federal Privacy Act prohibit cooperation without an appropriate purpose stated by the Attorney General. First, the August 13 Letter provided Secretary Simon

---

[3] https://ericstates.org/about/ (last visited Dec. 22, 2025).

with the Attorney General's purpose for the demand. Second, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our federal system that when federal and state law conflict, the federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, "[t]he Constitution provides that Congress may regulate the time of elections for Representatives, U.S. Const. art. I, § 4, cl. 1, and this Elections Clause confers 'the power to pre-empt.'" *Craig v. Simon*, 980 F.3d 614, 616 (8th Cir. 2020) (quoting *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013)). States have responsibility "for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices…." *Foster v. Love*, 522 U.S. 67, 69 (1997) (internal citations omitted).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Eric Neff as Ex. 5, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all

records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Sullivan v. Summers*, 769 F. Supp. 3d 455, 461 (D. Md. 2025). Consequently, the Attorney General is entitled to the federal election records she has demanded from Secretary Simon under the CRA, notwithstanding any conflicting state privacy laws.

## C.    The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Simon, as an officer of election for

Minnesota, must produce the voter-registration lists and other federal election records demanded by the Attorney General. *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37….

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Secretary Simon, acting as an officer of election for Minnesota, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the

matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Secretary Simon to produce the Federal election records described in the Attorney General's written demand.

## CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendants to comply with the Attorney General's Demand pursuant to the CRA an electronic copy of Minnesota's SVRL with all fields including the name, date of birth, Driver's license number, last four digits of the social security number or the HAVA unique identifier. Those records should be provided electronically by secure means to the United States within five days.

DATED: December 23, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

*/s/ James Thomas Tucker*
TIMOTHY F. MELLETT (DC Bar No. 430968)
JAMES T. TUCKER (DC Bar No. 90010157)
BRITTANY E. BENNETT (GA Bar No. 717377)
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON

Washington, DC 20530
Timothy.F.Mellett@usdoj.gov
James.T.Tucker@usdoj.gov
Brittany.Bennett@usdoj.gov
Tel. (202) 307-2767

Attorneys for the United States

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 23, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

Respectfully submitted,

<u>*/s/ James Thomas Tucker*</u>
James Thomas Tucker