# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 25-cv-3761 (KMM/EMB) |
| STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA, | |
| *Defendants*. | |

**MEMORANDUM OF LAW OF PROPOSED INTERVENORS MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATIONAL FUND AND MISAEL HERNANDEZ IN SUPPORT OF MOTION TO DISMISS**

## Table of Contents

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 3

    I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................... 3

    II.    DOJ has embarked on a nationwide campaign to collect voter data held by states. ....................................................................................................... 4

    III.    DOJ sued Minnesota as part of its effort to create a national voter list. ........... 6

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT..................................................................................................................... 9

    I.    HAVA does not entitle DOJ to Minnesota's full, unredacted voter registration list. ............................................................................................. 9

    II.    The Civil Rights Act of 1960 does not entitle DOJ to Minnesota's voter registration list. ........................................................................................... 11

        A.    Title III was designed for investigations aimed at protecting the right to vote. ................................................................................... 11

        B.    DOJ lacks a proper basis and purpose to demand records under Title III. ................................................................................................ 12

        C.    Title III does not prohibit redacting sensitive voter information........... 14

    CONCLUSION ............................................................................................................. 15

## Table of Authorities

**CASES**

*In re Admin. Subpoena*,
  No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ............... 14

*Ala. ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 11

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) .................................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 9

*Bobreski v. U.S. EPA*,
  284 F. Supp. 2d 67 (D.D.C. 2003) ....................................................................... 10

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683 (D.C. Cir. 2017) ............................................................................. 13

*CFPB v. Source for Pub. Data, L.P.*,
  903 F.3d 456 (5th Cir. 2018) ............................................................................... 13

*Delker v. MasterCard Int'l, Inc.*,
  21 F.4th 1019 (8th Cir. 2022) ................................................................................ 9

*Dinkens v. Att'y Gen. of U.S.*,
  285 F.2d 430 (5th Cir. 1961) .......................................................................... 11, 12

*Duffy v. Wolle*,
  123 F.3d 1026 (8th Cir. 1997) ............................................................................. 10

*Foster v. Love*,
  522 U.S. 67 (1997) .................................................................................................. 3

*Freeman v. Ally Fin. Inc.*,
  528 F. Supp. 3d 1038 (D. Minn. 2021) .................................................................. 5

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ................................................................................. 3

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ..................................................... 13, 14, 15

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) ................................................................. 5

*Peters v. United States*,
    853 F.2d 692 (9th Cir. 1988) ............................................................... 10

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ................................................................... 10

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) ............................................................... 10

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................... 3

*Stahl v. U.S. Dep't of Agric.*,
    327 F.3d 697 (8th Cir. 2003) ................................................................. 2

*In re Wallace*,
    170 F. Supp. 63 (M.D. Ala. 1959) ...................................................... 12

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1 ............................................................... 2, 3

## STATUTES

5 U.S.C. § 552a ................................................................................. 15

18 U.S.C. § 2721 ............................................................................... 15

52 U.S.C. § 20507 ............................................................................. 3

52 U.S.C. § 20701 ........................................................................ 11, 12

52 U.S.C. § 21083 ................................................................... 3, 4, 9, 15

52 U.S.C. § 21111 ................................................................................................... 9

Minn. Stat. § 201.091, subd. 9 ................................................................... 1, 10, 15

**FEDERAL RULES**

Fed. R. Civ. P. 12 .................................................................................................... 8

**OTHER AUTHORITIES**

H.R. Rep. No. 86-956 (1959) ................................................................................ 11

H.R. Rep. No. 107-329 (2001) ....................................................................... 2, 4, 9

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning to the states the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded that at least forty states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, partial Social Security numbers, and dates of birth—from disclosure. Minnesota law is no exception: it dictates that Minnesota's election officials may not provide a voter's date of birth or any part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number for public inspection or purchase, or in response to a law enforcement inquiry. *See* Minn. Stat. § 201.091, subd. 9.

Because Minnesota—like nearly every other state contacted by DOJ—has so far refused to comply with its demands, DOJ has amplified its pressure campaign by filing suit to compel Minnesota to hand over its full, unredacted voter registration list. DOJ's Complaint cites two authorities in support of its demand—the Help America Vote Act ("HAVA") and Title III of the Civil Rights Act of 1960—but neither supports DOJ's cause. HAVA does not contain *any* disclosure provision. And the text of Title III of the Civil Rights Act plainly does not apply here because DOJ's demand is not supported by an adequate basis or purpose. In short, nothing in these federal provisions prevents Minnesota—or any other state—from protecting voter privacy by redacting the sensitive voter information DOJ seeks.

Tellingly, in more recent lawsuits seeking similar voter data from other states, DOJ has abandoned its claims under HAVA, relying solely on Title III of the Civil Rights Act.[1] And in each case DOJ has yet to identify a single instance where the statutes it cites have ever been used to obtain the sort of sensitive voter information that DOJ now demands. The reasons why are clear: this unprecedented effort runs contrary to the decentralized structure of our federal electoral system, which is state-focused *by design*. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving "each State" principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, at 31–32 (2001). DOJ's attempt to assert sweeping federal authority over the management of federal elections is unsupported by the statutes it cites and antithetical to the carefully designed system of American elections as reflected by the Constitution, federal law, and the states' administration of elections. The Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

---

[1] *See, e.g.*, Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025). A court "may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

# BACKGROUND

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. As a default matter, the Constitution assigns to the states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013). While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data.

One such law is HAVA, enacted by Congress in the wake of the 2000 elections in order "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA regulates how states maintain their voter rolls, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). In doing so, HAVA also makes it clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).[2] And, more generally, HAVA commands that the "specific

---

[2] Another such law is the National Voter Registration Act ("NVRA"), enacted by Congress in 1993. Minnesota is exempt from the NVRA's requirements, *see The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Just. (Nov. 1, 2024), https://perma.cc/G6D9-WKMF, but the NVRA also reinforces that the administration of voter registration and maintenance of voter lists are responsibilities charged squarely to the

choices on the methods of" compliance "shall be left to the discretion of the State." *Id.* §

21085. Indeed, HAVA's drafters stressed the importance of maintaining our decentralized

electoral system to preserve free and fair elections:

> Historically, elections in this country have been administered at the state and
> local level. This system has many benefits that must be preserved. The
> dispersal of responsibility for election administration has made it impossible
> for a single centrally controlled authority to dictate how elections will be run,
> and thereby be able to control the outcome. This leaves the power and
> responsibility for running elections where it should be, in the hands of the
> citizens of this country.

H.R. Rep. No. 107-329, at 31–32. While HAVA requires states to create their own

centralized statewide voter registration lists, nothing in the law obligates them to disclose

records in any manner, including to the federal government.

## II.    DOJ has embarked on a nationwide campaign to collect voter data held by states.

In the spring of 2025, DOJ initiated an unprecedented campaign, demanding

unfettered access to state voter files, which include sensitive and personal information

about each registered voter. To date, DOJ has sent demands to at least forty states, with

plans to make similar demands on all fifty.[3] The vast majority of states that have received

---

states and that the states are the custodians of voter lists, *see* 52 U.S.C. § 20507(a), (c)–(g); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

[3] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19, 2025), https://perma.cc/Z86C-ADVJ.

such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive information that is typically protected by state law.[4]

As part of this campaign, DOJ sent Defendant Minnesota Secretary of State Steve Simon a letter on June 25, 2025, requesting that Secretary Simon provide DOJ with several pieces of information, including Minnesota's procedures for list maintenance under HAVA as well as a copy of Minnesota's voter registration list in electronic form. Compl. ¶¶ 28–29, ECF No. 1. DOJ specifically asked for the list to include both active and inactive voters. *Id.* ¶ 29. A month later, Justin R. Erickson, the general counsel of Secretary Simon's office, responded to DOJ. *Id.* ¶ 30. He answered DOJ's questions in detail, explaining Minnesota's procedures for voter registration, verification of voter information, and voter list maintenance. *Id.*; Letter from Justin R. Erickson to Maureen Riordan at 2–7 (July 25, 2025), ECF No. 8-2.[5] With respect to the request for the voter registration list, however, Erickson explained that the state would not provide the list "unless expressly required by law," and DOJ had not "identif[ied] any legal basis" entitling it to the list. Compl. ¶¶ 30–31. Erickson

---

[4] Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only Indiana has so far given DOJ everything it sought).

[5] The Court may properly consider this letter and others referenced throughout this brief at the motion-to-dismiss stage because they are frequently referenced and quoted throughout the Complaint and because the Complaint's allegations rely upon them. *See Freeman v. Ally Fin. Inc.*, 528 F. Supp. 3d 1038, 1043 (D. Minn. 2021) ("On a motion to dismiss, a district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint, without converting the motion into one for summary judgment." (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003))); *see also* Compl. ¶¶ 28–40.

also requested that DOJ provide "sufficient information to show that the data will be protected and used properly" before Minnesota would consider "whether it is appropriate to share Minnesota's voter registration list." *Id.* ¶ 32.

On August 13, DOJ sent another letter to Minnesota, asserting that it was entitled to seek Minnesota's voter registration list both under HAVA and under the Civil Rights Act of 1960. *Id.* ¶¶ 33–37. DOJ reiterated that it was making a formal "demand . . . for a complete copy of the state of Minnesota's statewide" voter registration data with "all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number." *Id.* ¶¶ 35–36. Erickson responded again on August 21, explaining that neither HAVA nor the Civil Rights Act of 1960 "provides the clear legal basis necessary . . . to turn over private data on several million individuals" and that DOJ had not "provided adequate assurances that it will treat the data appropriately." Letter from Justin R. Erickson to Harmeet K. Dhillon at 2, 4 (Aug. 21, 2025), ECF No. 8-4 ("Aug. 21 Letter"); *see also* Compl. ¶¶ 39–40. Erickson nevertheless offered "to discuss this matter further with the DOJ in order to determine whether there are ways to address the DOJ's concerns without unnecessarily disclosing private data on millions of Minnesotans." Aug. 21 Letter at 6.

### III.    DOJ sued Minnesota as part of its effort to create a national voter list.

DOJ did not take Minnesota up on its offer to discuss its concerns further. Instead, it filed this lawsuit on September 25, 2025, asking this Court to order Minnesota to produce its statewide voter registration list with "all fields, including the registrant's full name, date of birth, residential address, and either their State driver's license number or the last four

digits of their social security number." Compl. at 15–16. DOJ claims that it is entitled to relief under the Civil Rights Act of 1960 and HAVA. Compl. ¶¶ 45–49, 50–54.

This suit is one of *twenty-two* lawsuits that DOJ has filed seeking to compel the production of voter lists from various states. This relentless campaign began on September 16, 2025, when DOJ sued Oregon and Maine. *See* Compl., *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Sep. 16, 2025); Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025). Then, on September 25—the same day that DOJ sued Minnesota—it also filed largely identical suits against California, New York, New Hampshire, Pennsylvania, and Michigan. *See generally* Compl.; *see also generally* Compl., *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Sep. 25, 2025); Compl., *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sep. 25, 2025). These suits all brought claims under the Civil Rights Act of 1960 and HAVA, as well as under the NVRA for states that, unlike Minnesota, are subject to the NVRA's requirements.

Then, in December 2025, DOJ escalated its efforts by bringing a new set of lawsuits seeking to obtain statewide voter lists from *thirteen* additional states: Colorado, Delaware, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Nevada, New Mexico, Rhode Island, Vermont, Washington, and Wisconsin, as well as the District of Columbia. *See generally* Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States*

*v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Wis. Elections Comm'n*, 3:25-cv-01036 (W.D. Wis. December 18, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 1:25-cv-04403 (D.D.C. December 18, 2025). In all of these later-filed cases, however, DOJ chose *not* to bring claims under HAVA; each complaint asserts only a single claim under the Civil Rights Act of 1960.

Proposed Intervenors are a Minnesota-based civic organization and a Minnesota voter. To protect their interests, they moved to intervene as defendants on September 30, 2025, five days after DOJ sued. *See* Mot. Intervene, ECF No. 5. That motion—which DOJ does not oppose—remains pending. *See* ECF No. 60. Proposed Intervenors file this motion to dismiss pursuant to the Court's order. *See* Minute Order, ECF No. 76.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the

8

complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is required when a complaint fails to allege a "viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

### I.    HAVA does not entitle DOJ to Minnesota's full, unredacted voter registration list.

DOJ points to HAVA as a basis for relief, but that statute does not support its demand. Compl. ¶¶ 50–54. In fact, HAVA contains no disclosure requirements *at all*. DOJ's Complaint and correspondence cite no authority to the contrary, relying instead upon a provision permitting the Attorney General to file suit "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" of HAVA. 52 U.S.C. § 21111. But the underlying statutory provisions that DOJ may enforce through Section 21111 say nothing about permitting DOJ to demand state voter registration lists at will. To the contrary, the sole underlying provision concerning voter registration affirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A); *see also* H.R. Rep. No. 107-329, at 32, 36 (emphasizing that "local control must be preserved" under HAVA and voter registration databases should be "administered at the state level"). Nothing in HAVA provides any basis for DOJ to compel

the disclosure of information that the Constitution and federal law both instruct to be administered at the state level.

Further, it would defy logic to conclude that HAVA implicitly authorizes, let alone *requires*, states to disclose all voter information, including sensitive and personal information protected by state law. *See* Minn. Stat. § 201.091, subd. 9. HAVA—which does not contain *any* disclosure requirement—cannot be read to have broader preemptive effect on state privacy laws than the NVRA, which contains a public disclosure provision but allows states to redact sensitive and personal voter information. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (concluding that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" from the voter file); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (same). And the mere fact that HAVA grants the Attorney General a cause of action to enforce HAVA's substantive requirements changes nothing because those substantive requirements impose no obligation on states to disclose records to the federal government. *Cf. Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (explaining that the authority to issue document requests "is created solely by statute"); *Bobreski v. U.S. EPA*, 284 F. Supp. 2d 67, 76 (D.D.C. 2003) (rejecting argument that statutes created "implied subpoena authority").

Meanwhile, DOJ does not allege that Minnesota has violated HAVA's substantive requirements. The federal government, like any other litigant, is not permitted to pursue a "fishing expedition" merely because it "hopes to uncover some possible evidence." *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir. 1997) (citation omitted). Because HAVA does not

provide any standalone authority for DOJ to compel Minnesota to provide its statewide voter registration list or other information requested in its letters, DOJ has failed to state a claim under HAVA. Indeed, DOJ itself seems to have recognized the weakness of this claim, as it has chosen not to assert claims under HAVA in any of the lawsuits it has brought more recently against other states seeking their voter lists. *See* Background § III. This Court should accordingly dismiss this claim.

## II.    The Civil Rights Act of 1960 does not entitle DOJ to Minnesota's voter registration list.

Grasping for ways to justify its disclosure demand, DOJ dusts off Title III of the Civil Rights Act of 1960, a law passed in the civil rights era to combat racial discrimination in voting. *See* 52 U.S.C. § 20701. But as with HAVA, Title III does not support DOJ's demands.

### A.    Title III was designed for investigations aimed at protecting the right to vote.

Congress enacted Title III to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"); *Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. H.R. Rep. No. 86-956, at 7. DOJ had "no existing power in

civil proceedings to require the production of [voter registration] records during any investigation." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* (explaining that Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))).

Title III has two relevant parts. First, Section 301 requires election officials to retain for twenty-two months "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Second, Section 303 requires election officials to make records covered by Section 301 available for inspection by the Attorney General upon receiving a "demand . . . contain[ing] a statement of the basis and the purpose" for the inspection. *Id.* § 20703.

## B.    DOJ lacks a proper basis and purpose to demand records under Title III.

DOJ has not articulated any basis that would support a belief that Minnesota has denied the right to vote or otherwise violated federal law. This glaring omission is further underscored by the fact that DOJ has made what appear to be near-carbon-copy demands to at least forty states and has sued twenty other states and the District of Columbia with complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background § II. "Simply put, [DOJ's demand] does not identify what conduct, it believes,

constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018).

In addition, DOJ's stated purpose for issuing the demand to Minnesota—to "ensure that the State's list maintenance program has been properly carried out in full compliance with HAVA," Compl. ¶ 28—is insufficient. Title III is meant to permit DOJ to review voting records for "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies "are also not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks and citation omitted)). That is, Title III's "purpose is to enable the Attorney General to determine whether" a suit to enforce the Civil Rights Act is appropriate, *Lynd*, 306 F.2d at 228, not to ascertain compliance with distinct laws serving separate purposes with their own enforcement mechanisms. DOJ has not cited a single instance in the sixty-five years of Title III's existence in which the agency issued a demand for records under Title III that did not relate to investigating the "infringement or denial of [individuals'] constitutional voting rights." *Id.* Proposed Intervenors are aware of no such instance.[6]

---

[6] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was being used for its intended purpose: investigations into the potential denial of voting rights. Those prior cases thus presented circumstances that are fundamentally

Further, even if ascertaining Minnesota's compliance with HAVA were permissible grounds for invoking Title III, Minnesota's full unredacted voter list is entirely unnecessary for that purpose. Secretary Simon has already provided DOJ with more than adequate information to confirm that Minnesota is meeting its list-maintenance obligations, and DOJ has not identified any shortcomings or deficiencies in his responses. *See supra* Background § II. Considering all the circumstances of DOJ's demand, the only conclusion the Court can draw is that DOJ can articulate no reasonable basis that would justify its fishing expedition regarding Minnesota's compliance with HAVA. *See In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").

### C.    Title III does not prohibit redacting sensitive voter information.

Aside from whether DOJ can validly invoke Title III to demand Minnesota's unredacted voter list, Title III does not require the production of sensitive and personal voter information. To reiterate, nothing in HAVA provides any basis for DOJ to compel the disclosure of voter files. *See supra* Argument § I. Title III's plain text does not prohibit the redaction of sensitive information either. As the Fifth Circuit has explained, Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d

---

different from those here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with an entirely separate statute.

at 231. The information that DOJ seeks here is not typically "open to legitimate reasonable inspection." *Id.* To the contrary, it seeks plainly sensitive information that is typically safeguarded from prying eyes under both federal and state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; Minn. Stat. § 201.091, subd. 9. And because driver's license numbers and partial Social Security numbers were not required to be provided on voter registration forms until HAVA was enacted in 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), the Congress that enacted Title III in 1960 would not have intended the statute's reach to cover the disclosure of such information.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: December 23, 2025

Respectfully submitted,

Elisabeth C. Frost (*pro hac vice*)
Uzoma N. Nkwonta (*pro hac vice*)
Robert Golan-Vilella (*pro hac vice*)
Tina Meng Morrison (*pro hac vice*)
Julianna D. Astarita (*pro hac vice*)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
unkwonta@elias.law
rgolanvilella@elias.law
tmengmorrison@elias.law
jastarita@elias.law

/s/ *Sybil L. Dunlop*
Sybil L. Dunlop, Reg. No. 390186
Katherine M. Swenson, Reg. No. 0389280
Kshithij Shrinath, Reg. No. 0505164
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
sdunlop@greeneespel.com
kswenson@greeneespel.com
kshrinath@greeneespel.com

*Attorneys for Proposed Intervenors*
*Minnesota Alliance for Retired Americans Educational Fund and Misael Hernandez*