## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    v.

Steve Simon, in his official capacity as
Secretary of State for the State of
Minnesota, and the State of Minnesota,

        Defendants.

Case No.: 25-cv-03761-KMM-EMB

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS BY PROPOSED
INTERVENOR-DEFENDANTS
LEAGUE OF WOMEN VOTERS OF
MINNESOTA, COMMON CAUSE,
JENNIFER COMPEAU, AND
VALERIE MANGSKAU**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ...................................................................................................... 9

    I.    THE UNITED STATES' DEMANDS EXCEED THE
            STATUTORY AUTHORITY OF THE CRA AND ARE
            CONTRARY TO LAW ............................................................. 10

        A.    The United States' Demand for Records Fails to Meet the
            Requisite Statutory Requirements of the CRA. .............................. 11

        B.    Any Records Disclosed Under the CRA Should Be Redacted
            Pursuant to both Minnesota Law and Federal Law ........................ 18

    II.    HAVA DOES NOT PROVIDE FOR DATA DISCLOSURES ............... 23

CONCLUSION ................................................................................................. 24

151487615.4 0069559-00001

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 8, 9

*Ayers-Schaffner v. DiStefano*,
37 F.3d 726 (1st Cir. 1994) ................................................................................ 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 8, 9

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................. 8

*Burdick v. Takushi*,
504 U.S. 428 (1992) ............................................................................................ 1

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v.
Kennedy*, 313 F.2d 867 (5th Cir. 1963) .................................................... 12, 21

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ......................................................................................... 17

*Coro, Inc. v. F.T.C.*,
338 F.2d 149 (1st Cir. 1964) ............................................................................ 15

*DeBartolo Corp. v. Florida Gulf Coast Trades Council*,
485 U.S. 568 (1988) ......................................................................................... 19

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) ......................................................................................... 24

*F.D.I.C. v. Wentz*,
55 F.3d 905 (3d Cir. 1995) ............................................................................... 15

*Fresenius Med. Care v. United States*,
526 F.3d 372 (8th Cir. 2008) ........................................................................... 15

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) ................................................................... 1

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ..................................................................... 12, 22

ii

*Matson Logistics, LLC v. Smiens*,
No. 12-400 ADM/JJK, 2012 WL 2005607 (D. Minn. June 5, 2012) .......................... 9

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ....................................................................................... 17

*PA Fair Elections v. Pa. Dep't of State*,
337 A.3d 598 (Pa. Commw. Ct. 2025) ............................................................ 7

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331, 339 (4th Cir. 2012) ...................................................... 21, 23

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ................................................................. 20, 21

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,
673 F. Supp. 3d 1004 (D. Alaska 2023) ........................................................ 20

*Pub. Int. Legal Found., Inc. v. Matthews*,
589 F. Supp. 3d 932 (C.D. Ill. 2022), clarified on denial of
reconsideration, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20,
2022) ................................................................................................................ 20

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ......................................................................... 20

*Pub. Int. Legal Found. v. Benson*,
136 F.4th 613 (6th Cir. 2025) ....................................................................... 14

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) ........................................................................... 9

*Sheetz v. Cnty. of El Dorado*,
601 U.S. 267 (2024) (Gorsuch, J., concurring) .......................................... 21

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012) ............................................................. 9

*TCI of N. Dakota, Inc. v. Schriock Holding Co.*,
11 F.3d 812 (8th Cir. 1993) ........................................................................... 19

151487615.4 0069559-00001

Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E.
Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*,
No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3
(Michigan)..................................................................................................... 8

Complaint, *United States v. Griswold*,
No. 25-cv-3967 (D. Colo. Dec. 11, 2025), Dkt. No. 1 ............................... 17

*United States v. McDonnell Douglas Corp.*,
751 F.2d 220 (8th Cir. 1984) .................................................................... 15

Complaint, *United States v. Nago*,
No. 25-cv-522 (D. Haw. Dec. 11, 2025), Dkt. No. 1 .................................. 17

Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss,
Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias
Read (July 16, 2025), *United States v. Oregon*,
No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon).............. 8

Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from
Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*,
No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania)................... 8

Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit
No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber
(July 10, 2025), *United States v. Weber*,
No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California) .................... 8

Hr'g Tr., *United States v. Weber*,
No. 2:25-cv-09149 (C.D. Cal. Dec. 4, 2025)............................................. 17

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)...................................................................................... 1

**Statutes**

5 U.S.C. § 552a (e)(7)................................................................................. 16

18 U.S.C. § 2721 *et seq.* ........................................................................... 22

44 U.S.C. § 3531 *et seq.* (2014) ................................................................ 22

52 U.S.C. 20507(i)................................................................................. 19, 20

iv

52 U.S.C. § 303 .................................................................................................... 16

52 U.S.C. § 20507(i)(1) ............................................................................... 19, 20, 23

52 U.S.C. § 20701 ................................................................................................ 11

52 U.S.C. § 20703 .......................................................................................... passim

52 U.S.C. § 21081 ................................................................................................ 23

52 U.S.C. § 21082 ................................................................................................ 23

52 U.S.C. § 21083 ................................................................................................ 23

52 U.S.C. § 21083(a)(2)(A) .................................................................................. 14

52 U.S.C. § 21083(a)(4)(A) ........................................................................ 13, 14, 17

52 U.S.C. § 21083(a)(4)(B) ........................................................................ 13, 14, 18

52 U.S.C. § 21083(b)(4)(A) .......................................................................... 4, 12, 13

52 U.S.C. § 21083(b)(4)(B) .......................................................................... 4, 12, 13

52 U.S.C. § 21083a .............................................................................................. 23

52 U.S.C. § 21085 ........................................................................................... 14, 18

52 U.S.C. § 21111 ........................................................................................... 12, 23

Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701 *et seq.* ......................... passim

Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat.
    1796 (1994) .................................................................................................. 22

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002) ...................... 22

Federal Information Security Modernization Act of 2014, Pub. L. No. 113-
    283, 128 Stat. 3073 (2014) ............................................................................. 22

Help America Vote Act, 52 U.S.C. § 20901 *et seq.* .................................................. passim

Minn. Stat. § 201.091, subd. 9 ............................................................................. 4, 19

National Voter Registration Act of 1993 .............................................................. passim

Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974) ................................. 22

151487615.4 0069559-00001

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................ 8, 9

## Constitutional Provisions

Minn. Const. art. VII, § 1 ............................................................................ 19

U.S. Const. amend. I .................................................................................... 16, 21

U.S. Const. amend. XIV ............................................................................... 21

## Other Authorities

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. Times, Oct. 22, 2025 ...................................... 6

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, ProPublica, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ............................................................................... 7

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, Spotlight PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ ................................................................ 7

Dep't of Just., The National Voter Registration Act of 1993 (NVRA), Questions and Answers, 2. What States are covered by the NVRA's requirements?, https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last updated Nov. 1, 2024) ................................................................ 19

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ............................................................................. 5, 6

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, ProPublica, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security ................................................................................ 6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*,
    N.Y. Times Magazine, Nov. 16, 2025,
    https://www.nytimes.com/interactive/2025/11/16/magazine/trump-
    justice-department-staff-attorneys.html .......................................................... 6

H.R. Rep. No. 86-956 (1959) ..................................................................... 1

H.R. Rep. No. 86-956 (1959) ................................................................... 10

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail
    Ballot Applications Challenged*, NPR, Nov. 5, 2024,
    https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-
    ballot-voter-challenges-trump ......................................................................... 7

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is
    Appointed to Federal Election Post,* PA. Capital-Star, Aug. 27, 2025,
    https:// penncapital-star.com/election-2025/pa-s-heather-honey-who-
    questioned-the-2020-election-is-appointed-to-federal-election-post ........................... 6

Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less
    American': Right-Wing Activists' Effort to Nullify Hundreds of Pa.
    Votes Met with Skepticism*, Phila. Inquirer, Nov. 1, 2024 ............................................ 7

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland
    Security*, Stateline, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-
    is-sharing-state-voter-roll-lists-with-homeland-security ............................................... 6

Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to
    Remove Voters Flagged by Feds*, Stateline, Dec. 18, 2025,
    https://www.newsfromthestates.com/article/trumps-doj-offers-states-
    confidential-deal-remove-voters-flagged-feds ............................................................. 17

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a
    National Citizenship Data System*, NPR, June 29, 2025,
    https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-
    privacy-voting-database .................................................................................... 7

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for
    Just., *Tracker of Justice Department Requests for Voter Information*
    (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z ........................................... 2, 5

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship
    Checks for Voting*, Democracy Docket, June 12, 2025,
    https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-
    mitchells-anti-voting-group-on-checking-citizenship-for-voters ................................. 7

Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/K67T-KJPT ..................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/B3ZS-2SV8 ................................................................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC ......................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD .................................................................. 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA ........................................................................ 5

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025 .......................................... 6

U.S. Dep't of Just., Civ. Rts. Div., *Federal Law Constraints on Post-Election "Audits"* at 2 (July 28, 2021), https://perma.cc/74CP-58EH .......................... 1

151487615.4 0069559-00001

## INTRODUCTION

In this action, the United States seeks to use civil and voting rights laws to compel the disclosure of sensitive personal voter data to which it is not entitled. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted.

The right to vote "'is of the most fundamental significance under our constitutional structure.'" *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 727 (1st Cir. 1994) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). It is "preservative of all other rights" because it serves as a check against tyrannical rule while simultaneously ensuring the competition of ideas amongst our elected officials. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

Congress has repeatedly legislated to protect the franchise, including through Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.* These statutes were enacted for the purpose of ensuring that all eligible Americans—especially racial minorities and voters with disabilities—can participate in free, fair, and secure elections. As the United States Department of Justice itself explains, Title III of the CRA, the election records provision invoked in the Complaint ("Dkt. No. 1") here, was designed to "secure a more effective protection of the right to vote."[1]

---

[1] U.S. Dep't of Just., Civ. Rts. Div., *Federal Law Constraints on Post-Election "Audits"* at 2 (July 28, 2021), https://perma.cc/74CP-58EH (quoting *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), and citing H.R. Rep. No. 86-956 (1959)).

The United States' demand for Minnesota's unredacted voter file—which contains sensitive personal information such as full birth dates, driver's license numbers, and Social Security numbers from every voter in the state—undermines these statutes' core purposes and is contrary to law. Releasing Minnesota's voter records without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here where the United States has failed to fully and accurately set forth "the basis and the purpose" for its request for this data, as required by the CRA. 52 U.S.C. § 20703. And releasing any voter records under HAVA, much less such extensive and sensitive personal data, would be entirely unwarranted, as HAVA has no public disclosure provision at all. Because the United States has failed to establish its entitlement to a complete, unredacted Minnesota voter file, the Court should dismiss this action.

## BACKGROUND

Beginning in May 2025, the United States, through the Department of Justice ("DOJ"), began sending letters to election officials in at least 40 states, making escalating demands for production of statewide voter registration databases, with plans to gather data from all fifty states.[2]

Minnesota's Secretary of State ("the Secretary") received the first letter from the DOJ on June 25, 2025 ("June 25 Letter"), requesting "information regarding the State's

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

HAVA compliance."[3] This letter contained fifteen requests for information—including a request for a copy of "Minnesota's current statewide voter registration list" ("SVRL")—which DOJ asked to be provided within thirty days.[4]

On July 25, 2025, Justin Erickson, General Counsel for the Secretary, timely responded to the requests in the June 25 Letter by describing the general procedures and statutes governing maintenance procedures of Minnesota's SVRL.[5] Erickson's response also noted that Minnesota's SVRL "contains sensitive personal identifying information on several million individuals," and explained that the Secretary's office "will require clear legal justification for the data and sufficient information to show that the data will be protected and used properly before it can consider whether it is appropriate to share Minnesota's voter registration list."[6]

On August 13, 2025, DOJ sent another letter to the Secretary demanding an electronic copy of Minnesota's entire SVRL ("August 13 Letter").[7] DOJ specified that it was seeking an unredacted electronic copy of the SVRL that must "include all fields, including all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number . . . ."[8] DOJ cited HAVA and the CRA as authority for its records request and stated that "the purpose of the request is to ascertain Minnesota's

---

[3] Dkt. No. 8-1; Dkt. No. 1 ("Compl.") ¶ 28.
[4] Dkt. No. 8-1; Compl. ¶ 29.
[5] Dkt. No. 8-2; Compl. ¶ 30.
[6] Dkt. No. 8-2; Compl. ¶¶ 30, 32.
[7] Dkt. No. 8-3; Compl. ¶ 33.
[8] Dkt. No. 8-3; Compl. ¶ 36.

151487615.4 0069559-00001

compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)," but did not elaborate further in this regard or refer to any alleged compliance deficiencies by Minnesota with respect to the cited requirements of HAVA.[9] DOJ requested that this full and unredacted copy of Minnesota's SVRL be provided within seven days.[10]

On August 21, 2025, the Secretary's office responded to the August 13 Letter with a "non-exhaustive list of concerns with the DOJ's request" for a complete and unredacted SVRL, including that Minnesota law prohibits the Secretary "from providing a voter's date of birth or any portion of their Social Security Number, driver's license number, state identification card number . . ." in response to a request for public inspection. Minn. Stat. § 201.091, subd. 9."[11] The Secretary's office also explained why DOJ had not "provided adequate justification for amassing highly sensitive information on millions of Minnesotans" and why DOJ had not "provided adequate assurances that it will treat the data appropriately," and noted that Minnesota has a publicly available voter list, which does not include Minnesota voters' sensitive personal identifiers.[12] The Secretary's office also stated that it "would appreciate the opportunity to discuss the matter further with the DOJ in order to determine whether there are ways to address the DOJ's concerns without unnecessarily disclosing private data on millions of Minnesotans."[13]

---

[9] Dkt. No. 8-3; Dkt. No. 1 ("Compl. ¶¶ 33–35.
[10] Dkt. No. 8-3; Compl. ¶ 38.
[11] Dkt. No. 8-4; Compl. ¶ 39.
[12] Dkt. No. 8-4; Compl. ¶ 40.
[13] Dkt. No. 8-4.

151487615.4 0069559-00001

According to documents in the public record, DOJ apparently never responded to the Secretary's August 21 letter and never provided any additional legal arguments to support its position or address the Secretary's objections. Instead, on September 25, 2025, the United States sued the Secretary in this action (and has brought similar lawsuits in 21 other states and the District of Columbia).[14]

Notably, according to public reporting, DOJ's requests for private, sensitive voter data from Minnesota and other states do not appear to relate to assessing list maintenance under HAVA or otherwise. Rather, they appear to be in connection with unprecedented efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize state voter rolls. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information."[15] DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ

---

[14] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/K67T-KJPT; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/B3ZS-2SV8; *see also* Martinez-Ochoa, *Tracker of Justice Department Requests for Voter Information*, *supra* note 2.

[15] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

151487615.4 0069559-00001

and DHS.[16] One article extensively quoted a recently departed lawyer from DOJ's Civil

Rights Division describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary.
> Leadership said they had a DOGE person who could go through all the data
> and compare it to the Department of Homeland Security data and Social
> Security data. . . . I had never before told an opposing party, Hey, I want this
> information and I'm saying I want it for this reason, but I actually know it's
> going to be used for these other reasons. That was dishonest. It felt like a
> perversion of the role of the Civil Rights Division.[17]

Additional public reporting has further described these efforts as being conducted

with the involvement of self-proclaimed "election integrity" advocates within and outside

the government who have previously sought to disenfranchise voters and overturn

elections. Those advocates include Heather Honey, who sought to overturn the result of the

2020 presidential election in multiple states and now serves as DHS's "deputy assistant

secretary for election integrity."[18] Also involved is Cleta Mitchell, a private attorney and

---

[16] *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

[17] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

[18] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. Times, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. Capital-Star, Aug. 27, 2025, https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*,

151487615.4 0069559-00001

leader of a national group called the "Election Integrity Network," who has, among other things, promoted the use of artificial intelligence to challenge registered voters.[19] Such actors, including actors associated with Ms. Honey, have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to make mass challenges to disenfranchise voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless).[20]

---

ProPublica, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

[19] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, Democracy Docket, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, ProPublica, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

[20] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, Spotlight PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, Phila. Inquirer, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR,

Here, DOJ's actions also indicate it may target specific groups of voters in its use of the requested data. In letters to Minnesota as well as to other states requesting the same private voter data, DOJ also requested information about how elections officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or citizenship status.[21]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Meeting this burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[21] *See* Dkt. No. 8-1; *see also, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

8

will not do." *Id.* at 555. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Claims that fail to meet the minimum pleading standards required by law are dismissed. *See Matson Logistics, LLC v. Smiens*, No. 12-400 ADM/JJK, 2012 WL 2005607 (D. Minn. June 5, 2012) (granting dismissal of, *inter alia*, breach of contract claims); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 839 (D. Minn. 2012) (granting motion to dismiss finding "[i]t is not sufficient for a plaintiff to cut and paste the elements of a cause of action into a complaint and then expect the claim to survive a motion to dismiss"). Additionally, "[c]ourts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022).

## ARGUMENT

The United States' demand for Minnesota's full and unredacted electronic voter file exceeds its statutory authority under the CRA and HAVA. The CRA's disclosure clause requires that the federal government provide a sufficient statement of the basis and the purpose for any request for records, which Plaintiff fails to provide. Moreover, to the extent

the United States may be entitled to any records under the CRA, those records should be redacted to vindicate the privacy and constitutional rights of Minnesota voters. And HAVA contains no subpoena authority or records request provision at all. Nothing in these statutes justifies the government's demands for sensitive personal information of voters.

## I.    THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW.

Against the backdrop of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the federal government's access to these records is not unbounded. If the federal government— through the Attorney General or her representative—makes a demand for records, it must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The United States' records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Minnesota's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in support of its records requests. *Second*, to the extent the United States may be entitled to any records under the CRA, those records should be redacted to vindicate the privacy and constitutional rights of Minnesota voters. Nothing in the CRA precludes the appropriate redaction of the sensitive personal information of voters.

A.    **The United States' Demand for Records Fails to Meet the Requisite Statutory Requirements of the CRA.**

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id.* § 20703. "This demand ***shall*** contain a statement of ***the basis and the purpose*** therefor." *Id.* (emphasis added).

DOJ's requests to Minnesota—ostensibly on behalf of the Attorney General—fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of Minnesota's unredacted voter file. *Id.* Contemporaneous case law immediately following the enactment of Title III of the CRA shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation of the law. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III of the CRA have consistently been treated as distinct concepts. *See id.*; *In*

11

*re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). As set forth below, the United States' failure to articulate both a sufficient "basis" and "purpose" underlying its request for the unredacted voter file warrants dismissal of the CRA claim.

In its Complaint, the United States alleges that the "purpose" of its request seeking a copy of Minnesota's "statewide VRL," including "all identifiers" of "both active and inactive voters," was "to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)."[22] But neither the Complaint nor the DOJ letters that invoked the CRA supply a "basis" for why the United States believes Minnesota's list maintenance procedures might violate HAVA in the first place. Indeed, the Complaint includes ***no*** allegations that Minnesota's actual list maintenance practices are deficient, unlawful, discriminatory, or noncompliant. Put another way, the Complaint inverts the enforcement framework Congress established. Rather than alleging facts plausibly showing noncompliance with HAVA's list maintenance requirements, the United States first seeks compelled disclosure of sensitive voter data so that it may subsequently—according to its statement of purpose—determine whether a violation exists. Neither § 21111 nor any other provisions of HAVA authorizes litigation as a precursor to identifying a statutory violation.

Moreover, even if the United States had provided a proper "basis" for its demand—and it did not—it fails to explain any connection between its purported "purpose" and the

---

[22] Compl. ¶¶ 29, 35-36.

151487615.4 0069559-00001

vast scope of its records request here, seeking the full and unredacted Minnesota SVRL. The HAVA provisions cited by the United States for the purpose of its records request under the CRA—52 U.S.C. § 21083(b)(4)(A) and (B)—pertain to the contents of the mail-in voter registration form developed under the National Voter Registration Act of 1993 ("NVRA"), listing questions and statements that must be included in this form, and requiring voting registrars to notify applicants if they fail to answer a question on the form and to allow these applicants an opportunity to complete the form. *Id.* Minnesota's full and unredacted SVRL would be entirely irrelevant here; rather, compliance with these provisions would be assessed by reviewing the contents of this mail voter registration form and communications with applicants who had failed to complete these forms. *See id.*

Alternately, although these provisions were not mentioned at all in either the United States' June 25 Letter or its August 13 Letter, based on context from the United States' Complaint, it appears possible that the United States may have actually intended to invoke different provisions, 52 U.S.C. § 21083*(a)*(4)(A) and (B), for its purpose under the CRA.[23] These provisions require states to have a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," that includes consistency with the notice-and-waiting period requirements of the NVRA for voters who have changed residence, and require that there are "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A), (B).

---

[23] *See* Compl. ¶¶ 4, 20 (referencing 52 U.S.C. § 21083(a)(4)(A), (B)).

Even assuming that provisions not directly cited in a records request could later be retroactively cited to correct or establish a proper purpose for a records request under Title III of the CRA, assessment of compliance with these provisions still would not require access to Minnesota's full and unredacted SVRL. Indeed, the United States does not attempt to explain why unredacted voter files are necessary to determine whether Minnesota has "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A).[24] And in fact, such unredacted files are not necessary: A single snapshot of a state's voter list does not and could not provide enough information to determine if the state has made a "reasonable effort" to remove ineligible voters under § 21083(a)(4)(A). HAVA leaves the mechanisms for conducting list maintenance within the discretion of the state. *See* 52 U.S.C. § 21083(a)(2)(A); § 21085. The ***procedures*** carried out by a state or locality establish its compliance; the unredacted voter file does not. Even if the United States were to use voter file data to identify, for example, voters who had moved or died on Minnesota's voter list at a single point in time, that would not amount to Minnesota failing to comply with the "reasonable effort" required by HAVA. *Cf. Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (finding, in the context of a similar "reasonable effort" list maintenance provision in the NVRA, that a "reasonable effort" is "a serious attempt that is rational and sensible," and rejecting any "quantifiable,

---

[24] Compl. ¶ 20.

objective standard" in this regard). For these reasons, the United States' demand fails on its face to meet the basis and purpose requirements of the CRA.

The basis and purpose requirements under the CRA are critical safeguards that prevent the statute from being used for a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. In the context of administrative subpoenas, and specifically in assessing an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the subpoena is "(1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable[,]" *Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2008) (citing *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 226 (8th Cir. 1984)), and that such subpoenas "are not licenses for extended fishing expeditions," *Coro, Inc. v. F.T.C.*, 338 F.2d 149, 153 (1st Cir. 1964). Indeed, courts have explained that such a purpose requirement ensures that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation pursuant to an administrative subpoena).

As such, even if some portion of the voter file were necessary to investigate Minnesota's compliance with HAVA's list maintenance requirements, the United States

15

has not provided any justification for why the full ***unredacted*** voter file is necessary to carry out this purported purpose. The United States' failure to articulate the basis and the purpose for its demand for the full and unredacted voter file is another ground to hold their demand insufficient as a matter of law.

Title III's basis and purpose requirement is moreover especially important here, where massive amounts of public reporting and public, judicially noticeable documents show that DOJ in fact did not disclose the main basis and purpose for its demand for Minnesota's full and unredacted voter file: building an unprecedented national voter file for its own use, to be shared with other agencies like DHS for unlawful purposes.[25] As Congress has never authorized the creation of such a database, its creation would violate the federal Privacy Act. *See* 5 U.S.C. § 552a (e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

The United States' failure to fully and accurately provide this information is fatal to its Complaint. Section 303 of the CRA requires a statement of "***the*** basis and ***the*** purpose" of a records request, and by twice using the definite article here, the statute requires not just a basis or purpose among many, but the actual, complete basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024)

---

[25] *See supra*, notes 18-19.

(emphasizing distinction between the definite and the indefinite article). This is yet another ground for dismissal.

Moreover, and even setting aside this fatal deficiency, based on the United States' own more recent statements to states in connection with the requests, compliance with HAVA cannot be the true basis and purpose for the data requests at issue here. In particular, the United States represented in federal court that it intends for a number of states to sign a memorandum of understanding ("MOU") regarding its requests for statewide voter files.[26] This MOU was also offered to the states of Colorado and Hawai'i and the United States makes specific reference to it in the Complaints filed against each of those states, demonstrating that this document is surely now part of the public record.[27] And far from ensuring compliance with HAVA, this MOU insisted upon by the United States runs afoul of that law as well as the NVRA, which governs list maintenance in other states.[28]

As noted, HAVA requires a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. § 21083(a)(4)(A). But the United States, as indicated in the MOU, contemplates violations of this statutory requirement. It seeks to

---

[26] Hr'g Tr. at 72:21-73:8, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 4, 2025).

[27] Complaint ¶ 24, *United States v. Griswold*, No. 25-cv-3967 (D. Colo. Dec. 11, 2025), Dkt. No. 1; Complaint ¶ 25, *United States v. Nago*, No. 25-cv-522 (D. Haw. Dec. 11, 2025), Dkt. No. 1.

[28] *See* Declaration of Andrew J. Pieper in Support of Motion to Dismiss by Proposed Intervenor-Defendants League of Women Voters Minnesota, Common Cause, Jennifer Compeau, And Valerie Mangskau ("Pieper Decl.") at Ex. A ("MOU"); *see also* Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline, Dec. 18, 2025, https://www.newsfromthestates.com/article/trumps-doj-offers-states-confidential-deal-remove-voters-flagged-feds.

17

place the authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to statutory text, *id.* § 21085 (methods of complying with HAVA "shall be left to the discretion of the State").[29] Second, its substantive terms seek to compel states to remove supposedly ineligible voters at the federal government's say-so "within forty-five (45) days" without any safeguards to ensure that eligible voters are not removed, MOU at 5, thus conflicting with HAVA's requirements, 52 U.S.C. § 21083(a)(4)(B). This now-public memorandum demonstrates that Plaintiff's supposed purpose is not in compliance with federal law but aggrandizing authority to a federal agency in ways contrary to federal law.

Under the circumstances here, Plaintiff's invocation of Title III of the CRA fails in myriad ways to provide a sufficient "statement of the basis and the purpose" for its demand and, accordingly, does not comply with the CRA. Dismissal is proper.

### B. Any Records Disclosed Under the CRA Should Be Redacted Pursuant to both Minnesota Law and Federal Law.

Even had the United States provided a valid basis and purpose sufficient to support its demands—which it did not—any sensitive personal voter information would still be subject to redaction. The text of Title III of the CRA does not prohibit redactions to protect voter privacy and ensure compliance with federal and state law (both statutory and constitutional), while Minnesota law independently and expressly prohibits the disclosure of the nonpublic voter data demanded by the United States.[30]

---

[29] Pieper Decl., Ex. A at 2, 5.

[30] Minnesota Statutes § 201.091, subd. 9 classifies "a voter's date of birth or any part of a voter's Social Security number, driver's license number, identification card number,

Federal court precedent supports, rather than contradicts, Minnesota's statutory balance between access to voter records and the protection of voter privacy. Although Minnesota is exempt from the NVRA,[31] the cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See TCI of N. Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 815 (8th Cir. 1993) (noting that "courts are obligated to interpret statutes in such a way as to avoid constitutional infirmities" (citing *DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 575 (1988))).

Federal courts have consistently struck this balance, interpreting the "all records" language in Section 8(i) of the NVRA[32] to permit—and sometimes require—redaction and

_____

military identification card number, or passport number" as private data and provides that such information "must not" be disclosed, including in response to law-enforcement inquires. Additionally, disclosure of Minnesota voters' sensitive personal information without redaction could foreseeably chill voter participation, implicating the Minnesota Constitution's protection of the fundamental right to vote (Minn. Const. art. VII, § 1), and exposing the Secretary to potential challenges by affected voters.

[31] Dep't of Just., The National Voter Registration Act of 1993 (NVRA), Questions and Answers, 2. What States are covered by the NVRA's requirements?, https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last updated Nov. 1, 2024).

[32] Section 8(i) of the NVRA requires that

> [e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records

the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Other courts have consistently recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), clarified on denial of reconsideration, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022).

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while

---

concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id*. at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III of the CRA must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The same privacy and constitutional concerns that federal courts have found warrant redactions under NVRA records requests apply equally to requests for the same records under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–282 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules.").

Indeed, the limited case law considering records requests under the CRA expressly acknowledged that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as orders redacting sensitive fields that courts have consistently determined are entitled to protection from disclosure. In *Lynd*, a Fifth Circuit case decided in 1962, the court also noted a consideration "of great importance" for that particular case:

there, the court was "not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." *Id.* 231. Thus, even in the 1960s, before sensitive personal identifying information such as Social Security numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[33] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated the possibility that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230. Here, the Secretary has simply declined, as required by Minnesota law, to provide the personal identifying information of Minnesota voters that would *not* ordinarily be open to reasonable inspection.[34] *See id.* at 231.

Even were the Court to find that the United States is entitled to records under Title III of the CRA after having provided a valid statement of the basis and the purpose therefor (which it did not do here), sensitive personal identifying information, including Social Security numbers and driver's license numbers, should be redacted. No matter the statutory mechanism, conditioning the right to vote on the release of voters' sensitive private

---

[33] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3531 *et seq.* (2014).
[34] Dkt. No. 1 ¶ 39.

information "creates an intolerable burden on that right." *Long*, 682 F.3d at 339 (citation omitted).

## II.    HAVA DOES NOT PROVIDE FOR DATA DISCLOSURES

Unlike the CRA, HAVA does not have a disclosure provision at all. *Compare* 52 U.S.C. § 20703 (CRA authorizing the Attorney General to inspect, reproduce, or copy election records for enforcement purposes), *with* 52 U.S.C. § 20901 *et seq*. (HAVA containing no comparable provision); *see also* 52 U.S.C. § 20507(i)(1) (though not applicable in Minnesota, NVRA containing provision requiring states to make certain voting records available for public inspection). This alone ends the inquiry: Minnesota cannot be legally required to disclose records pursuant to a statute that does not authorize the disclosure of the records the United States demands.

The United States nonetheless contends that the mere existence of HAVA's civil enforcement mechanism allows for unredacted access to all of Minnesota's voting records. Compl. ¶¶ 50–54; *see* 52 U.S.C. § 21111 (permitting the Attorney General to enforce "the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083 [Section 303], and 21083a."). Not so. HAVA does not provide authority to access state records. Rather, 52 U.S.C. § 21111 merely provides the Attorney General with the authority to bring a civil action to ensure that a state has implemented a HAVA-compliant system. And none of the personal identifiers that the United States seeks are necessary to ensure that Minnesota's system complies with HAVA. Indeed, the fact that other voting-related statutes that also include civil enforcement mechanisms—such as the CRA (as well as the NVRA)—contain records provisions when

HAVA does not underscores the point that HAVA does not provide the United States with its claimed authority. *See, e.g.*, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 392 (2015) (courts must assume "that Congress acts intentionally when it omits language included elsewhere").

## CONCLUSION

The United States' request for Minnesota's full and unredacted SVRL should be denied and the Complaint dismissed.

DATED: December 23, 2025                    STOEL RIVES LLP

Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

Patricia J. Yan*
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

*Admitted Pro Hac Vice

   *s/ Andrew J. Pieper*
Andrew J. Pieper, Bar No. 0389262
Heather R. Chang, Bar No. 0403836
Stoel Rives LLP
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
(612) 373-8898
andrew.pieper@stoel.com
heather.chang@stoel.com

Teresa J. Nelson, Bar No. 0269736
David P. McKinney, Bar No. 0392361
American Civil Liberties Union of
Minnesota
2828 University Ave SE
Minneapolis, MN 55414
(651) 645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org

*Attorneys for Proposed Intervenor-Defendants League of Women Voters Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*