UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 25-cv-03761 (KMM/EMB) |
| Plaintiff, | |
| vs. | **DECLARATION OF ALLEN COOK BARR** |
| Steve Simon in his official capacity as Secretary of State for the State of Minnesota, and the State of Minnesota, | |
| Defendants. | |

STATE OF MINNESOTA  )
                    ) ss.
COUNTY OF RAMSEY    )

Allen Cook Barr, being first duly sworn, deposes and says as follows:

1. I represent Defendants Minnesota Secretary of State Steve Simon and the State of Minnesota in this matter. I make this declaration based on my personal knowledge and review of publicly available materials related to the issues in this matter. This declaration is made pursuant to Fed. R. Civ. P. 56(d) to identify topics on which the defendants need discovery in this matter before the Court considers the United States' motion to compel the production of documents (ECF 70). Because this litigation is in the early stages, this list of topics is not exclusive, and this declaration should not be construed to limit the defendants' ability to pursue discovery on topics not identified herein.

2. First, the defendants need discovery on whether the demand at issue case was made for a proper purpose. The U.S. Department of Justice's (DOJ) demand to the

Secretary identified assessing HAVA compliance as the sole purpose of the demand. But in March 2025, President Trump ordered the Department of Homeland Security to review the kind of data being sought by the demand alongside federal immigration databases. Exec. Order No. 14,248, 90 Fed. Reg. 14005, 14006 (Mar. 25, 2025). And in September, the administration confirmed that DOJ "is sharing state voter roll information with the Department of Homeland Security in a search for noncitizens." Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/. The defendants need discovery to determine whether DOJ is demanding voter data for the purpose articulated in its demand letter or for the purposes it has publicly voiced to the media.

    3.    DOJ has also stated to the media that the data it seeks via its demands to state election officials would be "screened for ineligible voter entries." Miles Park, *The Justice Department Sues Maine and Oregon, Ratcheting Up Demands for Voter Data*, N.P.R. (Sept. 17, 2025), https://www.npr.org/2025/09/17/nx-s1-5544354/voter-data-lawsuit-oregon-maine. The defendants need discovery to determine whether DOJ is demanding voter data for this purpose, which was also not articulated in its demand to the Secretary.

    4.    Second, the defendants need discovery on whether the demand at issue has a good-faith basis. DOJ did not identify suspicion of any violation of law in its demand. Instead, in August 2025, then-deputy assistant attorney general Michael Gates stated that DOJ would be requesting voter rolls from all fifty states. Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build a National Voter Roll Using State Data*, N.Y.

TIMES, Sept. 10, 2025, at A12, available at https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. This statement—along with DOJ's similar request to nearly every other state and its similar lawsuits against 23 other states and the District of Columbia—suggests that DOJ has no individualized basis to believe Minnesota is violating any law. The defendants need discovery to determine whether DOJ has any such basis.

5. Third, the defendants need discovery on what DOJ intends to do with the data to assess whether its demand is overbroad. Even accepting DOJ's claim that it intends to use the data to assess HAVA compliance, DOJ has not articulated how that assessment is possible with only a static data set from one point in time. In light of the sensitive nature of the data being sought, the defendants need discovery to determine whether DOJ is seeking information beyond that necessary to assess HAVA compliance.

6. Fourth, if the Court allows any part of the case to proceed and the state defendants must answer, they anticipate bringing counterclaims or affirmative defenses regarding whether DOJ has complied with the Privacy Act, E-Government Act, and Driver's Privacy Protection Act. The defendants need discovery on whether DOJ's proposed data collection would comply with the federal privacy laws. The federal Privacy Act imposes procedural requirements on federal agencies before they collect and use data. Based on the above-noted public statements, the defendants have reason to believe DOJ would use the data it is seeking in ways that have not been properly noticed in the applicable System of Records Notices.

7. Additionally, the E-Government Act requires federal agencies to conduct a privacy impact assessment before initiating new data collections. DOJ has not given any indication that it has done so.

8. The Driver's Privacy Protection Act prohibits federal agencies from obtaining personal information from motor vehicle records unless the information is collected for an authorized purpose. DOJ has not identified how the data it is seeking, which includes information from Minnesota's motor vehicle records, is related to any permissible purpose.

9. Because of the questions surrounding DOJ's compliance with these privacy laws, the defendants need discovery to determine whether DOJ has complied with those acts or intends to use the data it is demanding in contradiction of them.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 21, 2026

s/**Allen Cook Barr**
ALLEN COOK BARR