# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No.: 25-cv-03761-KMM-EMB |
| Plaintiff, | **INTERVENOR-DEFENDANTS LEAGUE OF WOMEN VOTERS MINNESOTA, COMMON CAUSE, JENNIFER COMPEAU, AND VALERIE MANGSKAU'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| Steve Simon, in his official capacity as Secretary of State for the State of Minnesota, and the State of Minnesota, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

    I.    Title III of the Civil Rights Act of 1960 .......................................... 3

    II.   The DOJ Seeks Unredacted Voter Records While Flouting Judicial
        Process ........................................................................................... 4

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ..................................................................................................... 9

    I.    The United States Is Not Entitled to Summary Disposition of Its
        CRA Claim. .................................................................................... 9

    II.   Title III Requires Judicial Review and Appropriate Process. ............. 10

    III.  The United States' Demands Exceed the Statutory Authority of the
        CRA and Are Contrary to Law. ...................................................... 12

        A.    The United States' Demand for Records Fails to Meet the
            Statutory Requirements of the CRA. ...................................... 13

        B.    Any Records Disclosed Under the CRA Should Be Redacted
            to Protect the Constitutional Rights of the Voters. .................. 16

    IV.  If Disclosure Is Ordered, a Protective Order Should Prohibit
        Disclosures That Burden Minnesota Voters' Constitutional and
        Statutory Rights. ........................................................................... 18

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Alabama v. United States*,
304 F.2d 583 (5th Cir. 1962), *aff'd* 371 U.S. 37 (1962) ................................ 4

*Alaska Pulp Corp. v. United States*,
44 Fed. Cl. 669 (1999) ................................................... 20

*Becker v. United States*,
451 U.S. 1306 (1981) ..................................................... 10

*Cody v. Hillard*,
304 F.3d 767 (8th Cir. 2002) ......................................... 12

*DeBartolo Corp. v. Fla. Gulf Coast Trades Council*,
485 U.S. 568 (1988) ..................................................... 17

*E.E.O.C. v. Peat, Marwick, Mitchell & Co.*,
775 F.2d 928 (8th Cir. 1985) ......................................... 11

*FDIC v. Wentz*,
55 F.3d 905 (3d Cir. 1995) ............................................. 10

*Frederick v. Unum Life Ins. Co. of Am.*,
180 F.R.D. 384 (D. Mont. 1998) ..................................... 2

*Fresenius Med. Care v. United States*,
526 F.3d 372 (8th Cir. 2018) ......................... 2, 9, 11, 14

*State of Ala. ex. rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub. nom. Dinkens v. Att'y
Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) .......................... 3, 13

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ............................. 10, 13, 16, 18

*Laxalt v. McClatchy*,
809 F.2d 885 (D.C. Cir. 1987) ....................................... 21

*N.H. Fire Ins. Co. v. Scanlon*,
362 U.S. 404 (1960) ....................................................... 1

*Peters v. United States*,
853 F.2d 692 (9th Cir. 1988) ......................................... 20

*Project Vote/Voting for Am., Inc. v. Long*,
 682 F.3d 331 (4th Cir. 2012) ................................................................. 17, 18

*Richardson v. Powell*,
 No. _____, 2018 WL 11424767 (D.D.C. Apr. 24, 2018) ............................ 21

*Ritter v. United States*,
 177 Fed. Cl. 84 (Jun. 5, 2025) .......................................................................... 21

*Sheetz v. Cnty. of El Dorado*,
 601 U.S. 267 (2024) (Gorsuch, J., concurring) ........................................... 18

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
 584 F.3d 340 (1st Cir. 2009) .......................................................................... 10

*TCI of N.D., Inc. v. Schriock Holding Co.*,
 11 F.3d 812 (8th Cir. 1993) .......................................................................... 17

*United States v. Cartwright*,
 230 F. Supp 873 (M.D. Ala. 1964) ................................................................. 4

*United States v. McDonnell Douglas Corp.*,
 751 F.2d 220 (8th Cir. 1984) ............................................................... 2, 9, 11

*United States v. Powell*,
 379 U.S. 48 (1964) ............................................................................... passim

*United States v. Weber*,
 No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15,
 2026) ........................................................................................................ passim

*United States v. Whispering Oaks Residential Care Facility, LLC*,
 673 F.3d 813 (8th Cir. 2012) .......................................................................... 11

## Statutes

5 U.S.C. § 552(b)(6) .................................................................................... 17

5 U.S.C. § 552a ............................................................................................. 16

5 U.S.C. § 552a(b) ........................................................................................ 17

26 U.S.C. § 7604(a) ...................................................................................... 11

44 U.S.C. § 3501 ........................................................................................... 17

52 U.S.C. § 20501, *et seq.* ............................................................................... 4

52 U.S.C. § 20701 ............................................................................................... 3

52 U.S.C. § 20701, *et seq.* ............................................................................... 3

52 U.S.C. § 20703 ............................................................................. 3, 10, 13, 15

52 U.S.C. § 20705 ..................................................................................... 1, 8, 11

52 U.S.C. § 20901, *et seq.* ............................................................................... 5

52 U.S.C. § 21083(b)(4)(A) ................................................................... 6, 14, 19

52 U.S.C. § 21083(b)(4)(B) ................................................................... 6, 14, 19

52 U.S.C. § 21085 ........................................................................................ 7, 20

52 U.S.C. § 21111 ............................................................................................. 20

Civil Rights Act of 1960 ................................................................................... 12

Civil Rights Act of 1964 ..................................................................................... 4

Section 305 of the Civil Rights Act ................................................................... 13

Title III of the Civil Rights Act ................................................................... passim

E-Government Act § 208 ................................................................................... 17

Freedom of Information Act ............................................................................... 17

Help America Vote Act of 2002 ................................................................. passim

Minn. Stat. § 201.091, subd. 9 .............................................................. 6, 16, 17

National Voter Registration Act of 1993 ..................................................... 4, 17

Privacy Act of 1974 ............................................................................. 16, 18, 21

Voting Rights Act ............................................................................................... 4

**Rules**

Fed. R. Civ. P. 1 .............................................................................................. 1, 9

Fed. R. Civ. P. 26(c)(1)(A) ................................................................................ 18

Fed. R. Civ. P. 37.................................................................................................. 8, 9

Fed. R. Civ. P. 81.................................................................................................. 1, 8

**Constitutional Provisions**

First Amendment ................................................................................................. 16, 17

Fourteenth Amendment ....................................................................................... 17

**Other Authorities**

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025)................................. 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ............................................................. 7

Eric H. Holder, Jr., *MLK50 Symposium: Where Do We Go from Here? Keynote Address*, 49 U. Mem. L. Rev. 33, 38 (2018).................................... 4

H.R. Rep. No. 86-956 (1959) ............................................................................. 3

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Jan. 15, 2026), https://perma.cc/MA32-ZF9Z ................................. 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC ...................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A ................................. 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ.......................................................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC..................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD ...................................................................... 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA ........................................................................ 5

Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5 ........................................................................................................ 5

## INTRODUCTION

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the United States' claim under Title III of the Civil Rights Act ("CRA" or "Title III"). *See* Fed. R. Civ. P. 81. And the Supreme Court has repeatedly endorsed this "uniform and regular civil procedure laid down by the Federal Rules," such that absent "express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law." *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407–08 (1960) (footnotes omitted). The United States asks this Court to dispense with the Federal Rules entirely. The Court should refuse.

Title III of the CRA's only contemplation of court procedures is that the federal district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This is not the express authorization required to depart from the Rules. The Supreme Court has found that this same statutory text—"appropriate process"—does not authorize a special proceeding. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). And indeed, the sole federal court to yet take up the Department of Justice's ("DOJ") motion to compel records held that "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026).

The United States' reliance on Fifth Circuit Civil Rights Era cases similarly does not provide the magic remedy it seeks here. Its demand for immediate access to the legally protected non-public information of millions of voters nationwide finds no support in law, particularly considering the United States' failure to follow statutory requirements in pursuit of a spurious investigation. *See also Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2018) (explaining the standard courts apply when determining whether enforcement of a federal demand is proper: "A subpoena is properly enforced if (1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable.") (citing *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 226 (8th Cir. 1984)).

The United States' attempt to suspend the Rules would pervert the judicial system: it seeks to compel disclosure that is the same as the ultimate relief sought in the suit. Defendant and Intervenor-Defendants would be entirely stripped of their procedural rights in this action should the Motion to Compel be granted. This would be fundamentally unfair and contrary to the standards established by the Federal Rules. *See Frederick v. Unum Life Ins. Co. of Am.*, 180 F.R.D. 384, 385–86 (D. Mont. 1998) (recognizing courts' "affirmative duty to exercise the procedural authority granted under the rules so as to ensure that civil litigation in the federal courts is resolved fairly"). The Court should deny the United States' motion.

## BACKGROUND

### I.    Title III of the Civil Rights Act of 1960

On May 6, 1960, Congress enacted the CRA to protect Black Americans' constitutional right to vote and stop former Confederate states from denying thousands of citizens the ability to register. *See* H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of the statute "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). At the time, local officials in the Jim Crow South routinely used states' voter registration processes to prevent Black citizens from registering to vote, and the federal government did not have statutory authority to review these processes. Title III of the CRA, 52 U.S.C. § 20701, *et seq.*, addressed that gap by permitting the federal government to investigate local officials' discriminatory voter registration policies and challenge them in federal court.

Title III requires states to retain and preserve "all records and papers that come into [an election official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. These records "shall, upon demand in writing by the Attorney General or his representative . . . be made available for inspection, reproduction, and copying at the principal office of [the] custodian." 52 U.S.C. § 20703. Title III provided a mechanism by which "preliminary investigations of registration practices [could] be made in order to determine whether or not such practices conform to constitutional principles." *State of Ala. ex. rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub. nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). After Congress enacted Title III, the federal government used it to

investigate jurisdictions that had effectively denied Black Americans the right to register to vote. *See, e.g.*, *Alabama v. United States*, 304 F.2d 583, 585–86 (5th Cir. 1962) (finding an Alabama county's registration practices were racially discriminatory, leading to less than 10% of Black citizens being registered to vote while nearly 100% of white citizens were registered, despite the county's population being 83% Black), *aff'd* 371 U.S. 37 (1962); *see also United States v. Cartwright*, 230 F. Supp 873, 875 (M.D. Ala. 1964) (reviewing data from an investigation pursuant to Title III that revealed that voting registrars engaged in racially discriminatory practices resulting in 89% of white citizens being registered to vote but only 7.5% of Black citizens being registered).

This robust use of the CRA was short lived. Only a few years after Congress passed Title III, it passed the Civil Rights Act of 1964, which outlawed racial segregation. Then, in 1965, Congress passed the Voting Rights Act, the "crown jewel of the civil rights movement,"[1] which established new voter protections, eliminated literacy tests, and led to the enfranchisement of millions of Black citizens. Because Congress enacted more effective voting rights laws—most notably the Voting Rights Act—federal court assessment of Title III has largely been silent since 1965.

## II. The DOJ Seeks Unredacted Voter Records While Flouting Judicial Process

Since May 2025, the DOJ's Civil Rights Division has been invoking various statutes seeking to collect unredacted sensitive voter information. Relying first on the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq*., and the Help

---

[1] Eric H. Holder, Jr., *MLK50 Symposium: Where Do We Go from Here? Keynote Address*, 49 U. Mem. L. Rev. 33, 38 (2018).

America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901, *et seq.*, and later the CRA, DOJ has sent demand letters to more than 40 states for their full voter registration files,[2] and has sued 24 states and the District of Columbia seeking their full unredacted voter files.[3]

DOJ's first demand letter to Minnesota, dated June 25, 2025, requested "information regarding the State's HAVA compliance," including a copy of Minnesota's statewide voter registration list ("SVRL").[4] DOJ asked that this information be provided within 30 days.[5] On July 25, 2025, the Secretary's General Counsel, Justin Erickson, responded, explaining Minnesota's statutory framework for list maintenance and emphasizing that the SVRL contains "sensitive personal identifying information on several million individuals." The Secretary stated that Minnesota would require "clear legal justification for the data and

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Jan. 15, 2026), https://perma.cc/MA32-ZF9Z.

[3] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5; Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

[4] Dkt. No. 8-1; Dkt. No. 1 ("Compl.") ¶¶ 28, 29.

[5] *Id.*

sufficient information to show that the data will be protected and used properly" before considering disclosure.[6]

On August 13, 2025, DOJ sent another letter, demanding an unredacted electronic copy of Minnesota's SVRL "including all fields, including all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number . . . ."[7] DOJ cited HAVA and the CRA as authority and stated that "the purpose of the request is to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)," but did not elaborate further in this regard and provided no statement or explanation of any alleged deficiency in Minnesota's compliance.[8] DOJ demanded production within seven days.[9] On August 21, 2025, the Secretary responded that Minnesota law expressly prohibits disclosure of dates of birth, Social Security numbers, and driver's license numbers, even in response to law enforcement inquiries, citing Minn. Stat. § 201.091, subd. 9.[10]

DOJ did not respond to these concerns. Instead, on September 25, 2025, it filed this lawsuit seeking to compel production of Minnesota's full, unredacted SVRL. Contemporaneously with Defendant and Defendant-Intervenors' Motions to Dismiss, the United States submitted this Motion to Compel (Dkt. No. 70) seeking an order providing

---

[6] Dkt. No. 8-2; Compl. ¶¶ 30, 32.
[7] Dkt. No. 8-3; Compl. ¶ 36.
[8] Dkt. No. 8-3; Compl. ¶¶ 33–35.
[9] Dkt. No. 8-3; Compl. ¶ 38.
[10] Dkt. No. 8-4; Compl. ¶ 39.

the ultimate relief sought in this action—namely, requiring Minnesota to produce an electronic copy of the SVRL with all fields, including the last four digits of Social Security Numbers ("SSN4"), driver's license numbers, and unique HAVA identifiers—within five days of the Court's order.[11]

Public reporting underscores the extraordinary nature of DOJ's demand. According to multiple sources, the government's efforts appear aimed at constructing a national voter database and sharing data with other federal agencies, including the Department of Homeland Security, for purposes unrelated to enforcing voting rights laws.[12] Moreover, DOJ's own representations to states support suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with federal laws like HAVA, the Memorandum of Understanding that DOJ has presented to states seeks to empower the federal government to identify supposed ineligible voters—directly contrary to the text of HAVA. *Compare* U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding, Dkt. 87-1, at 2, 5, *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"). Taken together with DOJ's failure to articulate a lawful basis and purpose for its demand, these reports and representations all confirm

---

[11] Dkt. No. 70 at 3–4.

[12] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

that DOJ's request is not a legitimate enforcement action but an improper attempt to obtain sensitive personal data on millions of voters.

Defendant and Intervenor-Defendants have all filed Motions to Dismiss the United States' Complaint, which have been fully briefed and will be heard on March 3, 2026. On the same day those motions were submitted, the government filed this Motion to Compel seeking the same relief requested in its Complaint, this time citing only Title III of the CRA. *See* Motion for Order to Compel Prod. of Federal Election Records, Dkt. No. 70 ("Mot. to Compel").[13] Through this improper Motion, the United States seeks immediate dispositive relief to the lawsuit it initiated.

## LEGAL STANDARD

This case is a civil action governed by the Federal Rules of Civil Procedure. Under Title III, a "district court . . . shall have jurisdiction by *appropriate process* to compel the production" of specified election records. 52 U.S.C. § 20705 (emphasis added). This language mirrors other federal statutes that authorize agencies to request records and then seek enforcement in court through an ordinary civil action; no exception under Rule 81 applies. Accordingly, the United States' motion, like other enforcement proceedings or motions to compel records, is governed by Rule 37. *See Powell*, 379 U.S. at 57–58 & n.18.

---

[13] The United States' framing of its Motion is inconsistent, but it can most fairly be considered a Motion to Compel. It does not invoke Rule 37 or relate to any discovery request. Instead, it relies entirely on federal statutory enforcement provisions and seeks the exact relief that the Complaint seeks—production of the statewide voter registration list with all personal identifiers. If granted, the motion would effectively resolve the case by ordering the Secretary of State to produce the contested records. There would be no remaining dispute.

As with any ordinary civil action, any ultimate relief that this Court may grant cannot be through informal motion practice or an abbreviated procedure that departs from the Federal Rules.

## ARGUMENT

### I.    The United States Is Not Entitled to Summary Disposition of Its CRA Claim.

The United States' motion is not a routine Rule 37 motion to compel. It is, in substance, a request for summary disposition disguised as a motion to compel—an attempt to obtain dispositive relief without discovery, without meeting statutory prerequisites, and without judicial scrutiny. The government seeks to bypass the Federal Rules entirely by invoking Title III's "appropriate process" as if it authorizes an expedited, rule-free proceeding. That interpretation is contrary to law. As the Supreme Court has warned, "a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. The phrase "appropriate process" does not create a special summary procedure; it requires compliance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1, 37; *Powell*, 379 U.S. at 57–58 & n.18.

Building on that principle, the Eighth Circuit has articulated specific safeguards to ensure that enforcement of federal demands does not become a vehicle for fishing expeditions or overreach. Enforcement is proper only if the request is issued pursuant to lawful authority, is for a lawful purpose, seeks information relevant to that purpose, and is not unreasonable. *Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2008); *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 226 (8th Cir. 1984). Courts have consistently enforced these standards to

prevent agencies from using informal motion practice to obtain dispositive relief without judicial scrutiny. *See also FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (enforcement requires legitimate purpose and reasonable scope).

In short, the United States' position boils down to this: because the Attorney General asked, Minnesota must hand over everything—no questions, no process, no safeguards. That is not what Title III provides, and it is not how federal courts operate. The Federal Rules apply, and the United States cannot bypass them by invoking "appropriate process" as a blank check. The government's motion should be denied.

## II. Title III Requires Judicial Review and Appropriate Process.

The United States' motion relies exclusively on Fifth Circuit cases from the 1960s, particularly on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), claiming that these cases establish a special proceeding unbridled by the Federal Rules of Civil Procedure. *See* Mot. to Compel, Dkt. 72, at 5–9, 13–15, 17–19. However, nothing in the text of Title III insulates the government's demand from standard judicial review—much less in the circumstances presented here. *See* 52 U.S.C. § 20703. Indeed, the Supreme Court has consistently reaffirmed that "the Federal Rules apply to proceedings to compel . . . production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–1308 (1981) (citation and internal quotation marks omitted); *see also, e.g.*, *Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena); *Sugarloaf*

10

*Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case).

*Powell* is especially instructive. The Court held that proceedings to enforce a federal records statute—one written in terms materially identical to the CRA—are governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data" (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper" (emphasis added)). The Eighth Circuit has followed suit and has made clear that it is a court's responsibility to determine whether a government agency has followed procedural requirements and whether the evidence sought is relevant and material to its investigation before compelling disclosure. *See Fresenius*, 526 F.3d at 375; *McDonnell Douglas*, 751 F.2d at 226; *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012); *E.E.O.C. v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 929 (8th Cir. 1985).

The United States' insistence on what is a summary proceeding with no process and no discovery into the sufficiency or legitimacy of its demand contravenes more than a half-

century of Supreme Court and Eighth Circuit authority and the Federal Rules themselves.[14] This Court is not a rubber stamp and the government's attempt to sidestep the judiciary and evade appropriate process should be rejected.

## III.    The United States' Demands Exceed the Statutory Authority of the CRA and Are Contrary to Law.

Even were the Court to consider the substance of the United States' irregular Motion, it should still be denied, as the CRA does not authorize what the federal government seeks.    Rather, the United States' motion assumes an unrestricted interpretation of Title III that would give the Attorney General unfettered authority, demanding *any* records, no matter how tangential, into *any* possible violation of *any* federal law, however unfounded or obscure. Such an interpretation would render Title III's clear "basis and purpose" requirement meaningless, exposing the impropriety of this interpretation of the statute. *See Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002) ("Courts should not interpret one provision 'in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous.'" (citation omitted)). In actuality, the text

---

[14] The United States asserts, in a Notice of Supplemental Authority, that by issuing an Order to Show Cause, the District of Connecticut (Dooley, J.) "has agreed with the United States that, once the Attorney General has alleged that she has properly demanded production of records and papers under the Civil Rights Act of 1960, and the custodian has refused to comply with that demand, the proper course is for the district court to order the defendant to show cause why the custodian should not be ordered to produce the requested records and papers." Dkt. 92. But this order did not require Connecticut to disclose its unredacted state voter registration list; it merely set a briefing schedule, without any legal analysis. *See* Dkt. 92-1; *see also Weber*, 2026 WL 118807, at *19 ("The Court has reviewed the District of Connecticut order and agrees that it amounts to nothing more than a scheduling order delineating a briefing schedule.").

of the CRA itself reveals that the United States has not met statutory requirements, it is not entitled to the records it seeks, and its Motion must fail.

   **A.    The United States' Demand for Records Fails to Meet the Statutory Requirements of the CRA.**

Title III of the CRA requires the government to provide "a statement of the basis and the purpose" for which the Attorney General is seeking election records. 52 U.S.C. § 20703. The United States fails to meet this statutory requirement.

Case law immediately following the enactment of Title III confirms that the required statutory "basis" is the statement for why the Attorney General believes a violation of federal civil rights law has occurred, and the "purpose" explains how the requested records would help determine whether such violation exists. *See Lynd*, 306 F.2d at 229 n.6. The basis and purpose requirements under the CRA are critical safeguards to prohibit the law from being used for fishing expeditions to obtain records for either speculative or unrelated reasons. *See Gallion*, 187 F. Supp. at 853 ("Title III provides—if *properly applied* and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles." (emphasis added)).

Here, the United States has not provided the statutorily required "statement of the basis and the purpose" to support its demand under Title III. 52 U.S.C. § 20703. The Motion to Compel simply asserts that "[t]he United States has properly demanded records" and cites Section 305's jurisdictional language. And while it noted that "the purpose of the request is to ascertain Minnesota's compliance with the list maintenance requirements of

13

HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B),"[15] it did not identify any factual basis for believing Minnesota violated HAVA or any federal law or explain how the requested records would aid in this investigation or serve a lawful purpose. This omission is fatal. *See Weber*, 2026 WL 118807, at *9–10 (detailing that the United States did not meet the statutory "basis" requirement as it failed to provide any reason why it believed the state violated federal law in comparable action against California).

Moreover, while the United States has provided no basis at all, its supposed statement of purpose is likewise insufficient, and as such its Motion should be denied. It purportedly requires the unredacted SVRL to determine "Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)."[16] Even assuming that this is an accurate statement of the purpose for this request, it still does not justify the breadth of the demand. Courts evaluating enforcement of federal investigative subpoenas examine whether the investigation is "(1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable." *Fresenius*, 526 F.3d at 375. Here, the United States' request fails both the relevance and reasonableness elements. Compliance with HAVA's list maintenance provisions does not require—and cannot reasonably depend on—access to millions of voters' full dates of birth, driver's license numbers, or Social Security numbers. Justin Erickson, General Counsel for the Secretary, already provided DOJ with a detailed explanation of the State's list maintenance

---

[15] Dkt. 8-3; Mot. to Compel, Dkt. 72, at 14.
[16] Dkt. No. 8-3; Dkt. No. 1, Compl. ¶¶ 33–35.

procedures, including statutory safeguards and verification processes in his July 25, 2025 letter.[17] Without a clear connection between these identifiers and the United States' stated purpose, the request is neither relevant nor reasonable.

Without a clear and specific connection between the requested identifiers and the stated purpose, the demand fails Title III's requirement that the Attorney General provide "a statement of the basis and the purpose" for the records sought. 52 U.S.C. § 20703. Here, the government's generalized reference to HAVA does not satisfy that standard. The Court cannot determine whether the request serves a legitimate, lawful objective because the United States has not articulated why these sensitive identifiers are necessary for its stated purpose. As with the failure to articulate any basis, that failure alone is likewise fatal to its motion.

Finally, as the court in California recognized, and as detailed in the Defendant-Intervenors' Motion to Dismiss, Dkt. No. 86 at 16–19, the United States' stated purpose for the records sought does not appear to be the actual purpose underlying the federal government's efforts to access the voter rolls of Minnesota and numerous other states. The California court rightly held that it "is not obliged to accept a contrived statement and purpose." *Weber*, 2026 WL 118807, at \*10–11. The same is no less true of this Court. Indeed, "[r]epresentations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with [HAVA] and into the territory of comprehensive data collection." *Id.* at \*17. These representations further demonstrate that

---

[17] *See* Dkt. No. 8-3.

15

the statutory basis and purpose requirements of the CRA have not been met and so the United States is not entitled to the summary relief it seeks. And to the extent that the government attempts to push back factually on this point, it only underscores the impropriety of using a vehicle not contemplated by the Federal Rules to short circuit ordinary civil practice. The Motion to Compel must be denied.

### B. Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voters.

Even if the United States made a valid demand under Title III with a statutorily sufficient statement of its basis and purpose that sought relevant information (it did not), its Motion to Compel should be denied. This is because the sensitive personal identifiers the government seeks are protected from disclosure by Minnesota and federal law—even to the federal government. Minn. Stat. § 201.091, subd. 9[18]; Privacy Act, 5 U.S.C. § 552a.[19]

In *Kennedy v. Lynd*, one of the earliest cases interpreting Title III shortly after its enactment, the records subject to disclosure to the Attorney General were not required to contain Social Security numbers or other sensitive identifying data, voter data could not be electronically transferred, compounded, or shared, and the Attorney General was not yet subject to federal privacy laws such as the Privacy Act of 1974. 306 F. 2d at 231 (finding

---

[18] This statute expressly provides that "a voter's date of birth or any part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number[]" "***must not***" be provided "in response to a law enforcement inquiry[.]" (Emphasis added.)

[19] This provision of the federal Privacy Act prohibits the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote. *See also Weber*, 2026 WL 118807, at *17–19 (detailing the way in which the federal government's data demands "violate the Privacy Act").

it "of great importance" that the records disclosed to the federal government were not "confidential, private" records but "public records which ought ordinarily to be open to legitimate reasonable inspection"). The current reality is that the vulnerability of electronic data, particularly sensitive personal identifiers, cannot be overlooked or compromised without a very compelling reason, which newer federal and state laws consistently recognize. *See, e.g.*, 5 U.S.C. § 552(b)(6) (exempting private records from FOIA disclosure); 5 U.S.C. § 552a(b) (establishing protections for personal information held by the federal government); E-Government Act § 208, 44 U.S.C. § 3501 Note (purpose of law to "ensure sufficient protections for the privacy of personal information . . ."); Minn. Stat. § 201.091, subd. 9.

Although Minnesota is not subject to the NVRA, courts interpreting its disclosure provisions have consistently held that statutes must be construed to avoid unconstitutional burdens on the right to vote. *See TCI of N.D., Inc. v. Schriock Holding Co.*, 11 F.3d 812, 815 (8th Cir. 1993) (noting that "courts are obligated to interpret statutes in such a way as to avoid constitutional infirmities" (citing *DeBartolo Corp. v. Fla. Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988))). Redaction is required to the extent the disclosure of such sensitive material would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (internal quotation marks and citation omitted). The Fourth Circuit in *Long*, even while granting access to a state's voter registration applications for inspection and photocopying, ensured the redaction of information "uniquely sensitive and vulnerable to abuse." *Id.* In coming to this conclusion,

17

the court emphasized that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339.  These same concerns apply even where the federal government uses a different statute, here the CRA, to claim access to sensitive voter data. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules.").

## IV. If Disclosure Is Ordered, a Protective Order Should Prohibit Disclosures That Burden Minnesota Voters' Constitutional and Statutory Rights.

The United States has failed to follow the Federal Rules of Civil Procedure, has neglected the requirements of the CRA, and is asking this Court to disregard state and federal laws to compel the disclosure of individual voters' sensitive data. For those reasons, its Motion should be flatly denied. However, were the Court to decide to compel production, there is good cause for this Court to require any such disclosure be made only pursuant to an appropriate protective order. There is "no doubt" that the "appropriate process" anticipated by the CRA would "include the power and duty to issue protective orders," *Lynd*, 306 F.2d at 230.

As articulated by Federal Rule of Civil Procedure 26(c)(1)(A): "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or **undue burden** or expense . . . forbidding the disclosure of discovery . . . ." (emphasis added). Here, the records sought by the United States directly infringe on Intervenor-Defendant organizations' members' rights under the Privacy Act and put an

intolerable burden on millions of Minnesotans' constitutional right to register and vote in federal elections, including that of the individual Intervenor-Defendants. The burdensome information sought (sensitive personal identifiers) is also irrelevant and unnecessary for the government's purported investigation. Accordingly, if the United States is permitted to obtain records pursuant to the CRA, Intervenor-Defendants request a protective order forbidding disclosure of individual citizens' personal identifiers, including SSN4 and driver's license numbers.

The United States' demand that Minnesota produce millions of its citizens' sensitive private information poses an undue burden on every Minnesotan who engages in the voter registration process, including the individual Intervenor-Defendants, and on Intervenor-Defendant organizations' mission to expand voter registration and access. The government has demanded Minnesota's SVRL purportedly to determine "Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)."[20] To confirm that Minnesota is meeting the list maintenance requirements under HAVA, the United States does not need the personal identifiers of Minnesota voters. To make this generalized determination does not require name-by-name records of millions of Minnesotans—particularly not *unredacted* records.[21] Additionally, even assuming the government had properly cited HAVA to support this records request, its HAVA

---

[20] Dkt. No. 8-3; Dkt. No. 1; Compl. ¶¶ 33–35; *see also* Dkt. 86 at 13 (noting potential discrepancy between the statutory provisions cited in the initial DOJ letter invoking the CRA and the list maintenance provisions discussed in the Motion to Compel in connection with the purported purpose of this request).

[21] *See* Dkt. 86 at 12–15 (explaining why the full unredacted SVRL is not needed to assess compliance with the referenced HAVA provisions).

enforcement authority does not sanction investigations unmoored from any facts suggesting there is an issue: and indeed, the United States has identified none. This would be the exact sort of "fishing expedition" to which federal agencies are not entitled. *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988).

Moreover, HAVA expressly provides that "[t]he specific choices on the methods of complying with the requirements of" the provisions of HAVA related to list maintenance and statewide voter registration lists "shall be left to the discretion of the State," 52 U.S.C. § 21085, with the Attorney General only authorized to carry out enforcement proceedings if "necessary" to ensure compliance, *id.* § 21111. And to confirm Minnesota's compliance with its responsibilities under HAVA, the DOJ needs confirmation that Minnesota's electronic database contains personal identifiers (which Minnesota did in the July 25 Letter)[22]—there is no need for disclosure of what those identifiers are, who they are associated with, or individuals' voting registration history. At a minimum, the Court should circumscribe how third-party citizens' sensitive personal information is shared and handled, even as amongst federal government agencies. *See Alaska Pulp Corp. v. United States*, 44 Fed. Cl. 669, 672 (1999) (granting third parties' motion for a protective order barring the DOJ from sharing its document production with other DOJ offices and federal government agencies). "Third parties drawn into litigation between others suffer enough cost and inconvenience and should not be required to sacrifice their privacy without good reason." *Id.*

---

[22] *See* Dkt. No. 8-2.

A protective order is particularly important where, as here, a Court is considering whether to order disclosure of records that are subject to the Privacy Act. *See Ritter v. United States*, 177 Fed. Cl. 84, 88 (Jun. 5, 2025) (granting a protective order that limited disclosure of individuals' private information to avoid a broad abrogation of third parties' rights under the Privacy Act). Specifically, "a court considering whether to order disclosure [of records subject to the Privacy Act] should presumably expect the parties to describe what they propose exchanging — what information, about whom, potentially from which agencies and systems of records — and for what purposes. The court can then assess, in light of any protective order the litigants propose, whether the benefits of disclosure justify the burdens on the statutory privacy rights of absent third parties." *Id*. (citations omitted). Here, there is currently no protective order in place. The United States has plainly failed to justify the burden of its request on the statutory privacy rights of absent Minnesota voters. Accordingly, this Court has a duty to ensure that third parties' rights under the Privacy Act—the rights of *millions* of Minnesotans—are not overlooked. *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) ("Where the records sought are subject to the Privacy Act, the District Court's supervisory responsibilities may in many cases be weightier than in the usual discovery context."). The Federal Rules of Civil Procedure require that district courts "'undertake some substantive balancing of interests' to determine whether disclosure should be limited to protect persons from harm that could be caused by a production." *Richardson v. Powell*, No. _____, 2018 WL 11424767, at *2 (D.D.C. Apr. 24, 2018) (quoting *Laxalt*, 809 F.2d at 890) (denying a motion to compel and finding redactions appropriate where information was not sufficiently probative and posed

21

potential invasion of third parties' privacy rights). Here, balancing these interests requires Minnesota citizens' sensitive personal identifiers and voting history be protected from disclosure.

## CONCLUSION

The United States seeks to disregard the Federal Rules and to summarily obtain the ultimate relief it is seeking in this civil action. And it does so while operating outside the requirements of the statute it supposedly seeks to enforce. For all the reasons discussed above, the United States' motion [Dkt. 70] should be denied.

DATED: January 21, 2026                    STOEL RIVES LLP

Theresa J. Lee*                             _s/ Andrew J. Pieper_
Sophia Lin Lakin*                          Andrew J. Pieper, Bar No. 0389262
American Civil Liberties Union             Heather R. Chang, Bar No. 0403836
Foundation                                 Stoel Rives LLP
125 Broad Street, 18th Floor               33 South Sixth Street, Suite 4200
New York, NY 10004                         Minneapolis, MN 55402
(212) 549-2500                             (612) 373-8898
tlee@aclu.org                              andrew.pieper@stoel.com
slakin@aclu.org                            heather.chang@stoel.com

Patricia J. Yan*                           Teresa J. Nelson, Bar No. 0269736
American Civil Liberties Union             David P. McKinney, Bar No. 0392361
Foundation                                 American Civil Liberties Union of
915 15th Street NW                         Minnesota
Washington, DC 20005                       2828 University Ave SE
(202) 457-0800                             Minneapolis, MN 55414
pyan@aclu.org                              (651) 645-4097
                                           tnelson@aclu-mn.org
*Admitted Pro Hac Vice                     dmckinney@aclu-mn.org

                                           *Attorneys for Proposed Intervenor-
                                           Defendants League of Women Voters
                                           Minnesota, Common Cause, Jennifer
                                           Compeau, and Valerie Mangskau*