# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 25-cv-3761 (KMM/EMB) |
| STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA, | |
| *Defendants*. | |

## INTERVENORS MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATIONAL FUND AND MISAEL HERNANDEZ'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 3

ARGUMENT............................................................................................................... 4

     I.   Neither Title III nor HAVA preempts Minnesota's privacy laws protecting the information DOJ seeks. ............................................................................ 5

     II.  DOJ has failed to comply with the Privacy Act. ........................................ 10

     III. The Federal Rules of Civil Procedure govern DOJ's claims, including under the Civil Rights Act of 1960. ..................................................................... 14

     IV. The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, proceed to discovery. ................................. 18

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) ............................................................................... 6

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
   854 F.3d 683 (D.C. Cir. 2017) ......................................................... 17

*CFPB v. Source for Pub. Data, L.P.*,
   903 F.3d 456 (5th Cir. 2018) ........................................................... 17

*In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Prac. Litig.*,
   621 F.3d 781 (8th Cir. 2010) ......................................................... 6, 9

*Isabel v. Reagan*,
   394 F. Supp. 3d 966 (D. Ariz. 2019) ............................................... 14

*Janis v. Nelson*,
   No. CR. 09-5019-KES, 2009 WL 5216902 (D.S.D. Dec. 30, 2009) ..................... 14

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ................................................... 7, 15, 16

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
   No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............. 10, 11, 12, 13

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ....................................................................... 6, 9

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................... 8

*Project Vote/Voting for Am., Inc. v. Long*,
   682 F.3d 331 (4th Cir. 2012) ............................................................. 8

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) ........................................................... 6, 8

*Pub. Int. Legal Found., Inc. v. Matthews*,
   589 F. Supp. 3d 932 (C.D. Ill. 2022) ................................................. 8

*Schibursky v. Int'l Bus. Mach. Corp.*,
    820 F. Supp. 1169 (D. Minn. 1993) ...................................................................... 19

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ............................................................................................ 7

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) ............................................................................. 17

*United States v. Powell*,
    379 U.S. 48 (1964) ...................................................................................... 15, 16

*United States v. Weber*,
    No. 2:25-cv-09149-DOC-ADS,
    --- F. Supp. 3d ---, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ....................*passim*

*Voelker v. IRS*,
    646 F.2d 332 (8th Cir. 1981) ............................................................................. 13

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025) ...................................................................... 8, 9

*WinRed, Inc. v. Ellison*,
    59 F.4th 934 (8th Cir. 2023) ............................................................................... 6

*Young v. City of St. Charles*,
    244 F.3d 623 (8th Cir. 2001) ............................................................................. 19

**STATUTES**

5 U.S.C. § 552a ................................................................................. 7, 11, 13, 14

18 U.S.C. § 2721 ................................................................................................. 7

26 U.S.C. § 7604 .............................................................................................. 16

52 U.S.C. § 20507 ........................................................................................... 7, 9

52 U.S.C. § 20703 ........................................................................................... 6, 7

52 U.S.C. § 20705 ..................................................................................... 3, 15, 16

52 U.S.C. § 21083 .............................................................................................. 9

52 U.S.C. § 21111 ............................................................................................. 14

Minn. Stat. § 201.091 ...................................................................... 5, 7, 9, 16

Minn. Stat. § 5B.06 ............................................................................... 5, 7, 9

**RULES**

Fed. R. Civ. P. 1 ............................................................................................ 3

**REGULATIONS**

68 Fed. Reg. 47610 (Aug. 11, 2003) ........................................................ 12

70 Fed. Reg. 43904 (July 20, 2005) ......................................................... 13

82 Fed. Reg. 24147 (May 25, 2017) ......................................................... 13

Minn. R. 8290.1300 ....................................................................... 5, 7, 9

**OTHER AUTHORITIES**

Antonin Scalia & Brian A. Garner, Reading Law (2012) .................................. 8

Jaime Adame, *In 'Tentative' Ruling, Judge Denies Federal Access to Oregon
        Voter Data*, LookOut Eugene-Springfield (Jan. 14, 2026),
        https://perma.cc/P2T7-4DC8 ......................................................... 2

## INTRODUCTION

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action. Following the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. The U.S. Department of Justice ("DOJ"), however, asks this Court to sweep that settled process aside. In what DOJ dubs a "motion for order to compel," it requests that the Court issue an order directing Defendants to provide DOJ with a complete, unredacted copy of Minnesota's statewide voter list within five days—in other words, immediately granting DOJ the final relief it seeks in this action.

This request should be denied both because DOJ is not entitled to relief at all and because its motion is procedurally improper. Indeed, at least two courts have already rejected or are poised to reject DOJ's claims. A federal district court in California hearing DOJ's lawsuit attempting to compel the same information from that state dismissed DOJ's claims under the Help America Vote Act ("HAVA") and the Civil Rights Act, concluding that DOJ's attempt to use "civil rights legislation which was enacted for an entirely different purpose to amass and retain an unprecedented amount of confidential voter data . . . goes far beyond what Congress intended." *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, --- F. Supp. 3d ----, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026). And a

federal judge hearing DOJ's similar lawsuit in Oregon advised the parties from the bench that he was tentatively issuing an oral ruling granting the defendants' motions to dismiss.[1]

This suit should meet the same end. Neither of the two statues DOJ relies upon—HAVA or the Civil Rights Act—entitles DOJ to the information it seeks. In fact, HAVA has *no* disclosure provision at all, and it further confirms that states—not the federal government—are responsible for maintaining voter lists. *See* ECF No. 80 ("Alliance MTD") at 3–4, 9–11; *Weber*, 2026 WL 118807, at *15 (finding the fact that HAVA contains "no such provision" "ends the inquiry"). Nor can the Civil Rights Act be used as a blank check to demand the private data of every single voter in the state when the government does not even pretend to be investigating any alleged violation of that Act. *See* Alliance MTD at 12–14. In addition, DOJ cannot prevail because Minnesota's privacy laws protect the sensitive information DOJ seeks from disclosure, and because DOJ failed to comply with the federal Privacy Act. *See infra* Argument §§ I–II.

DOJ's motion also fundamentally misunderstands how civil litigation works. Nothing in the statutes underlying DOJ's claim permits DOJ to short-circuit the Federal Rules of Civil Procedure for its own convenience. And contrary to DOJ's suggestion, Title III of the Civil Rights Act of 1960 does not "displace[]" the Federal Rules or create a "special statutory proceeding" when DOJ demands voting records. *Contra* ECF No. 72 ("DOJ Mem.") at 17 (citation omitted). In fact, the term "special statutory proceeding"

---

[1] *See* Jaime Adame, *In 'Tentative' Ruling, Judge Denies Federal Access to Oregon Voter Data*, LookOut Eugene-Springfield (Jan. 14, 2026), https://perma.cc/P2T7-4DC8. No written order has yet issued from that court.

appears nowhere in the Civil Rights Act, which merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. Finding nothing in the text of Title III to support this theory, DOJ relies instead on a lone, out-of-circuit case from 1962. But that case is distinguishable many times over, has been displaced by intervening Supreme Court authority, and cannot supersede the Federal Rules. The Court should reject DOJ's effort to bypass the prescribed stages of litigation it apparently finds bothersome and deny DOJ's improper motion to compel.

## BACKGROUND[2]

DOJ filed this suit on September 25, 2025, seeking to compel Defendants—the State of Minnesota and its Secretary of State Steve Simon—to turn over Minnesota's full, unredacted statewide voter registration list. *See generally* ECF No. 1 ("Compl."). The Minnesota Alliance for Retired Americans and Misael Hernandez (collectively, "the Alliance Intervenors") moved to intervene in this action on September 30. *See* ECF No. 5. Another group of intervenors consisting of the League of Women Voters of Minnesota, Common Cause, and two voters ("LWV Intervenors") later did the same. *See* ECF No. 29. On January 6, 2026, this Court granted both motions to intervene. *See* ECF No. 90.

Defendants, the Alliance Intervenors, and the LWV Intervenors have each filed motions to dismiss this action for failure to state a claim. *See* ECF Nos. 63, 78, 83. Under

---

[2] The Alliance Intervenors' Memorandum of Law in Support of their Motion to Dismiss, ECF No. 80, further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Minnesota and throughout the country.

the schedule agreed to by the parties and entered by this Court, those motions will be fully briefed by February 6. *See* ECF No. 55. The Court will then have before it a host of dispositive arguments that could—and should—resolve this suit. Should the Court deny the motions to dismiss, the case would ordinarily proceed to discovery, summary judgment briefing, and ultimately a trial, if necessary.

DOJ, however, asks the Court to disregard this regular process and "enter an Order directing Defendants to comply with the Attorney General's Demand pursuant to the CRA" by providing "an electronic copy of Minnesota's [statewide voter registration list] with all fields," including all of the sensitive fields that DOJ demands, within five days. DOJ Mem. at 19. In support, DOJ claims that the Civil Rights Act "displaces the Federal Rules of Civil Procedure" and instead authorizes a "special statutory proceeding" in which "Secretary Simon . . . must produce the voter-registration lists and other Federal election records demanded by the Attorney General." *Id.* at 17–18 (citation omitted). In other words, DOJ appears to contend that it is entitled to immediate, final resolution of this case in its favor.

## ARGUMENT[3]

DOJ's motion must be denied for at least three reasons. First, DOJ is not entitled to the sensitive personal information it seeks because Minnesota law prohibits Defendants from furnishing that information to DOJ, and neither Title III nor HAVA preempts those state-law privacy protections nor otherwise empowers DOJ to access the protected

---

[3] In addition to the reasons listed in this opposition, DOJ's motion to compel must also be denied because its complaint fails to state a claim and must be dismissed for all the reasons set forth in the Alliance Intervenors' Memorandum of Law in Support of their Motion to Dismiss, ECF No. 80.

information. Second, the Privacy Act prohibits the federal government from collecting individuals' personal information until the agency has implemented the required procedural safeguards, which DOJ has not done here. Third, DOJ's motion is not procedurally permissible. The Federal Rules of Civil Procedure govern this action and provide a roadmap for how this case—just like nearly all other civil actions—must proceed. And nothing in the text of the Civil Rights Act or the Federal Rules supports DOJ's contention that the Civil Rights Act displaces the Federal Rules or authorizes the Court to award what is effectively final judgment via a "motion for order to compel."

## I.    Neither Title III nor HAVA preempts Minnesota's privacy laws protecting the information DOJ seeks.

Minnesota law facially prohibits the Secretary from producing the sensitive information contained in the state's voter registration database. *See* Minn. Stat. § 201.091, subd. 9 (voter registration lists made available for public inspection, purchase, or in response to a law enforcement inquiry may not include a voter's date of birth, any part of a voter's Social Security number, driver's license number, identification card number, military identification card number, or passport number); Minn. Stat. § 5B.06 (voters who are in the state's address confidentiality program are given special privacy protections); Minn. R. 8290.1300, subp. 2a (the Secretary of State must keep confidential the voting record of any participant in the state's address confidentiality program). Thus, in order to obtain the private data at issue in this case, DOJ must show that either Title III or HAVA preempts those state law privacy protections. They do not; therefore, DOJ cannot prevail in its request to obtain Minnesota's statewide voter list.

Because neither Title III nor HAVA contains an *express* preemption provision, *see* 52 U.S.C. § 20703, DOJ's preemption argument must fail unless Minnesota's privacy protections *impliedly* conflict with Title III. *See In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Prac. Litig.*, 621 F.3d 781, 791–92 (8th Cir. 2010) (discussing express and implied preemption). For implied preemption, the Eighth Circuit has recognized that courts generally "apply a presumption against preemption in 'field[s] traditionally occupied by the States.'" *WinRed, Inc. v. Ellison*, 59 F.4th 934, 942 (8th Cir. 2023) (alteration in original) (citation omitted). Although this presumption "does not hold when Congress acts under the Elections Clause, which empowers Congress to 'make or alter' state elections regulations," *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 51–52 (1st Cir. 2024) (citation modified) (quoting *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013)), or when Congress otherwise regulates the mechanics of the voting process, Title III addresses only the retention, maintenance, and disclosure of records. It does not target any state election regulations or practices, nor does it implicate any voting requirements. Accordingly, the presumption against preemption applies here, and Title III cannot displace Minnesota's privacy protections "unless that was the clear and manifest purpose of Congress." *In re Aurora Dairy Corp.*, 621 F.3d at 792 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. To the contrary, in the principal case DOJ cites in its complaint and in its motion to compel, the Fifth Circuit explained that Title III is intended to reach *only* "public records which ought ordinarily to

6

be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962). The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection," *id.*; instead, DOJ seeks sensitive information that enjoys strong privacy protection under both federal and state law, *see, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; Minn. Stat. § 201.091, subd. 9; Minn. Stat. § 5B.06; Minn. R. 8290.1300, subp. 2a.

Further confirmation that Title III does not preempt Minnesota's privacy protections is found in the judicial consensus that a similar statute—the National Voter Registration Act ("NVRA")—likewise does *not* preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. While Minnesota is exempt from the NVRA, the statute's enforcement in other jurisdictions is instructive to this Court's analysis of Title III because both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). Because Title III and the NVRA both touch on closely related subjects (disclosure of state records relating to voting) and because Congress used markedly similar language in crafting those enactments, the two statutory provisions should be interpreted similarly. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in

7

both statutes."); Antonin Scalia & Brian A. Garner, *Reading Law* 252 (2012) ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").

A straightforward application of that principle dooms DOJ's claim. Numerous courts have held that the NVRA does *not* prohibit states from redacting precisely the information that DOJ seeks. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."); *Bellows*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates). And, just last week, the California court considering DOJ's parallel lawsuit there likewise concluded that "states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA"— pointing out that DOJ itself had conceded this in amicus briefs as recently as 2023. *Weber*, 2026 WL 118807, at *12–13. Because the NVRA and Title III should be interpreted similarly with respect to demands for the information at issue, Title III should not be read

to preempt state privacy laws such as Minn. Stat. § 201.091, subd. 9, Minn. Stat. § 5B.06, and Minn. R. 8290.1300, subp. 2a. that prohibit the disclosure of highly sensitive voter information.

This conclusion is reinforced by analyzing the choices Congress made when it enacted HAVA. Recall that DOJ's stated purpose for its demand for personal and highly sensitive voter information is to evaluate Minnesota's compliance with its list maintenance obligations under HAVA. Compl. ¶ 35. In the NVRA, Congress created an inspection provision, located at 52 U.S.C. § 20507(i), as a mechanism to ascertain states' compliance with their list maintenance obligations—yet that mechanism permits the redaction of sensitive voter data, *see Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. In enacting HAVA, Congress did not include *any* similar provision anywhere in the statute. Indeed, HAVA contains *no* disclosure provision at all, and explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). It cannot be the case that Congress intended Title III to preempt state privacy laws protecting highly sensitive information in order to assess compliance with states' voter list maintenance obligations under HAVA when the text of HAVA itself reflects Congress's judgment *not* to mandate disclosure of such information. *See Weber*, 2026 WL 118807, at *15 (finding the fact that HAVA contains "no such provision" "ends the inquiry"); *see also In re Aurora Dairy Corp.*, 621 F.3d at 792 ("[C]ongressional purpose is 'the ultimate touchstone' in every preemption case." (quoting *Medtronic*, 518 U.S. at 485)).

DOJ's contrary argument relies almost entirely on a South Carolina state court ruling that is readily distinguishable. *See* DOJ Mem. at 16–17 (citing ECF No. 73 at Ex. 5 (*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cnty. Comm. Pleas Oct. 1, 2025) ("*Crook* Order")). In that case, the court denied an individual's motion for temporary injunction after that individual sought to prevent South Carolina from releasing information to DOJ. The court there concluded that there was no conflict between federal and state law because "the State at this point has interpreted the law as requiring compliance with the federal request," *Crook* Order at 11, and thus did not carry out any actual preemption analysis. Here, by contrast, the State of Minnesota has actively resisted DOJ's demands. DOJ, too, fails to conduct any meaningful preemption analysis, instead blithely asserting that "any state-law privacy right . . . is preempted by the [Civil Rights Act]'s broad grant of access to the Attorney General." DOJ Mem. at 17. Because that is incorrect for all the reasons listed above, Minnesota law protects the information at issue here from disclosure, dooming DOJ's motion.

## II.    DOJ has failed to comply with the Privacy Act.

DOJ's motion to compel should also be denied because it failed to comply with its obligations under the federal Privacy Act. The Privacy Act "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rush to sweep up the

sensitive information of every registered voter in Minnesota, DOJ overlooked the Privacy Act's basic procedural requirements. "Because the DOJ has not fulfilled" those requirements, "it cannot collect the sensitive, unredacted voting records of millions of" Minnesotans. *Weber*, 2026 WL 118807, at *18.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Minnesota's statewide voter registration list, which contains voter names, as well as voter registration and other identifiers, plainly qualifies as a "system of records." The term "maintain" is defined to include "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Minnesota's statewide voter registration list, the obligations imposed by subsection (e) would be triggered. *See id.* § 552a(e)(4).

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the

categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act applies here, or that DOJ must publish a SORN that would apply to Minnesota's statewide voter registration list. Indeed, DOJ's complaint specifies the SORN that DOJ apparently believes provides authority for it to collect Minnesota's voter registration list: "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 44; *see also id.* (stating that "information that the Department collects pursuant to its request to Minnesota . . . will be maintained consistent with Privacy Act protections").

The referenced SORN, however, does not extend to cover Minnesota's statewide voter registration list. It notifies the public that the categories of individuals covered by the system may include, among others, "[s]ubjects of investigations, victims, [and] potential witnesses." *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It is not plausible that this language countenances the collection of personally identifying information of *every* registered voter in Minnesota (and, if DOJ gets its way, of every registered voter in the country). Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it

would be a startling interpretation of these terms to conclude that they extend to a statewide (or nationwide) voter registration list, as DOJ contends here.[4]

As the California court correctly held in *Weber*, the SORN that DOJ relies on "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity." 2026 WL 118807, at *18. To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in Minnesota (or the country) would nullify the statute's "procedural safeguards" that "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuses of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to take such a radical step, the Privacy Act requires at a minimum that DOJ give the public adequate notice about its intention by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See Voelker v. IRS*, 646 F.2d 332, 334 (8th Cir. 1981) (describing the "obvious rationale" of notice requirement as being to facilitate individuals' access to their own records "by informing individuals that they may be the subject of federal recordkeeping"); *see also* 5 U.S.C.

---

[4] DOJ also cites two other notices in the Federal Register, but they are irrelevant. The first simply adds an additional, allowable "routine use" to the SORN that does not apply here. *See* 70 Fed. Reg. 43904, 43904 (July 20, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

§ 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency"). DOJ's failure to do so provides an additional, independent reason for this Court to deny DOJ's motion to compel.

## III. The Federal Rules of Civil Procedure govern DOJ's claims, including under the Civil Rights Act of 1960.

Just as this Court should ultimately reject DOJ's claims on their merits, it should also reject DOJ's request to sweep aside the Federal Rules. Nothing in the statutes DOJ cites supports such an extraordinary departure from the Court's procedures. HAVA authorizes the Attorney General to "bring a *civil action* against any State or jurisdiction in an appropriate United States District Court" for declaratory or injunctive relief under certain sections of HAVA, but makes no mention of exempting such actions from the Federal Rules. 52 U.S.C. § 21111 (emphasis added). To the contrary, district courts regularly hear HAVA cases under the Federal Rules. *See, e.g.*, *Janis v. Nelson*, No. CR. 09-5019-KES, 2009 WL 5216902, at *2–4 (D.S.D. Dec. 30, 2009); *Isabel v. Reagan*, 394 F. Supp. 3d 966, 974, 978–81 (D. Ariz. 2019). DOJ does not identify *any* HAVA cases that have been resolved under a procedural framework other than the Federal Rules, and the Alliance Intervenors are aware of none.

DOJ pins its request on Title III of the Civil Rights Act, which it claims "displaces" the Federal Rules. DOJ Mem. at 17. But Title III does no such thing—the statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and provides that such courts may "by appropriate

14

process" compel the production of covered records. 52 U.S.C. § 20705. Nothing in that unremarkable grant of jurisdiction says that Title III cases are exempt from the Federal Rules or immune from searching judicial review, as DOJ insists. Nor does the term "summary proceeding" appear anywhere in the Civil Rights Act. The California court thus correctly held that "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause" and denied DOJ's motion to compel. *Weber*, 2026 WL 118807, at *8.

DOJ's sole authority for its argument is a Fifth Circuit opinion from 1962 that describes an action to enforce Title III of the Civil Rights Act of 1960 as a "special statutory proceeding." DOJ Mem. at 17–18 (quoting *Lynd*, 306 F.2d at 225). But *Lynd*'s conclusion on that score finds no support in the statutory text and is fundamentally incompatible with modern jurisprudence. Just two years after *Lynd*, the Supreme Court squarely rejected similar arguments in *United States v. Powell*, 379 U.S. 48, 57–58 (1964). *Powell* concerned a government request for a district court to enforce a tax subpoena under a statute materially similar to Title III. *See id.* The Supreme Court held that to invoke the powers of a federal court to enforce the subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *Id.* As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* (noting "an abuse would take place if the summons had been issued for an improper purpose"). To

the extent *Lynd* refused to engage in judicial review of government document requests, that is simply not the law.[5]

For the same reasons, *Powell* also rebuffed the government's attempt to depart from proceeding under the Federal Rules, holding instead that because the statute at issue "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Id.* at 58 n.18 (emphasis added). The jurisdictional provision in the subpoena statute interpreted by *Powell* closely parallels the Civil Rights Act of 1960. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the

_____

[5] The procedure and facts before the court in *Lynd* also differ starkly from those here. To start, that appeal consolidated five separate cases from two different states and two judicial districts. *Lynd*, 306 F.2d at 225. The precise procedures—whether pursuant to the Federal Rules or not—are not detailed for each case, nor did the Fifth Circuit question them. But nothing in *Lynd* supports the procedural maneuver DOJ tries here. The *Lynd* court also had no reason to doubt that DOJ invoked Title III for a valid purpose. As it explained, Title III's "clearest purpose[]" is to permit investigations "concerning infringement or denial of . . . voting rights." *Id.* at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Id.* at 229 n.6. Finally, *Lynd* emphasized that DOJ there did *not* seek "confidential, private" records, *id.* at 231, whereas DOJ here demands sensitive voter information deemed "confidential" and protected from disclosure under Minnesota law, *see* Minn. Stat. § 201.091, subd. 9.

production of such record or paper." (emphasis added)). The Supreme Court made clear that claimants could not evade the Federal Rules under such a provision.

The reasoning of *Powell*—which, unlike *Lynd*, binds this Court—forecloses any notion that Title III's jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules. Indeed, since *Powell*, courts—including the court that issued *Lynd*—have regularly engaged in meaningful judicial review of government document requests under the Rules. *E.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690–91 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing").

Nothing in DOJ's recently filed notice of supplemental authority changes that conclusion. In that notice, DOJ submitted a recent order from a federal court in Connecticut that instructs the Secretary to show cause as to why the court should not order the release of the state's voter registration list to DOJ. *See* ECF No. 92. But that order did not require Connecticut officials to turn over *any* data. *See* ECF No. 92-1 (Order, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 8, 2026), Dkt. No. 10). Instead, the Connecticut order "amounts to nothing more than a scheduling order delineating a briefing schedule."

*Weber*, 2026 WL 118807, at \*19. The order does not find that DOJ has adequately stated a claim for relief under the Civil Rights Act, let alone proven such a claim.

The Connecticut order is also an outlier that flips the burden onto Defendants to explain why DOJ should not prevail on its claims. *None* of the other 23 courts in DOJ's suits seeking voter lists has issued a similar order; instead, those courts have proceeded to entertain Rule 12 motions.[6] These courts have had the benefit of advocacy on the question of what rules apply to these cases, as well as on the merits. In the Connecticut case, the state had not yet appeared when the court issued its order (indeed, it was only served days after the Court's order), meaning that the court lacked adversarial briefing on the appropriate procedures to apply to a Title III claim. *See* Summonses Returned Executed, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 12, 2026), Dkt. Nos. 20–21. No court that has received adversarial briefing on this question has so far concluded that DOJ is correct in the process that is to be followed. Nor is there anything in the Connecticut order or DOJ's papers that would justify this Court changing course.

## IV.    The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, proceed to discovery.

Consistent with the above, the Court should resolve this case via the pending motions to dismiss, not through a "motion for order to compel" that is not sanctioned by

---

[6] For example, in addition to California and Oregon, motions to dismiss are fully briefed in Michigan, Maine, and New York. *See, e.g.*, Reply in Supp. of Mot. Dismiss, *United States v. Benson*, No. 1:25-CV-01148 (W.D. Mich. Jan. 9, 2026), Dkt. No. 58; Scheduling Order, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), Dkt. No. 38; Reply Mem. of Law in Supp. of Mot. Dismiss & in Opp'n to Cross-Mot. to Compel, *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338-MAD-PJE (N.D.N.Y. Jan. 20, 2026), Dkt. No. 86.

the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to "test[] the sufficiency of the complaint." *Schibursky v. Int'l Bus. Mach. Corp.*, 820 F. Supp. 1169, 1175 (D. Minn. 1993). Motions to dismiss thus serve a crucial gatekeeping function: they "eliminate actions which are fatally flawed in their legal premises," thereby "sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). Following these Rules, Defendants, the Alliance Intervenors, and LWV Intervenors have each moved to dismiss this action. *See* ECF Nos. 63, 78, 83. Resolving DOJ's motion to compel first would get things backwards by depriving Defendants and Intervenors of their opportunity to test the legal sufficiency of DOJ's claims at the outset.

Even if the Court were to deny the motions to dismiss in whole or in part, the next step would not be to grant DOJ final relief, but rather to proceed to discovery on its claims—including in particular DOJ's assertions regarding its intended uses of the requested data, which are contradicted by public statements of DOJ officials themselves, *see Weber*, 2026 WL 118807, at \*10–13, and DOJ's dubious allegation that it will abide by federal privacy laws, *see supra* Argument § II. Granting DOJ the relief it seeks before the Secretary and Intervenors can conduct discovery relevant to these and other factual disputes would be premature and contrary to the well-established rules that govern civil litigation.

## CONCLUSION

For the foregoing reasons, the Alliance Intervenors respectfully request that the Court deny DOJ's motion to compel.

Dated: January 21, 2026

Respectfully submitted,

/s/ *Katherine M. Swenson*

Uzoma N. Nkwonta (*pro hac vice*)
Robert Golan-Vilella (*pro hac vice*)
Tina Meng Morrison (*pro hac vice*)
Julianna D. Astarita (*pro hac vice*)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
unkwonta@elias.law
rgolanvilella@elias.law
tmengmorrison@elias.law
jastarita@elias.law

Sybil L. Dunlop, Reg. No. 390186
Katherine M. Swenson, Reg. No. 0389280
Kshithij Shrinath, Reg. No. 0505164
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
sdunlop@greeneespel.com
kswenson@greeneespel.com
kshrinath@greeneespel.com

*Attorneys for Intervenors*
*Minnesota Alliance for Retired Americans Educational Fund and Misael Hernandez*