UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA,<br><br>Defendants. | Case No. 25-cv-3761-KMM-EMB |

**PLAINTIFF UNITED STATES' OPPOSITION TO MOTION TO INTERVENE BY THE NAACP AND CYNTHIA WILSON (DOC. 132)**

Plaintiff United States of America opposes the Motion to Intervene as a Defendant by the National Association for the Advancement of Colored People and Cynthia Wilson (collectively "NAACP Movants"), Doc. 132, for the reasons set forth in the accompanying Memorandum of Law.

NAACP Movants have failed to establish sufficient grounds for intervention, as their Motion is untimely and prejudicial to the United States under controlling authority. Furthermore, they lack standing, they present a generalized interest in preventing the United States from obtaining federal election records to which it is entitled under Title III of the Civil Rights Act of 1960 ("CRA"), and their speculative basis for intervention fails to articulate any concrete grievance or interest that has been or may be violated and will not already be adequately represented by the existing Intervenor-Defendants that – unlike

the NAACP Movants – filed timely motions. NAACP Movants have failed to meet their burden of demonstrating that they meet the standards for intervention as of right, as set forth in Fed. R. Civ. P. 24(a), or for permissive intervention, as set forth in Fed. R. Civ. P. 24(b).

Accordingly, the United States respectfully requests that the Court deny the Motion to Intervene by the NAACP Movants (Doc. 132).

DATED: March 6, 2026

    Respectfully submitted,

    HARMEET K. DHILLON
    Assistant Attorney General
    Civil Rights Division

    JESUS A. OSETE
    Principal Deputy Assistant Attorney General

    ERIC V. NEFF
    Acting Chief, Voting Section
    Civil Rights Division

    */s/ James Thomas Tucker*
    JAMES THOMAS TUCKER
    BRITTANY E. BENNETT
    Attorneys, Voting Section
    Civil Rights Division
    4 Constitution Square
    150 M Street NE, Room 8.141
    Washington, D.C. 20002
    james.t.tucker@usdoj.gov
    brittany.bennett@usdoj.gov
    Tel. (202) 307-2767

    Attorneys for the United States

# MEMORANDUM OF LAW

## I.     BACKGROUND

The United States brought this action to obtain federal election records under Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706. The CRA requires officers of election to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal election. 52 U.S.C. § 20701. Upon a written demand by the Attorney General to an officer of election describing the federal election records and stating the basis and purpose for the demand, that officer of election must produce the records. 52 U.S.C. § 20703. Where, like here, the officers of election have failed or refused to produce the requested federal election records, the Attorney General may bring an action in federal court to compel those records. 52 U.S.C. § 20705. On September 25, 2025, the Attorney General did so by filing the Complaint that is before this Court. *See* Doc. 1.

The same day the United States brought this action, the Attorney General issued a press release describing the case and five other CRA actions filed in California, Michigan, New Hampshire, New York, and Pennsylvania. *See* U.S. Dep't of J., Press Release, *available at* https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls (Sept. 25, 2025). The NAACP chose to file motions to intervene in three of those cases within twelve days of when they were filed: in California, New York, and Pennsylvania. *See* NAACP's Mot. to Intervene, *United States v. Weber*, case no. 2:25-cv-09149-MWF-MAR (C.D. Cal. filed Oct. 7, 2025), Doc. 14 (California); NAACP's Mot. to Intervene, *United States v. Schmidt*, case no. 2:25-cv-01481-CB (W.D.

3

Pa. filed Oct. 7, 2025), Doc. 17 (Pennsylvania); NAACP's Mot. to Intervene, *United States v. Bd. of Elections of N.Y.*, case no. 1:25-cv-01338-MAD-PJE (N.D.N.Y. filed Oct. 1, 2025), Doc. 7 (New York).

On December 23, 2025, Defendants and Intervenor-Defendants filed their respective Motions to Dismiss, noticing the hearing on the motions for March 3, 2026. *See* Docs. 63-64, 78-79, 83-84. That same day, the United States filed its Motion to Compel under the CRA, also noticing the hearing on the Motion for March 3, 2026. *See* Docs. 70 & 71. On January 21, 2026, Defendants, Intervenor-Defendants, and the United States filed their opposition briefs. *See* Docs. 102, 103, 105-106. Briefing was completed when Defendants and Intervenor-Defendants filed reply briefs on February 6, 2026. *See* Docs. 112, 114-15. On March 3, 2026, the Court heard oral arguments on all the fully briefed motions.[1] *See* Doc. 157.

On February 27, 2026, over five months after this case was filed, three weeks after briefing was completed, and just four days before oral arguments were scheduled, the NAACP Movants filed their Motion to Intervene in this matter. That Motion is untimely under controlling Eighth Circuit authority. Moreover, NAACP Movants have failed to establish sufficient grounds for intervention, as they lack standing, they present a generalized interest in preventing the United States from obtaining the federal election records under Title III of the CRA, their speculative basis for intervention fails to articulate

---

[1] During oral arguments, the Court directed the parties to file supplemental briefing addressing the interpretation of 52 U.S.C. § 20701 by the District Court in *United States v. Benson*, 2026 WL 362789, at **9-11 (W.D. Mich. Feb. 10, 2026). *See* Doc. 157.

4

any concrete grievance or interest that has been or may be violated, and their stated interests are already adequately represented by existing Intervenor-Defendants that – unlike the NAACP Movants – filed timely motions to intervene. NAACP Movants have failed to meet their burden of demonstrating that they meet the standards for intervention as of right, as set forth in Federal Rule of Civil Procedure 24(a), or for permissive intervention, as set forth in Federal Rule of Civil Procedure 24(b). For the reasons specified below, their Motion to Intervene (Doc. 132) should be denied.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 24 provides the standards for intervention of right and permissive intervention. Intervention of right is appropriate if the proposed intervenor: (1) files in a timely manner; (2) demonstrates an interest in the action; (3) shows that the interest may be impaired by the disposition of the action; and (4) has an interest not otherwise adequately protected. Fed. R. Civ. P. 24(a)(2); *see also Berger v. North Carolina State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (same); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997 (8th Cir. 1993) (same). NAACP Movants, as the proposed intervenors, bear the burden of demonstrating they have a right to intervene. *Id.* Failure to meet any one of these requirements requires denial of the Motion. *See S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (After demonstrating timeliness, a "proposed intervenor must satisfy all three conditions to intervene as a matter of right.").

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) may be appropriate if the proposed intervenor submits a timely motion and states a claim or

5

defense which has a common question of law or fact with the action. "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Barnett*, 317 F.3d at 787. "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Id.* The Court is vested with broad discretion in denying the NAACP Movants' motion for permissive intervention because this is not one of the "unique or rare cases" where doing so would be an abuse of discretion. *Id.* at 788.

### III.  ARGUMENT

#### A.  NAACP Movants' Motion Is Untimely, Their Delay Is Inexcusable, And Their Intervention Would Prejudice The United States.

Late intervention generally is disfavored. *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995). In assessing timeliness, the Court considers four factors: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention and (4) whether the delay in seeking intervention may prejudice the existing parties. *Smith v. SEECO, Inc.*, 922 F.3d 398, 405 (8th Cir. 2019) (citation omitted). Each of these factors demonstrates that the NAACP Movants' Motion "was not timely filed" requiring that they be "barred from intervening." *Mille Lacs*, 989 F.2d at 998.

The first factor, the point to which the litigation has progressed, weighs heavily against the NAACP Movants. Contrary to what the NAACP Movants contend, they did not

6

file their Motion "in this litigation's infancy." Rather, they filed their Motion to Intervene over five months after the action commenced and after all the dispositive motions – the United States' Motion to Compel and the three Motions to Dismiss – were briefed fully and argued. NAACP Movants suggest that is not fatal, arguing it is enough that they filed their Motion "before [those] motions … have been decided…" *Id.*[2] In making that argument, NAACP Movants misapprehend the limited nature of a proceeding under Title III the CRA. An action to compel federal election records under the CRA "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962).[3] Rather, it is "a special statutory proceeding" that "does not require pleadings" or permit discovery. *Id.* at 225-26 ("[T]here is no place … for interrogatories …, oral depositions …, production of documents …, or requests for admissions as to facts or genuineness of documents…"). As a result, the Court's decision on the fully briefed Motion to Compel and Motions to Dismiss will be dispositive of the entire case. *See United States v. Benson*, case no. 1:25-cv-1148, 2026 WL 362789, at *7 (construing a request for records under the CRA "as a form of administrative subpoena"

---

[2] The Eighth Circuit has found otherwise. *See Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (denying intervention where the motion was filed just twelve days after the case commenced but a hearing already had been held on an application for a temporary restraining order).

[3] The Fifth Circuit is the only federal appellate court to have addressed the scope and procedures for federal records claims under the CRA. Those decisions also are binding in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981) (holding that decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

that requires only "a summary enforcement proceeding") (W.D. Mich. Feb. 10, 2026) (citation omitted), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 25, 2026). In other words, this is not the beginning of the case, but the end.

Turning to the second factor, the NAACP Movants acknowledge that they "learned about DOJ's action shortly after the filing of its complaint…" NAACP Movants' Br., Doc. 134 at 13. The NAACP knew about this case on or closely after the Department of Justice issued its press release on September 25, 2025. That fact is confirmed by the NAACP's decision to file motions to intervene in three of the other states identified in that press release less than two weeks after the cases were filed. One of those motions to intervene was filed in the Pennsylvania litigation twelve days after it commenced by the same counsel they have in this case. Knowledge of the litigation "weighs heavily" in cases like this one in which the NAACP Movants were aware of the litigation for a significant period of time. *Colella's Super Mkt., Inc. v. SuperValu, Inc.*, 849 F.3d 761, 767 (8th Cir. 2017). "When a party had knowledge of all the facts – and failed to raise the issue when first presented the opportunity to do so, subsequent intervention is untimely." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 833 (8th Cir. 2010) (collecting cases). The NAACP Movants' early knowledge of the case cuts strongly against intervention.

The third factor, the reason for the NAACP Movants' delay in seeking intervention, likewise requires denial of their motion. The NAACP Movants attempt to explain away their lack of diligence by deflecting attention towards the Government. They point to a report about a data sharing agreement between the Social Security Administration and an outside group; allegations of "increasing levels of fears and distrust in Minneapolis" of the

Immigration and Customs Enforcement ("ICE"); and a letter that the Attorney General sent to the Governor of Minnesota expressing her frustration at the state's obstruction of federal enforcement actions including this case.[4] *See* NAACP Movants' Br., Doc. 134 at 13-14. But those allegations defeat their motion. The NAACP timely moved to intervene in CRA actions in three states where the NAACP Movants found risks to their interests much less dire than those they allege in this case. Intervention should be denied in cases like this one where it is "hard to believe" that the proposed intervenors did not appreciate the potential impact of the litigation on their rights and they waited "until the latest opportunity." *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998).

Finally, the United States would suffer significant prejudice if the NAACP Movants' untimely intervention is granted. The unreasonably delayed Motion to Intervene undermines the very purpose of the CRA. Title III of the CRA uses a process akin to an administrative summons "to facilitate the investigation of the records *before suit is filed*." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added); *accord Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam); *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960). That enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd*, 306 F.2d

---

[4] Notably, even in making these assertions, the NAACP Movants concede that they still delayed filing their Motion to Intervene. *See* NAACP Movants' Br., Doc. 134 at 14 ("Proposed Intervenors are filing this Motion just *one month after*" the Attorney General's letter) (emphasis added).

at 228. As such, reviewing courts are "required to treat" the simple statement by the Attorney General in a CRA action "as a summary proceeding" and "with expedition … grant the relief sought." *Id.* at 226. Untimely intervention on the eve of a decision on the Motion to Compel and the opposing Motions to Dismiss, is the converse of the summary relief that Congress authorized the Attorney General to obtain in the CRA. That is particularly true if the NAACP Movants intend to file their own motion to dismiss months after the other Intervenor-Defendants filed theirs.

If, on the other hand, the NAACP Movants do not intend to file a dispositive motion in this summary proceeding, they will suffer no prejudice from being denied intervention. Merely filing a joinder to the existing fully brief motions, or filing nothing at all, offers the Court no new arguments with which it has not already been presented. The existing Defendants and Intervenor-Defendants have provided representation that is adequate to protect any interests the NAACP Movants assert in this litigation. Absent any demonstrable prejudice to the NAACP Movants, "'the fact remains that a federal case is a very limited affair, and not everyone with an opinion is invited to attend.'" *Ritchie*, 620 F.3d at 835 (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996)).

Having failed to establish the threshold requirement of timeliness, the NAACP Movants are "barred from intervening," *Mille Lacs*, 989 F.2d at 998, and their Motion to Intervene (Doc. 132) should be denied.

### B. NAACP Movants Are Not Entitled To Intervene As Of Right.

To support intervention, the intervenor's interest must be a particularized interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). That necessitates "a

10

significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), requiring that the intervenor establish standing to bring or defend the claim before the district court. *See generally Diamond v. Charles*, 476 U.S. 54, 66–67 (1986) ("Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes 'a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.'"). The intervenor must show that they stand to gain or lose by the direct legal operation of the district court's judgment on the complaint. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). The NAACP Movants cannot meet their burden because the CRA confers no right for private organizations or individuals to be party plaintiffs or defendants in this action and they have failed to identify any particularized harm that differs from that of any other member of the public.

The CRA does not create a private right of action. The only enforcement provision in the CRA which authorizes a cause of action in federal court is found at Sections 303 and 305, which provides that the Attorney General may make a written demand of an officer of election and may bring an action "to compel the production" of federal election records. 52 U.S.C. §§ 20703, 20705. Aside from that right of action, granted exclusively to the Attorney General of the United States, no other explicit right of action in federal court exists to enforce the provisions of the CRA.

The statutory text likewise limits who may be a defendant. Section 301 of the CRA only applies to "officers of election." *See* 52 U.S.C. § 20701. Section 306 of the Act defines an "officer of election" as

> any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706. Proper party defendants in a CRA enforcement action therefore are limited to only those responsible for retaining and preserving federal election records.

"In the absence of strong indicia of a contrary Congressional intent," the Supreme Court has stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981). "Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Congress specifically limited the parties in CRA litigation over federal election records to the Attorney General of the United States, to bring actions to compel production of those records, and responsible election officials as defendants. Consequently, the NAACP Movants are foreclosed from intervention as of right as a party.

Moreover, speculative injury "does not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest …

necessary to support intervention as of right.'") (quoting *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir.1990)). Even if the NAACP Movants had a legally protectable interest under Title III of the CRA, which they do not, their concern about an arbitrary and unauthorized disclosure of their private information is imagined, speculative, and contrary to federal law.

"[C]ourts that have addressed intervention motions from similarly situated prospective intervenors … have regularly denied intervention as of right under Rule 24(a)." *League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 465 (W.D. Va. 2020) (collecting citations). "There is nothing that distinguishes Prospective Intervenors' interest in this case from that of any other eligible voter in [Minnesota]." *Id.* "Courts are typically disinclined to allow intervenors who merely assert a 'generalized public policy interest shared by a substantial portion of the population.'" *Id.* (collecting citations).

Finally, the NAACP Movants cannot demonstrate that the present litigants fail to adequately represent their interests. As the parties seeking intervention, they bear the burden of showing that their interests are not adequately represented by existing parties. *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997). Although "[t]his burden is ordinarily minimal," a presumption of adequate representation arises "if an existing party to the suit is charged with the responsibility of representing the intervenor's interests." *Id.* Here, the two named Defendants are the State of Minnesota and the Secretary of State, who are presumed to "represent the interests of [their] citizens as *parens patriae,* or 'parent of the country.'" *Id.* (citation omitted). The NAACP Movants have not – and cannot – show

13

that they stand to "gain or lose from the litigation in a way different from the public at large." *Id.* at 187-88.

Moreover, aside from the Defendants, the NAACP Movants cannot establish that the groups and individuals who filed timely motions to intervene will not adequately represent their interests. The existing Defendants and Intervenor-Defendants have filed Motions to Dismiss and have opposed the United States' Motion to Compel asserting arguments overlapping with those identified in the NAACP Movants' brief. *Cf.* Docs. 63-65, 78-80, 83-86 *with* Doc. 134. As a result, given the overlap of objectives, the NAACP Movants cannot overcome the presumption that their interests are adequately represented. *Chiglo*, 104 F.3d at 187-88. Consequently, the NAACP Movants have failed to demonstrate a right to intervention under Rule 24(a)(2).

**C.    NAACP Movants Do Not Meet The Standard For Permissive Intervention.**

Rule 24(b)(2) intervention should be denied for similar reasons. The NAACP Movants' Motion is untimely. Even if that were not the case, permissive intervention requires more than raising a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(1)(B). The Court also must consider whether the intervention will unduly delay the adjudication. Fed. R. Civ. P. 24(b)(3). The United States already has explained why the NAACP Movants' intervention would do precisely that, resulting in prejudice to the United States in a manner that undermines the CRA's summary proceedings. As the motion practice by the existing Defendants and Intervenor-Defendants has shown, adding the untimely NAACP Movants to this case would accomplish nothing

except for delay and more duplicative briefing. Accordingly, the Court should deny permissive intervention to the NAACP Movants.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the NAACP Movants' Motion to Intervene (Doc. 132).

DATED: March 6, 2026

>Respectfully submitted,
>
>HARMEET K. DHILLON
>Assistant Attorney General
>Civil Rights Division
>
>JESUS A. OSETE
>Principal Deputy Assistant Attorney General
>
>ERIC V. NEFF
>Acting Chief, Voting Section
>Civil Rights Division
>
>*/s/ James Thomas Tucker*
>JAMES THOMAS TUCKER
>BRITTANY E. BENNETT
>Attorneys, Voting Section
>Civil Rights Division
>4 Constitution Square
>150 M Street NE, Room 8.141
>Washington, D.C. 20002
>james.t.tucker@usdoj.gov
>brittany.bennett@usdoj.gov
>Tel. (202) 307-2767
>
>Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2026 a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ James Thomas Tucker*

JAMES THOMAS TUCKER
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Plaintiff's foregoing Memorandum complies with Local Rule 7.1(f) and (h). The Memorandum word count total of 3,353 words as determined by Microsoft Word "Word Count" and is formatted in 13-point Times New Roman font.

*/s/ James Thomas Tucker*

JAMES THOMAS TUCKER
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
