**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>STEVE SIMON in his official capacity as Secretary of State for the State of Minnesota, and the STATE OF MINNESOTA,<br><br><br>  Defendants. | Case No. 0:25-CV-03761-KMM-EMB<br><br><br>**UNITED STATES' SUPPLEMENTAL OPPOSITION TO BRIEF OF AMICI CURIAE FORMER EMPLOYEES OF THE U.S. DEPARTMENT OF JUSTICE (DOC. 123)** |

The United States opposes Amici Former Employees of the U.S. Department of Justice ("Amici") Brief in this Matter (Doc. 123).

## MEMORANDUM OF LAW

The United States filed this summary action on September 25, 2025, to obtain federal election records under Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706. On February 26, 2026, Amici filed a brief. Doc. 123. Amici mostly raise duplicative arguments made by Defendants and Intervenor-Defendants which have largely been addressed by the United States in its Memorandum of Law in Opposition to Motions to Dismiss and will not be repeated here. Doc. 102. This brief mostly will address the Civil Rights Division's use of Title III of the CRA.

1

Amici argue that use of Title III of the CRA has been "rare." Doc. 123 at 19, 22. Not so. The United States has used the CRA in most voting statutes that the Civil Rights Division enforces. As explained in the Memorandum of Law, Doc. 102, the United States has used the CRA to obtain statewide voter lists to assess list maintenance in Georgia and Texas.[1] Amici accurately noted that in 2024, the DOJ invoked Title III authority in two other matters concerning list maintenance where Alabama provided voter's driver's license and SSN4 data. Doc. 123 at 21. That same year, the DOJ used Title III to request "similar materials" from the Commonwealth of Virginia and a county in Virginia. *Id*.

The court in *United States v. Benson,* No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th Cir. Feb. 25, 2026) held that "The CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights; the NVRA is a federal election law that protects voting rights." *Benson* further held that "Thus, the DOJ may use the CRA to investigate possible violations of the NVRA. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (administrative subpoena should be enforced 'if the inquiry is within the authority of the agency')." *Id.*

---

[1] *See* Compl., *United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), Doc. 1. The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See Georgia*, *supra*, at Doc. 4 (filed Oct. 27, 2006). The Texas matter was resolved by a Memorandum of Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited March 12, 2026). The three documents are provided herein as Docs. 102-1, 102-2, and 102-3.

The United States has also used Title III of the CRA in enforcement of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). The United States sued Alabama for the State's noncompliance with 42 U.S.C § 1973ff-1(c), which required the State to report to the Election Assistance Commission, not later than ninety days after a regularly scheduled general election for Federal office, certain data regarding ballots from absent uniformed services voters and overseas voters. The United States sought data in 21 Alabama counties under the CRA, and the Court issued an Order approving that request. *See* 2d Neff Decl., ¶7 & Ex. 1.[2] The United States then sent letters to each of the counties demanding the election records. *See* 2d Neff Decl., Ex. 2. A similar lawsuit was filed in Vermont to obtain records for enforcement of the UOCAVA reporting requirement. *See United States v. Vermont*, No. 08-cv-217 (D. Vt. Oct. 30, 2008), and the parties agreed that election officials are required to retain election records under the CRA. *See* 2d Neff Decl., ¶9 & Ex. 3.

The United States also has used the CRA in enforcement of the Voting Rights Act. As noted by Amici, the United States sought election records from Georgia counties gathering evidence for the lawsuit under Section 2 of the Voting Rights Act in *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. June 25, 2021), Doc. 1. The Civil Rights Division sought election information from 159 counties in Georgia, and demand letters under Title III of the CRA were sent to some of those counties. *See* 2d Neff Decl., Ex. 4. The Federal Prosecution of Election Offenses (8th ed. 2017) explains under the heading, "Retention of

---

[2] 42 U.S.C. § 1974 was recodified at 52 U.S.C. § 20701.

Federal Records: 52 U.S.C. § 20701" that "[t]he detection, investigation, and proof of election crimes – and in many instances Voting Rights Act violations – often depend[s] on documentation generated during the voter registration, voting, tabulation, and election certification processes." U.S. Dep't of Just., *Federal Prosecution of Election Offenses* 75 (8th ed. 2017). It provides that "under Section 20701, all documents and records that may be relevant to the detection or prosecution of federal civil rights or election crimes must be maintained if the documents or records were generated in connection with an election that included one or more federal candidates." *Id*. at 78.[3]

In addition, contrary to what Amici contends through presumed third-party hearsay, the records the United States is seeking to compel under the CRA are not in an effort to compile "the largest set of national voter roll data" to "prove… unsubstantiated claims…." Doc. 123 at 10. Rather, the records sought from Minnesota are necessary to perform an individualized assessment of the State's efforts to comply with HAVA.[4] 2d Neff Decl. ¶2-4. It is remarkable that Amici suggest that the United States should have no role in making

---

[3] The Department of Justice in April 2024 also issued guidance titled, "Federal Law Constraints on Post-Election Audits." The guidance explains Title III of the CRA requires election officials to retain election records. "The Act protects the right to vote by ensuring that federal elections records remain available in a form that allows the Department to investigate and prosecute both civil and criminal election matters under federal law." 2d Neff Decl., Ex. 5.

[4] When the Civil Rights Division performs this individualized assessment, the State's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records. 2d Neff Decl. ¶ 5.

sure that there are noncitizens on the voting roll. Doc. 123 at 15-16. HAVA requires that registrants must be citizens. *See* 52 U.S.C. § 21083(b)(4).[5] HAVA also requires that ineligible voters be removed from the state's voter registration list. *See* 52 U.S.C. § 21083(a)(2)(A)(iii). To be sure, the United States does not remove those voters, but the Civil Rights Division does have a role in making sure that the state is conducting proper list maintenance. The extent of the litigation necessary to obtain those election records to verify compliance with federal election law, in this case and in others, reflects a coordinated effort to impede federal enforcement of those statutes in every state.

For the reasons expressed in Doc. 131, the United States respectfully requests that the Court deny Movants' Motion for leave to file brief of Amici Curiae (Doc. 123). Even if the Court accepts the brief of Amici, the United States believes it is entitled to little weight.

---

[5] There are other provisions outside of HAVA that prohibit noncitizens from registering to vote and voting. The National Voter Registration Act of 1993 requires attestation of citizenship status when registering at State motor vehicle offices. 52 U.S.C. § 20504(c)(2)(C). Federal law prohibits non-citizen voting outright. 18 U.S.C. §§ 611, 1015.

Dated: March 17, 2026

Respectfully submitted,

HARMEET DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney
General

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division

*/s/ Brittany E. Bennett*

JAMES T. TUCKER
BRITTANY E. BENNETT
Trial Attorneys, Voting Section
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
E-mail:  James.T.Tucker@usdoj.gov
E-mail:  Brittany.Bennett@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2026, a true and correct copy of the foregoing

document was served via the Court's ECF system to all counsel of record.


/s/ *Brittany E. Bennett*

JAMES T. TUCKER
BRITTANY E. BENNETT
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice

## CERTIFICATE OF COMPLIANCE

I hereby certify that Plaintiff's foregoing Memorandum complies with Local Rule 7.1(f) and (h). The Memorandum word count total of 1,491 words as determined by Microsoft Word "Word Count" and is formatted in 13-point Times New Roman font.

/s/ *Brittany E. Bennett*

BRITTANY BENNETT
Trial Attorney, Voting Section
U.S. Department of Justice