**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

THE UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVE SIMON in his official capacity as
Secretary of State for the State of
Minnesota, and the STATE OF
MINNESOTA,

Defendants.

Case No. 0:25-CV-03761-KMM-EMB

**SECOND DECLARATION OF ERIC NEFF IN SUPPORT OF THE UNITED
STATES' SUPPLEMENTAL OPPOSITION TO BRIEF OF AMICI CURIAE
FORMER EMPLOYEES OF THE U.S. DEPARTMENT OF JUSTICE (DOC. 123)**

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1.  I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in opposition to the amicus brief of former DOJ employees (Doc. 123).

2.  As stated in the correspondence dated June 25, 2025 and August 13, 2025, attached as Exhibits 1 and 3 to my first Declaration, the United States has requested the federal election records that are the subject of this litigation for the limited purpose of evaluating

1

Minnesota's compliance with the list maintenance provisions of the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"), and, if appropriate, to bring an enforcement action.

3. HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

4. Contrary to what Movants contend through third-party hearsay, the records the United States is seeking to compel under the CRA are not in an effort to compile "the largest set of national voter roll data" to "prove… unsubstantiated claims…." Doc. 123 at 10. Rather, the records sought from Minnesota are necessary to perform an individualized assessment of the State's efforts to comply with HAVA and the NVRA.

5. When the Civil Rights Division performs this individualized assessment, the State's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.

6. The United States previously has pursued successful matters, including in litigation, to obtain election records under Title III of the Civil Rights Act ("CRA") for the purpose of enforcing the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA").

7.  For example, The United States has also used Title III of the CRA in enforcement of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA").  The United States sued Alabama for the State's noncompliance with 42 U.S.C. § 1973ff-1(c). The United States sought data in 21 Alabama counties under the CRA, and the Court issued an Order approving that request. A true and accurate copy of the Alabama Order is attached as Exhibit 1.

8.  The United States then sent letters to 21 counties demanding the election records. A true and accurate copy of a letter to an Alabama county is attached as Exhibit 2.

9.  A similar lawsuit was filed in Vermont to obtain records for enforcement of the UOCAVA reporting requirement.  *See United States v. Vermont*, No. 08-cv-217 (D. Vt. Oct. 30, 2008). A true and accurate copy of the complaint is attached as Exhibit 3.  The parties agreed that election officials needed to preserve election records under the CRA.

10.  The United States has requested election records under the CRA to enforce the Voting Rights Act. A true and accurate copy of one such letter to a Georgia county invoking the CRA is attached as Exhibit 4.

11.  The Department of Justice in April 2024 also issued guidance titled, "Federal Law Constraints on Post-Election Audits." A true and accurate copy of the guidance is attached as Exhibit 5. The guidance explains that the CRA requires election officials to retain election records to protect "the right to vote by ensuring that federal election records remain in a form that allows the Department to investigate and prosecute both civil and criminal election matters under federal law."

3

I declare under the penalty of perjury that the above statements are true and correct.

Executed on March 17, 2026.

Dated: March 17, 2026, at Washington, DC.


/s/ *Eric Neff*

Eric Neff