UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 25-cv-03761 (KMM/EMB) |
| Plaintiff, | |
| vs. | **DEFENDANTS AND INTERVENOR-DEFENDANTS' JOINT SUPPLEMENTAL BRIEF SUPPORTING DISMISSAL** |
| Steve Simon in his official capacity as Secretary of State for the State of Minnesota, and the State of Minnesota, | |
| Defendants. | |

The Court requested supplemental briefing on the interpretation of 52 U.S.C. § 20701 in *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), a related lawsuit involving demands for Michigan's voter data. ECF 157. The *Benson* court correctly dismissed the lawsuit. For the reasons previously briefed, the Court should conclude that the U.S. Department of Justice's (DOJ) demand was facially deficient because it failed to provide a factual basis and sought the data for an improper purpose. Because of these independent grounds for dismissal, the Court need not reach the scope of Section 20701. If the Court reaches the issue, the state defendants and intervenor defendants offer the varied positions explained below.[1]

---

[1] As additional updates on related litigation, the Ninth Circuit will hear oral argument in the California and Oregon cases on May 19. *See United States v. Weber*, No. 26-1232 (9th Cir. Mar. 25, 2026), Dkt. 44; *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 25, 2026), Dkt. 31. On March 24, the United States voluntarily dismissed its lawsuit against Oklahoma after the state provided data. ECF 170-1. On April 1, the United States sued Idaho over voter data, bringing the total to thirty states and Washington D.C. *United States v. McGrane*, No. 1:26-cv-00197 (D. Idaho Apr. 1, 2026).

**ARGUMENT**

The Civil Rights Act of 1960 generally requires election officials to retain "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in [a federal] election." 52 U.S.C. § 20701. Title III of the Civil Rights Act then permits the U.S. Attorney General to seek those records by providing a written demand that includes "the basis and the purpose therefor." *Id.* § 20703. In *Benson*, the court concluded that voter-registration lists are not records subject to § 20701 and therefore not subject to Title III demands. *Benson*, 2026 WL 362789, at *9-11. This interpretation has not been raised by the parties in this action. *E.g.*, ECF 65, 80, 86, 103, 105-06, 112, 114-15.

The Court need not reach the issue because DOJ's failure to comply with Title III's basis and purpose requirements are independent grounds for dismissal. But if the Court were to follow *Benson* instead, that analysis also requires dismissal.

I.     **THE UNITED STATES FAILED TO IDENTIFY A BASIS OR PROPER PURPOSE FOR ITS DEMAND.**

The Court need not reach the scope of Title III's records provision because, as the Defendants previously established, DOJ's failure to state the basis and purpose of its demand dooms the United States' claim. The *Benson* court's contrary conclusion warrants a brief discussion. To state a proper "basis" for a Title III demand, DOJ must articulate concrete reasons to believe that the State is violating federal voting rights laws. *E.g.*, *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8-9 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); ECF 65 at 22-23; ECF 112 at 11.

The *Benson* court concluded that DOJ had stated an adequate basis for its demand by citing alleged anomalies in Michigan's voter data, including "a high percentage of registered voters, a low confirmation notice rate, a low voter removal rate, and a high duplicate registration rate." 2026 WL 362789, at *8.

As the state defendants and intervenor defendants have explained, these alleged anomalies are irrelevant to whether a state has adopted reasonable list-maintenance processes. *E.g.*, ECF 65 at 15-16, ECF 80 at 19, ECF 86 at 23, ECF 112 at 8-9.[2] But even if they were relevant, DOJ pointed to *no* such anomalies in Minnesota's voter data. Nor did it claim non-compliance with any HAVA provision. And, of course, Minnesota is not subject to the NVRA. DOJ has continuously failed to identify any factual basis for its demand—there is no stated basis in its initial letter, its Complaint, or even in its Motion to Compel. ECF 1, 66-1, 66-2, 72. Though DOJ has claimed the Civil Rights Act itself forms the basis for its request, ECF 102 at 5, that cannot be right: under DOJ's reading, every demand issued under Title III of the Civil Rights Act would comply with the basis requirement precisely because the demand invokes Title III. The Court should reject this circular reasoning, which drains the basis requirement of any practical meaning. *See United States v. Lamere*, 980 F.2d 506, 513 (8th Cir. 1992) ("[W]ords employed in a statute should not be discarded as being mere surplusage or being meaningless."). In short, Title III

---

[2] The U.S. Supreme Court recently denied certiorari review in *Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025), which the state defendants previously cited for the proposition that "reasonable effort" in the context of voter list maintenance "does [not] require the most optimal effort, nor does it even require a very good effort" or exhaustion of all possible methods, ECF 65 at 16.

provides legal authority for demands, not factual bases for investigations. Because DOJ did not provide an adequate basis, its demand for Minnesota's unredacted voter registration list was facially invalid.

Nor is the *Benson* court's analysis persuasive in interpreting the "purpose" requirement. In *Benson*, the district court determined that DOJ's purported investigation into potential violations of the NVRA was a proper purpose for its Civil Rights Act demand. 2026 WL 362789, at *8. But Minnesota is not subject to the NVRA, and *Benson*'s discussion of the purpose requirement does not even mention HAVA. *See id.* Further, *Benson*'s suggestion that investigating states' compliance with the NVRA is a proper purpose under the Civil Rights Act simply because the NVRA "protects voting rights" at a high level of abstraction is also incorrect. *Contra id.* Even the cases DOJ relies on make clear the lack of connection between the purposes of a Civil Rights Act demand and the issues implicated in voter list maintenance. *See Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962) (noting that "failures to purge voters who have moved away or have died" did not "bear any particular importance" to the court's inquiry under Title III).

For the reasons stated in both the state defendants' and intervenor defendants' motions to dismiss, this Court should dismiss the United States' claim.

## II.   RECORDS COVERED BY THE CIVIL RIGHTS ACT DO NOT INCLUDE VOTER REGISTRATION LISTS.[3]

Though this Court need not reach the issue, *Benson* provides an alternative basis for dismissal by holding that voter registration lists fall outside the scope of Title III.

Title III requires election officials to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Under 52 U.S.C. § 20703, only records that must be retained and preserved pursuant to 52 U.S.C. § 20701 must be produced to the Attorney General after a proper written demand with a statement of the basis and the purpose therefor. *Id.* § 20703. While "all records and papers" is sweeping language, Title III is distinct from other records statutes in that its text limits itself to those records that "come into [a custodian's] possession." *Id.* § 20701.

The court in *Benson* analyzed the text of 52 U.S.C. § 20701 to conclude that Michigan's voter registration list is not a "record" that "c[a]me into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," and Michigan was therefore not required to produce it pursuant to DOJ's demand under Title III. 2026 WL 362789, at *9 (quoting 52 U.S.C. § 20701). The court reasoned that the phrase "come into possession" "refers to a process by which someone

---

[3] The state defendants do not join section II of this brief because they believe that this case can be decided on the alternative grounds described in section I. However, if the Court were to follow the *Benson* analysis, the state defendants agree with the conclusion of section II, that this analysis would also require dismissal.

*acquires* an item from an external source," drawing parallels to other statutes that use similar verbiage. *Id.* ("Congress frequently uses the phrase 'come into possession' to refer to items that a person *obtains* rather than *creates*." (compiling statutes)). The court looked to the surrounding language in § 20701, which indicates that the records required to be preserved pursuant to Title III are those "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," *id.* at *9 (quoting 52 U.S.C. § 20701), to further support this reading. Because each of those terms refers to "something that the voter submits or does as part of the registration process," the *Benson* court concluded that Congress intended for Title III to cover only records or documents that election officials *receive* from prospective voters and did not intend to cover records that state officials *create*, like voter registration lists. *Id.* Adjacent provisions of Title III also support this interpretation: state voter registration lists must be constantly updated, but 52 U.S.C. § 20702 provides for criminal penalties for any person who "willfully steals, destroys, conceals, mutilates, or *alters* any record or paper required by section 20701 of this title to be retained and preserved." (emphasis added).

In addition to *Benson*, other courts, including ones relying on dictionaries published contemporaneously to the Civil Rights Act, have likewise interpreted the phrase "come into possession" to mean receiving, acquiring, or obtaining something from another source. *See, e.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'"

6

(quoting *Webster's New International Dictionary* (3d ed., 1966, unabridged))); *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 741 (6th Cir. 2013) (defining the verb "obtain" when "used in its transitive form" to "mean[] 'to gain or attain possession or disposal of,'" and "'[t]o come into the possession of'" (second alteration in original) (first quoting *Webster's Third New International Dictionary* 1559 (1993); and then *Oxford English Dictionary* (3d ed. 2004))); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022) (defining "acquire" as "to come into possession or control of" (quoting *The Oxford Dictionary of English Etymology* 9 (1966))).

Minnesota's voter registration list, like Michigan's, is a statewide computerized list created and continuously updated by state officials rather than a static record or document that "come[s] into [the] possession" of state officials. Consistent with *Benson*, Minnesota's voter registration list falls outside the scope of Title III and therefore need not be produced in response to the Attorney General's demands.

## CONCLUSION

The Court should dismiss the complaint because DOJ's demand failed to state a proper basis and a legitimate purpose within the scope of Title III. And although the Court need not reach the scope of the records subject to Title III, the *Benson* court's analysis provides additional grounds to dismiss the United States' claim.

7

Dated: <u>April 3, 2026</u>                                    Respectfully submitted,

**For Defendants Steve Simon and State of Minnesota:**

                                             KEITH ELLISON
Attorney General
State of Minnesota

s/**Allen Cook Barr**
ANGELA BEHRENS, No. 0351076
LINDSEY MIDDLECAMP, No. 0392589
ALLEN COOK BARR, No. 0399094
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2125
(651) 757-1204
angela.behrens@ag.state.mn.us
lindsey.middlecamp@ag.state.mn.us
allen.barr@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS

8

**For Intervenor-Defendants Minnesota Alliance for Retired Americans Educational Fund and Misael Hernandez:**

| ELIAS LAW GROUP | GREENE ESPEL PLLP |
|---|---|
| | |
| UZOMA N. NKWONTA* | s/**Uzoma N. Nkwonta** |
| ROBERT GOLAN-VILELLA* | SYBIL L. DUNLOP, No. 390186 |
| TINA MENG MORRISON* | KATHERINE M. SWENSON, No. 0389280 |
| JULIANNA D. ASTARITA* | KSHITHIJ SHRINATH, No. 0505164 |
| 250 Massachusetts Ave NW, Suite 400 | 222 S. Ninth Street, Suite 2200 |
| Washington, DC 20001 | Minneapolis, MN 55402 |
| (202) 968-4490 | (612) 373-0830 |
| unkwonta@elias.law | sdunlop@greeneespel.com |
| rgolanvilella@elias.law | kswenson@greeneespel.com |
| tmengmorrison@elias.law | kshrinath@greeneespel.com |
| jastarita@elias.law | |
| *Admitted Pro Hac Vice | |

**For Intervenor-Defendants League of Women Voters Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau:**

AMERICAN CIVIL LIBERTIES UNION
OF MINNESOTA

TERESA J. NELSON, No. 0269736
DAVID P. MCKINNEY, No. 0392361
2828 University Avenue SE
Minneapolis, MN 55414
(651) 645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

THERESA J. LEE*
SOPHIA LIN LAKIN*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

PATRICIA J. YAN*
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org
*Admitted Pro Hac Vice

STOEL RIVES LLP

s/**David P. McKinney**
ANDREW J. PIEPER, No. 0389262
HEATHER R. CHANG, No. 0403836
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
(612) 373-8898
andrew.pieper@stoel.com
heather.chang@stoel.com

10