## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 25-cv-03761-KMM-EMB |
| Plaintiff, | |
| v. | **ORDER** |
| Steve Simon, in his official capacity as Secretary of State for the State of Minnesota, and the State of Minnesota | |
| Defendant. | |

---

Before the Court is the Motion to Intervene filed by the National Association for the Advancement of Colored People ("NAACP") and Cynthia Wilson, the President of the Minneapolis branch of the NAACP (collectively, "Proposed Intervenors"). (Dkt. No. 132.) The United States of America filed a response in opposition (Dkt. No. 164), and Proposed Intervenors filed a reply (Dkt. No. 169). I held a hearing on the motion on April 6, 2026. (Dkt. No. 173.) For the following reasons, the request for permissive intervention under Federal Rule of Civil Procedure 24(b) is GRANTED.

## I.   Background

The United States sued Minnesota's Secretary of State over the state's refusal to provide its statewide voter registration list to the Attorney General

of the United States.  (*See* Dkt. No. 1 ¶¶ 1–2.)  The United States brings claims under the Civil Rights Act of 1960 ("CRA") and the Help America Vote Act ("HAVA").  (*Id.* ¶¶ 45–54.)

Five days after the United States filed its complaint, the Minnesota Alliance for Retired Americans Educational Fund and Misael Hernandez moved to intervene as defendants.  (*See* Dkt. No. 5.)  And two weeks after that, the League of Women Voters Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau filed a similar motion.  (*See* Dkt. No. 29.)  Although the United States initially opposed those requests to intervene, it ultimately notified the Court that it took no position on those motions.  (*See* Dkt. No. 60.)  I granted both motions and permitted intervention under Rule 24(b).  (*See* Dkt. No. 90.)

On December 23, 2025, both sets of intervenors moved to dismiss the complaint (Dkt. Nos. 78, 83), as did Defendant Simon (Dkt. No. 63).  That same day, the United States filed a motion to compel production of the requested records.  (Dkt. No. 70.)

On February 27, 2026—just a few days before Judge Menendez's March 3 hearing on the four dispositive motions—the Proposed Intervenors filed the instant motion.  (*See* Dkt. No. 132.)  The United States opposes the request.

## II.    Legal Standard

Proposed Intervenors request intervention as a right under Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention under Rule 24(b).  This Court may grant the motion on either or both bases. *See Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 267 (D. Minn. 2017) (citing *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011)).

Permissive intervention is appropriate if the proposed interventor filed a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  Before permitting intervention, the Court must also consider whether "intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

"Rule 24 is construed liberally, and [courts] resolve all doubts in favor of the proposed intervenors."  *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995) (citing cases).

## III.    Analysis

### i.    *Standing*

First, the United States argues the Proposed Intervenors lack standing because they have not suffered a particularized injury.[1]  "The requirements

---

[1] The United States raises its standing argument in the context of Rule 24(a). (*See* Dkt. No. 164 at 10–11.)  Because it is clear that Proposed Intervenors

for Article III standing are (1) injury, (2) causation, and (3) redressability."

*Nat'l Parks Conservation Ass'n v. U.S. Envtl. Prot. Agency*, 759 F.3d 969, 974

(8th Cir. 2014).  To satisfy the first prong, an injury must "be concrete,

particularized, and actual or imminent."  *Wallace v. ConAgra Foods, Inc.*, 747

F.3d 1025, 1030 (8th Cir. 2014) (quoting *Monsanto Co. v. Geertson Seed

Farms,* 561 U.S. 139, 149 (2010)).  An injury is particularized if it "affect[s]

the plaintiff in *a personal and individual* way."  *Id.* (quoting *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561 n.1 (1992)).

The Government claims Proposed Intervenors "have failed to identify

any particularized harm that differs from that of any other member of the

public."  (Dkt. No. 164 at 11.)  But I agree with Proposed Intervenors that

"the nonconsensual dissemination of personal information" constitutes a

concrete and particularized injury.  *Am. Farm Bureau Fed'n v. U.S. Envtl.

Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016).  "[M]ovants are raising a

---

satisfy the requirements of Article III standing, I assume without deciding
that this question is relevant to both the Rule 24(b) analysis and to parties
seeking to intervene as defendants (as opposed to plaintiffs).  *See Vershey v.
Madison*, 19-CV-1625 (ECT/LIB), 2020 WL 13065430, at *3 (D. Minn. May 4,
2020) (recognizing "uncertainty over whether the Eighth Circuit requires
intervenors to establish standing for both Rule 24(a) and Rule 24(b)
intervention" and citing cases (quotation omitted)); *see also United States v.
Benson*, 1:25-CV-1148, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025)
(concluding movants "seek[ing] to intervene as defendants[] are not required
to demonstrate standing," but nevertheless finding particularized injury
under similar circumstances) (citing *Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658, 663 (2019)).

4

grievance that is specific to them—the disclosure of their personal information—even if it is a grievance that many people could raise." *United States v. Benson*, 1:25-CV-1148, 2025 WL 3520406, at \*4 (W.D. Mich. Dec. 9, 2025) (reaching same conclusion in nearly identical case); *see also Iowa v. Wright*, 154 F.4th 918, 938 (8th Cir. 2025) ("A harm can be widespread and still be particularized and concrete.").

Ms. Wilson has standing to challenge the nonconsensual disclosure of her "full name, date of birth, residential address, and the last four numbers of [her] social security number and [her] full state driver's license number." (Dkt. No. 1 ¶ 36); *cf. Am. Farm Bureau Fed'n*, 836 F.3d at 968 ("[T]he [Environmental Protection A]gency has released or will release personal information of association members without their consent as part of its response to the FOIA requests. That is sufficient to establish a concrete and particularized injury in fact[.]").  And because the NAACP's individual members would have standing to make the same challenge, the NAACP has associational standing.  *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Thus, I find the United States' standing argument unpersuasive.

### ii.    *Common Question of Law or Fact*

The United States doesn't dispute Proposed Intervenors' position that their defenses share a common question of law or fact with the main action.

(*See* Dkt. No. 164 at 14–15.)   Like the parties in the existing action, the Proposed Intervenors "are interested in whether the [State] is compelled under these statutes to provide certain voter registration information to the federal government." *United States of America v. Adams*, 3:26-CV-00019-GFVT, 2026 WL 1008141, at \*3 (E.D. Ky. Apr. 14, 2026) (allowing permissive intervention).   Accordingly, this requirement is satisfied.

### iii.   Timeliness and Prejudice

Courts consider the totality of the circumstances in deciding whether intervention is timely.  *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010).  This analysis considers several factors, including: "(1) how far the litigation had progressed at the time of the motion for intervention, (2) the prospective intervenor's prior knowledge of the pending action, (3) the reason for the delay in seeking intervention, and (4) the likelihood of prejudice to the parties in the action."  *Id.* (alterations omitted) (quoting *Minn. Milk Producers Ass'n v. Glickman,* 153 F.3d 632, 646 (8th Cir. 1998)).

As to the first factor, the parties disagree about the stage of litigation. The United States claims this action is nearly over because the pending motions to dismiss and motion to compel (Dkt. Nos. 63, 70, 78, 83) will be case dispositive.  Proposed Intervenors argue this case is in its early stages because Judge Menendez has not ruled on those pending motions and

discovery has not yet commenced.  The United States' position requires me to anticipate Judge Menendez's ruling on the pending dispositive motions, which I cannot do.  Because Rule 24 should be liberally construed, this factor weighs in favor of intervention.

As to the second and third factors, the parties agree Proposed Intervenors learned about this lawsuit shortly after it was filed but still waited five months to seek intervention.  Proposed Intervenors argue that changed factual circumstances excuse their delay.  They decided to seek intervention after the federal government "deploy[ed] [] thousands of immigration enforcement agents to Minneapolis in January 2026," noting "the ensuing upheaval and use of force by those agents against residents of Minnesota ha[d] [] increased the concerns of the NAACP."  (Dkt. No. 134-3 ¶ 18.)  Namely, they highlight NAACP members' heightened fear of "politically motivated targeting of voters."  (*Id.* ¶ 19.)

The unique and unprecedented change in factual circumstances justifies the delay in seeking intervention in this case.  The United States has filed similar lawsuits in states across the nation.  (*See* Dkt. No. 65 at 8 n.1 (listing lawsuits in 21 other states).)  It is not unreasonable that the NAACP chose not to intervene in every lawsuit at the outset, nor is it unreasonable that it changed its priorities following Operation Metro Surge.  The United States argues that, to the extent Proposed Intervenors made a strategic

7

decision not to intervene when this action commenced, they did so at their own peril because they knew timeliness was a factor.  While this argument is well-taken, I find it does not tip the balance considering both the permissive standard under Rule 24(b) and the lack of prejudice explained below.

Proposed Intervenors also reference a letter that then-Attorney General Pam Bondi sent to Minnesota Governor Tim Walz on January 24, 2026—hours after ICE officers shot and killed Alex Pretti.  (*See* Dkt. No. 134 at 22; Dkt. No. 113-1.)  That letter implores Governor Walz to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960." (Dkt. No. 113-1 at 3.)  Proposed Intervenors cite this letter as further support for their argument of changed circumstances.

But, as the United States points out, Proposed Intervenors still didn't file their motion until February 27—about a month *after* the Bondi letter.  At the hearing, counsel for Proposed Intervenors countered that the NAACP conducted its due diligence, concluded its members felt chilled, and sought appropriate relief within that timeframe.  And, as counsel pointed out, this case was relatively quiet during the period after the Bondi letter but before Proposed Intervenors filed their motion.  The United States had filed its opposition (Dkt. No. 102) to the pending motions to dismiss on January 21 (a

few days before the Bondi letter) and the hearing on the pending motions didn't take place until March 3 (a few days after this motion to intervene). Thus, I find the filing of the Bondi letter favors Proposed Intervenors' position despite the monthlong delay.

Finally, I conclude intervention won't prejudice the United States. Proposed Intervenors agreed not to file a separate dispositive motion; instead, they'll join the pending motion (Dkt. No. 63) filed by Defendant Simon. (*See* Dkt. No. 132 at 1.)  So even if the United States is correct that the pending motions will dispose of this case, intervention won't delay a ruling.  Instead, it will give Proposed Intervenors a seat at the table if this case moves into settlement discussions or, if not, on appeal.

IT IS HEREBY ORDERED that:

1. The Motion to Intervene (Dkt. No. 123) is GRANTED; and

2. Proposed Intervenors' Joinder of Defendant's Motion to Dismiss (Dkt. No. 134-5) is ACCEPTED for filing.  Within 3 days of the date of this Order, Proposed Intervenors are directed to file their joinder as a standalone docket entry.

Date: April 30, 2026

s/*Elsa M. Bullard*
ELSA M. BULLARD
United States Magistrate Judge

9